ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MALCOLM A. HEINICKE (State Bar No. 194174)
malcolm.heinicke@mto.com
CAROLINE M. CUNNINGHAM (State Bar No. 270927)
caroline.cunningham@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Gianni Versace, S.P.A and
Versace USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GIANNI VERSACE, S.p.A. and VERSACE USA, Inc.,<br><br>                Plaintiffs,<br><br>        vs.<br><br>VERSACE 19.69 ABBIGLIAMENTO SPORTIVO S.R.L., THEOFANIS PAPADAS, V1969 VERSACE SMO LLC, V1969 VERSACE HG LLC, AND V1969 USA LLC.<br><br>                Defendants. | Case No: 3:16-cv-03617<br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FEDERAL FALSE DESIGNATION; FEDERAL DILUTION; COMMON LAW TRADEMARK INFRINGEMENT; VIOLATION OF CAL. BUS. & PROF. CODE §§ 14330 et seq.; VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 et seq.**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Gianni Versace, S.p.A. and Versace USA, Inc. (collectively, "Versace"), by and through their attorneys, bring this action against Versace 19.69 Abbigliamento Sportivo SRL, Theofanis Papadas, V1969 Versace SMO LLC, V1969 Versace HG LLC, and V1969 USA LLC (collectively, "19V69 Italia" or "Defendants").  Versace alleges as follows:

**NATURE OF THE ACTION**

1.      This action arises out of Defendants' infringement of Versace's trademarks in connection with their 19V69 Italia brand.  Rather than invest the time and money it takes to build a brand, Defendants are exploiting Versace's reputation and goodwill by using the name "Versace" in connection with 19V69 Italia stores, advertising, product labeling, and licensing. Specifically, Defendants combine the name 19V69 Italia with the name Versace and/or the name of their Italian affiliate—Versace 19.69 Abbigliamento Sportivo SRL—to deceive consumers into believing that 19V69 Italia is associated with Versace.

2.      There is no such association between 19V69 Italia and Versace.  Indeed, Versace recently obtained a ruling from an Italian court against Defendant Papadas prohibiting him from using the name Versace to promote 19V69 Italia.  As the Italian court found, allowing such use infringes Versace's trademarks and would allow Defendants to "improperly reap an advantage from the prestige of [Versace's trademarks] and, at the same time, would impair their distinctive force and ability to carry a significant message in the public's estimation (which is not merely an indicator or origin), by exploiting their evocative potential."

3.      Defendants are expanding their scheme to exploit Versace and deceive consumers to the United States.  They are using the Versace name to promote the opening of at least three 19V69 Italia stores in the United States this summer, including one in this District, and in 19V69 Italia advertising, product labeling, and licensing.  By using the Versace name in this way, Defendants are causing irreparable harm to Versace and intentionally deceiving consumers. Accordingly, Versace brings this action to stop Defendants from trading on the Versace name by, *inter alia*, seeking preliminary and permanent injunctive relief barring Defendants from using the name Versace to promote 19V69 Italia.

**THE PARTIES**

4.      Plaintiff Gianni Versace, S.p.A. is a company organized under the laws of Italy with its principal place of business at Via Manzoni Nr. 38, 20121, Milano, Italy.

5.      Plaintiff Versace USA, Inc. is a company organized under the laws of New York with its principal place of business at 3 Columbus Circle, New York, New York 10019 and is registered to do business in California.

6.      Defendant Versace 19.69 Abbigliamento Sportivo SRL, upon information and belief, is a company organized under the laws of Italy with its principal place of business at Via Daniele Crespi No. 1, 21052, Busto Arsizio VA, Italy.

7.      Defendant Theofanis Papadas, upon information and belief, is a citizen of Greece and the sole director of Defendant Versace 19.69 Abbigliamento Sportivo S.R.L.  Upon information and belief, Defendant Papadas owns and/or controls the Defendant companies below.

8.      Defendant V1969 Versace SMO LLC, upon information and belief, is a company organized under the laws of Florida with its principal address at 300 N.E. 183rd Street, Miami, Florida 33179.  Upon information and belief, Defendant V1969 Versace SMO LLC is owned and/or controlled by one or more of the same individuals or entities that own and/or control Versace 19.69 Abbigliamento Sportivo SRL.

9.      Defendant V1969 Versace HG LLC, upon information and belief, is a company organized under the laws of Florida with its principal address at 300 N.E. 183rd Street, Miami, Florida 33179.  Upon information and belief, Defendant V1969 Versace HG LLC is affiliated with one or more of the same individuals or entities that own and/or control Versace 19.69 Abbigliamento Sportivo SRL.

10.      Defendant V1969 USA LLC, upon information and belief, is an inactive company organized under the laws of Florida with its principal address at 300 N.E. 183rd Street, Miami, Florida 33179.  Upon information and belief, Defendant V1969 USA LLC is affiliated with one or more of the same individuals or entities that own and/or control Versace 19.69 Abbigliamento Sportivo SRL.

**JURISDICTION AND VENUE**

11.    This Court has jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338.  This Court has supplemental jurisdiction over the claims that arise under state statutory and common law under 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.    This Court has personal jurisdiction over each of the Defendants because, on information and belief and for the reasons set forth below, Defendants are engaged in substantial business and/or have committed tortious acts within this District, which acts form a substantial part of the events or omissions giving rise to Versace's claims.

13.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct business in this District, a substantial part of the conduct giving rise to the claims asserted herein occurred in this District, and Versace is suffering harm in this District.

**INTRADISTRICT ASSIGNMENT**

14.    This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c).

# FACTUAL BACKGROUND

## I.    Versace's Business and Trademarks

15.    Founded by Italian designer Gianni Versace in 1978, Versace is one of the most recognized and influential brands in the world.  Versace designs, manufactures, distributes and sells a wide variety of luxury goods throughout the world, from haute couture and ready-to-wear clothing, to handbags and shoes, to sunglasses, jewelry, watches and other fashion accessories, to home furnishings.  These goods are renowned for their high quality and style and are identified and recognized by use of the Versace name and trademarks.

16.    Gianni Versace S.p.A. is the owner of numerous trademarks containing the Versace name, including but not limited to, the following federally registered trademarks:

| MARK | REG. NO. | REG. DATE | CLASS |
|---|---|---|---|
| Gianni Versace | 1,123,748 | Aug. 7, 1979 | 25 |
| Gianni Versace | 1,891,546 | Apr. 25, 1995 | 3, 18, 25 |
| Gianni Versace | 1,973,178 | May 7, 1996 | 9, 14, 16, 20, 24 |
| VERSACE | 2,121,984 | Dec. 16, 1997 | 3, 18, 25 |
| VERSACE | 2,190,233 | Sept. 22, 1998 | 9 |
| VERSACE | 2,440,541 | Apr. 3, 2001 | 8, 19, 20, 21, 24 |
| VERSACE | 3,976,544 | June 14, 2011 | 9 |
| VERSACE | 4,398,385 | Sept. 10, 2013 | 11, 14, 27, 35 |
| Versace Jeans Couture | 2,426,052 | Feb. 6, 2001 | 18, 25 |

17.    Copies of the certificates for these federal trademark registrations are attached hereto as Exhibit A.  Many of them, including Gianni Versace and Versace, are incontestable under 15 U.S.C. §§ 1065, 1115(b).  Gianni Versace S.p.A. also owns the common law rights in the above trademarks and other trademarks containing the Versace name, which are collectively referred to herein as the "Versace Marks."

18.     The Versace Marks are in full force and effect.  The Versace Marks and associated goodwill have never been abandoned.  Versace intends to continue to use, preserve and maintain its rights with respect to the Versace Marks.

19.     Versace has continuously used the Versace Marks in connection with the sale of Versace goods in the United States.  Versace and its authorized affiliates and licensees are the exclusive distributors of Versace's goods in the United States.  There are more than 80 Versace boutiques worldwide, including one in this District.

20.     Versace has expended substantial time, money and other resources advertising and promoting Versace goods and the Versace Marks across a variety of media, including television, print publications, the Internet and social media, and special events such as fashion shows covered by the world media.  The Versace Marks qualify as famous marks under 15 U.S.C. §1125(c)(1).

21.     In addition to Versace's own advertising and promotional efforts, Versace goods and the Versace Marks frequently are the subject of media coverage.

22.     The Versace Marks have achieved secondary meaning throughout the world, including in the United States, as an identifier of origin, relationship, sponsorship, and/or association with Versace.  Due to the widespread sale of Versace goods and celebrity that the Versace Marks have achieved, Versace goods and the Versace Marks are recognized by the public and the trade as originating from a single source, GIANNI VERSACE, S.p.A.

23.     Upon information and belief, at all relevant times, Defendants had knowledge of Gianni Versace S.p.A.'s ownership and rights in the Versace Marks and of Versace's prior use of the Versace Marks.

24.     Defendants have no association with Versace and have never been authorized to use the Versace Marks for any purpose.

## II.     Defendants' Unauthorized Use of Versace's Marks

25.     Defendants are engaged in a scheme to build the 19V69 Italia brand by exploiting Versace's reputation and goodwill.  Specifically, Defendants use the name Versace, either alone or as part of the company name Versace 19.69 Abbigliamento Sportivo SRL, in 19V69 Italia stores, advertising, product labeling, and licensing to create the false impression that 19V69 Italia goods

1   are Versace goods and/or are associated with, approved, or endorsed by Versace.  Following is one

2   example of Defendants' deceptive use of the Versace name from 19V69 Italia's US website:[1]



21          26.     Upon information and belief, Defendant Papadas purchased Versace 19.69

22   Abbigliamento Sportivo SRL in May 2012.  On July 2, 2012, he settled a lawsuit brought against

23   him in Italy by Versace by agreeing to (1) withdraw an application filed in Italy to register

24   "Versace 19.69 Abbigliamento Sportivo" as a trademark; (2) "not to use the VERSACE name in

25   the future on any of the products involved in the business conducted in his individual capacity or

26   by the companies he represents, or in advertising the products by any other means of

_____

[1] http://www.v1969italia.com (last visited June 27, 2016).

communication or promotion of such products to the public," except under certain limited circumstances required by law; and (3) "not to use the VERSACE name on his website and on the websites associated with the companies he represents," again under certain limited circumstances required by law.  Upon information and belief, Defendant Papadas owns, represents, and/or controls Defendants Versace 19.69 Abbigliamento Sportivo SRL, V1969 Versace SMO LLC, V1969 Versace HG LLC, and V1969 USA LLC.

27.     In February 2016, an Italian court found that Defendant Papadas had violated the terms of his agreement with Versace.  The court found that "Versace" in the company name Versace 19.69 Abbigliamento Sportivo SRL comprises its "ideological nucleus" and "heart." Because that "heart" has "independent – and exclusive – evocative potential in the consumer's memory" for Gianni Versace S.p.A, the court concluded that use of the company name Versace 19.69 Abbigliamento Sportivo SRL creates "a risk of confusion as to the origin of [19V69 Italia] goods" due to "the probable error of the public as to the existence of contractual or group relationships between [Gianni Versace S.p.A] and [Versace 19.69 Abbigliamento Sportivo SRL]." The court found that use the company name Versace 19.69 Abbigliamento Sportivo SRL would allow [Defendant Papadas] to improperly reap an advantage from the prestige of [Versace's trademarks] and, at the same time, would impair their distinctive force and ability to carry a significant message in the public's estimation (which is not merely an indicator of origin), by exploiting their evocative potential."  A copy of the certified translation of the Italian court's decision is attached hereto as Exhibit B.

28.     Defendants are continuing their exploitation of Versace and consumer deception in the United States.  The 19V69 Italia US website states that 19V69 Italia offers the same type of goods as Versace, including haute couture and ready-to-wear clothing, watches, jewelry, shoes and leather products, and home furnishings.[2]  According to the 19V69 Italia US Facebook page, "bags are currently in limited release across the country with the complete line of bags coming this fall as well as other accessories and some apparel," and consumers are invited to visit the 19V69 Italia

---

[2] http://www.v1969italia.com (last visited June 27, 2016).

website "for more information and a closer look at all of the products coming soon to specialty stores, boutiques and department stores nationwide."[3]  As set forth below, Defendants are using the Versace name to open the first of these 19V69 Italia stores this summer and to otherwise promote 19V69 Italia through advertising, product labeling, and licensing in a way that is likely to deceive consumers into believing that 19V69 Italia is associated with Versace.

**19V69 Italia Stores**

29.     Defendants are in the process of opening three 19V69 Italia stores in the United States this summer, including one in this District located in San Francisco's Union Square shopping district at 55 Stockton Street.  The other two stores are located at the 3rd Street Promenade in Santa Monica, California, and at the Mall of America in Bloomington, Minnesota.



30.     Upon information and belief, these 19V69 Italia stores will sell 19V69 Italia goods.

---

[3] https://www.facebook.com/V19.69ItaliaUS/info?tab=page_info (last visited June 27, 2016).

31.     Defendants have not publicized these store openings in a manner consistent with a legitimate operation, such as through their website or in the press.  Instead, upon information and belief, Defendants are seeking to conceal these store openings.

32.     At the location of the San Francisco 19V69 Italia store, the Versace name is prominently featured in signs announcing that it is "coming soon" and internal store signage:



COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

33.     Internet job listings related to these store openings further illustrate Defendants' deceptive use of the Versace name.  Upon information and belief, Defendants caused these job listings to be posted.  Applicants are instructed to contact 300 N.E. 183rd Street, Miami, Florida, the principal address identified in papers filed with the Florida Department of State for Defendants V1969 Versace SMO LLC, V1969 Versace HG LLC, and V1969 USA LLC.

34.     One such job listing seeks a Store Manager for the San Francisco 19V69 Italia store and prominently features the Versace name, identifying the company as "Versace V1969," and is attached hereto as Exhibit C:



COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

35.     Another job listing seeks a Human Resources Director and also prominently featured the Versace name—at least initially.  The original job listing identified the company as "Versace V1969."  When confronted by a Versace employee who questioned the job listing, noting that Versace was not seeking a Human Resources Director, there were two responses.  First, the person to whom the Versace employee spoke claimed that 19V69 Italia was created by a cousin of Donatella Versace, Gianni Versace's sister and Versace's current artistic director.  That claim is false.  Second, within an hour of that conversation, the job listing was changed to drop the name Versace.  Following are the original and modified job listings, which are attached hereto as Exhibits D and E, respectively:

**19V69 Italia Advertising, Product Labeling, Distribution, and Licensing**

36.     Upon information and belief, Defendants have used the Versace name and/or the company name Versace 19.69 Abbigliamento Sportivo SRL in interstate commerce and in connection with the sale, offering for sale, distribution or advertising of goods or services in a way that is likely to cause confusion, or to cause mistake, or to deceive in advertising 19V69 Italia and 19V69 Italia goods.

37.     Upon information and belief, Defendants have used the Versace name and/or the company name Versace 19.69 Abbigliamento Sportivo SRL in interstate commerce and in connection with the sale, offering for sale, distribution or advertising of goods or services in a way that is likely to cause confusion, or to cause mistake, or to deceive in 19V69 Italia product labeling.

38.     Upon information and belief, Defendants have used the Versace name and/or the company name Versace 19.69 Abbigliamento Sportivo SRL in interstate commerce and in connection with the sale, offering for sale, distribution or advertising of goods or services in a way that is likely to cause confusion, or to cause mistake, or to deceive in offering and/or entering into agreements with third-parties for the distribution and/or sale of 19V69 Italia goods.  Upon information and belief, Defendants have entered into such agreements with third parties, including, but not limited to, Stage Stores, Dr. Jay's, T.J. Maxx, Bon-Ton, Nordstrom Rack, Exchange, and Hudson's Bay.

39.     Upon information and belief, Defendants have used the Versace name and/or the company name Versace 19.69 Abbigliamento Sportivo SRL in interstate commerce and in connection with the sale, offering for sale, distribution or advertising of goods or services in a way that is likely to cause confusion, or to cause mistake, or to deceive in offering and/or entering into agreements with third-parties to license rights to manufacture, distribute, and/or sell 19V69 Italia goods.  Upon information and belief, Defendants have entered into such agreements with third parties, including, but not limited to, AHQ Accessory Headquarters, K&M Associates, L.P., Central Carolina Hosiery, Wiesner Products, Brilliance NY-House of Beauty, and Delmar.

**Defendants' Conduct Causes Immediate and Irreparable Harm to Versace**

40.     The significant harm caused by Defendants' conduct alleged herein is both immediate and irreparable.

41.     Consumers who view "19V69 Italia" in combination with "Versace" and/or "Versace 19.69 Abbigliamento Sportivo SRL" are not aware that 19V69 Italia has no association with Versace and, therefore, are likely to believe that 19V69 Italia goods are Versace goods and/or are affiliated with, sponsored by, or endorsed by Versace.  Indeed, upon information and belief, Defendants are engaged in the conduct alleged herein for that reason.

42.     Defendants' conduct is likely to cause confusion, deception, and mistake, and to harm consumers who believe they are receiving high quality goods that they have come to associate with the Versace brand.

43.     Defendants' conduct has caused irreparable injury and harm to Versace by hurting the goodwill and reputation associated with Versace and the Versace Marks and will continue to cause irreparable injury and harm unless and until Defendants are restrained by this Court from violating Versace's rights.  Versace has no adequate remedy at law.

## COUNT I

(Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))

44.     Versace incorporates by reference the allegations in all of the paragraphs above as if set forth fully herein.

45.     The Versace Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.  Under these registrations, Versace has the exclusive right to use the Versace Marks.  Versace also has common law rights in the Versace Marks.

46.     Versace has used the inherently distinctive and famous Versace Marks continuously in connection with its goods and services.

47.     Versace has exerted significant effort in the form of advertising, promotion, and sales to promote the Versace Marks in the United States and throughout the world as distinctive of Versace's goods and services in commerce.

48.     As a result of Versace's use and promotion of the Versace Marks, the Versace Marks have developed secondary meaning as an indicator that Versace is the source of goods and services identified by the Versace Marks.

49.     The Versace Marks represent valuable goodwill owned by Versace.

50.     Upon information and belief, Defendants are using the Versace Marks, without Versace's consent, and such use constitutes a false designation of origin, a false or misleading description or representation of goods, tending wrongfully and falsely to describe or represent a connection between Versace's goods and Defendants' goods.

51.     Defendants' use is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of their goods and services, in that consumers or others are likely to believe Defendants' goods and services are actually Versace's goods and services or those of a company legitimately connected with, approved by, or related to Versace.

52.     Defendants' use of the Versace Marks enables them to represent and deceptively advertise, merchandise, market, display, and promote Defendants' goods and services as emanating from Versace or from a company legitimately connected with, approved by, or related to Versace, and to substitute or pass off Defendants' goods and services as those of Versace.

53.     Upon information and belief, Defendants had and have actual knowledge of Versace's ownership and prior use of the Versace Marks before Defendants' conduct described herein and have acted knowingly, willfully and maliciously with intent to trade upon the reputation and goodwill of Versace and to injure Versace.

54.     Defendants conduct described herein constitutes unfair competition, false designation of origin of goods and services, and false or misleading description or representation of goods and services under 15 U.S.C. § 1125(a).

55.     The willful nature of Defendants' conduct described herein renders this an exceptional case within the meaning of 15 U.S.C. § 1117.

56.     By reason of the foregoing, Versace has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1116 *et seq*.

57.     Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to Versace's rights in the Versace Marks and to Versace's business, reputation and goodwill, which cannot be adequately compensated solely by monetary damages. Versace therefore has no adequate remedy at law and seeks preliminary and permanent injunctive relief pursuant to 15 U.S.C. §§ 1116 *et seq.*

<u>**COUNT II**</u>

(Federal Trademark Infringement, 15 U.S.C. §§ 1114, 1125(a))

58.     Versace incorporates by reference the allegations in all of the paragraphs above as if set forth fully herein.

59.     The Versace Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.  Under these registrations, Versace has the exclusive right to use the Versace Marks.  Versace also has common law rights in the Versace Marks.

60.     Versace has used the inherently distinctive and famous Versace Marks continuously in connection with its goods and services.

61.     Versace has exerted significant effort in the form of advertising, promotion, and sales to promote the Versace Marks in the United States and throughout the world as distinctive of Versace's goods and services in commerce.

62.     As a result of Versace's use and promotion of the Versace Marks, the Versace Marks have developed secondary meaning as an indicator that Versace is the source of goods and services identified by the Versace Marks.

63.     The Versace Marks represent valuable goodwill owned by Versace.

64.     Upon information and belief, Defendants had and have actual knowledge of Versace's ownership and prior use of the Versace Marks before using the Versace Marks as alleged herein and have acted knowingly, willfully and maliciously with intent to trade upon the reputation and goodwill of Versace by causing confusion and mistake among consumers, and by deceiving them.

65.     Upon information and belief, Defendants willfully, deliberately, and in conscious disregard of Versace's rights used the Versace Marks in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of goods and/or services.

66.     Defendants' use of the Versace Marks is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of their goods and services, in that consumers or others are likely to believe Defendants' goods and services are Versace's or those of a company legitimately connected with, approved by, or related to Versace.

67.     Defendants' use of the Versace Marks enables them to represent and deceptively advertise, merchandise, market, display, and promote Defendants' goods and services as emanating from Versace or from a concern legitimately connected with, approved by, or related to Versace, and to substitute or pass off Defendants' goods and services as those of Versace.

68.     Defendants' said knowing and willful use has reproduced, copied, colorably imitated, and infringed the Versace Marks in interstate commerce in violation of 15 U.S.C. § 1114.

69.     The willful nature of Defendants' conduct described herein renders this an exceptional case within the meaning of 15 U.S.C. § 1117.

70.     By reason of the foregoing, Versace has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1116 *et seq.*

71.     Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to Versace's rights in the Versace Marks and to Versace's business, reputation and goodwill, which cannot be adequately compensated solely by monetary damages. Versace therefore has no adequate remedy at law and seeks preliminary and permanent injunctive relief pursuant to 15 U.S.C. §§ 1116 *et seq.*

## **COUNT III**

(Federal Trademark Dilution, 15 U.S.C. § 1125(c))

72.     Versace incorporates by reference the allegations in all of the paragraphs above as if set forth fully herein.

73.     The Versace Marks are famous and distinctive and became famous and distinctive before Defendants' conduct alleged herein.  The Versace Marks are recognized by the consuming public of the United States as a designation of source for Versace's goods and services and are therefore famous marks.

74.     Defendants' conduct alleged herein constitutes trademark uses in commerce that are likely to dilute the distinctive quality of the Versace Marks, by both blurring and tarnishment, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

75.     Upon information and belief, Defendants have engaged in such conduct willfully, deliberately, and in conscious disregard of Versace's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

76.     By reason of the foregoing, Versace has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1116 *et seq*.

77.     Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to Versace's rights in the Versace Marks and to Versace's business, reputation and goodwill, which cannot be adequately compensated solely by monetary damages. Versace therefore has no adequate remedy at law and seeks preliminary and permanent injunctive relief pursuant to 15 U.S.C. §§ 1116 *et seq*.

## COUNT IV

### (California Common Law Trademark Infringement)

78.     Versace incorporates by reference the allegations in all of the paragraphs above as if set forth fully herein.

79.     The general consuming public of California recognizes the Versace Marks as designating Versace as the source of goods and services.  Versace has common law rights in the Versace Marks under California law.

80.     Defendants have knowingly and willfully used the Versace Marks in California in connection with the sale, offering for sale, distribution, and advertising of goods and services.

81.     Defendants' use is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of their goods and services, in that consumers or others are

1  likely to believe Defendants' goods and services are Versace's or those of a company legitimately

2  connected with, approved by, or related to Versace.

3         82.    Defendants' use of the Versace Marks enables them to represent and deceptively

4  advertise, merchandise, market, display, and promote Defendants' goods and services as

5  emanating from Versace or from a concern legitimately connected with, approved by, or related to

6  Versace, and to substitute or pass off Defendants' goods and services as those of Versace.

7         83.    Defendants' said knowing and willful use has reproduced, copied, colorably

8  imitated, and infringed the Versace Marks in commerce in violation California common law.

9         84.    Upon information and belief, Defendants have engaged in such conduct willfully,

10  deliberately, and in conscious disregard of Versace's rights.

11        85.    By reason of the foregoing, Versace has been injured in an amount not yet

12  ascertained and is entitled to the remedies provided for it under the common law.

13        86.    Defendants' conduct described herein has caused, and if not enjoined will continue

14  to cause, irreparable damage to Versace's rights in the Versace Marks and Versace's business,

15  reputation, and goodwill, which cannot be adequately compensated solely by monetary damages.

16  Versace therefore has no adequate remedy at law and seeks preliminary and permanent injunctive

17  relief.

18                                    **COUNT V**

19                          (Declaration of Trademark Infringement)

20        87.    Versace incorporates by reference the allegations in all of the paragraphs above as

21  if set forth fully herein.

22        88.    This claim arises under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a),

23  the Lanham Act, 15 U.S.C. § 1114(1), and California statutory and common law.

24        89.    A present and actual controversy exists between Versace and Defendants as to

25  whether Defendants' use of the Versace Marks infringes on those marks.

26        90.    Versace seeks, and is entitled to, a declaration that Defendants' use of the Versace

27  Marks constitutes trademark infringement in violation of Versace's rights in the Versace Marks.

28

**COUNT VI**

(Dilution, CAL. BUS. & PROF. CODE §§ 14330 *et seq*. and Common Law)

91.     Versace incorporates by reference the allegations in all of the paragraphs above as if set forth fully herein.

92.     Versace is the owner of the famous and distinctive Versace Marks under California common law.

93.     Defendants have made commercial use of the Versace Marks in a way that is likely to cause dilution of the famous marks, by both blurring and tarnishment, in violation of Section 14247(a) of the California Business and Professions Code and common law.

94.     Versace is entitled to an injunction and monetary damages under Section 14247(a) of the California Business and Professions Code and common law.

95.     Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to Versace's rights in the Versace Marks and to Versace's business, reputation and goodwill, which cannot be adequately compensated solely by monetary damages. Versace therefore has no adequate remedy at law and seeks preliminary and permanent injunctive relief.

**COUNT VII**

(Unfair Competition, CAL. BUS. & PROF. CODE §§ 17200 *et seq*.)

96.     Versace incorporates by reference the allegations in all of the paragraphs above as if set forth fully herein.

97.     Defendants' conduct described herein constitutes fraudulent, unlawful and unfair business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.

98.     Defendants' said conduct is fraudulent, unlawful and unfair under the UCL because it is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of their goods and services, in that consumers or others are likely to believe Defendants' goods and services are Versace's or those of a company legitimately connected with, approved by, or related to Versace.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

99.     Defendants' said conduct is fraudulent, unlawful and unfair under the UCL because it enables them to represent and deceptively advertise, merchandise, market, display, and promote Defendants' goods and services as emanating from Versace or from a concern legitimately connected with, approved by, or related to Versace, and to substitute or pass off Defendants' goods and services as those of Versace.

100.    By reason of the foregoing, Versace has been injured in an amount not yet ascertained and is entitled to the remedies provided for in Sections 17200 *et seq*. of the Cal. Bus. & Prof. Code.

101.    Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to Versace's rights in the Versace Marks and Versace's business, reputation and goodwill, which cannot be adequately compensated solely by monetary damages. Versace therefore has no adequate remedy at law and seeks preliminary and permanent injunctive relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Versace demands judgment as follows:

A.     That the Versace Marks be deemed valid and willfully infringed by Defendants in violation of 15 U.S.C. § 1114, *et seq.*;

B.     That Defendants be adjudged to have violated provisions of 15 U.S.C. § 1125(a) by competing unfairly with Versace by using a false designation of origin, false description or representation;

C.     That Defendants be adjudged to have acted with willful intent to trade on Versace's reputation and goodwill and dilute the Versace Marks in violation of 15 U.S.C. § 1125(c);

D.     That Defendants be adjudged to have infringed Versace's rights in and to its common law trademarks;

E.     That Defendants be adjudged to have diluted Versace's rights in and to its trademarks in violation of California Business & Professions Code § 14247(a);

F.      That Defendants be adjudged to have competed unfairly with Versace under California Business & Professions Code § 17200;

G.      That Defendants, and all of their officers, agents, landlords, servants, employees, distributors, attorneys, successors, related companies and assigns, and all those acting in concert with them and/or any of them, be permanently enjoined and restrained from:

1.      using the Versace Marks in connection with the advertising, promotion, sale and distribution of its business, goods and services in the United States, and/or using any other mark, name, or trade practice that is likely to cause confusion with the Versace Marks in connection with the advertising, promotion, sale and distribution of its business, goods and services;

2.      doing any other act or thing likely to induce the mistaken belief that Defendants' business, goods, or services are in any way affiliated, connected or associated with Versace or its goods and services, including without limitation maintaining the signs currently posted at 55 Stockton Street in San Francisco using the Versace name;

3.      doing any other act or thing likely to cause confusion or induce the mistaken belief that Defendants' business, goods, and services in any way originate from or are sponsored or approved by Versace;

4.      causing a likelihood of confusion or dilution with respect to the Versace Marks, or injury to the business reputation and goodwill of Versace; and

5.      otherwise unfairly competing with Versace.

H.      That Defendants, their officers, agents, servants, employees, distributors, attorneys, successors, related companies and assigns, and all those acting in concert with them and/or any of them, be required to destroy and to provide proof of destruction of any and all displays, signs, circulars, promotional materials, advertisements, and other business identifiers in Defendants' possession, custody or control which bear or depict the Versace Marks or any other mark or name confusingly similar to the Versace Marks, or likely to dilute the distinctive quality thereof;

I.      That, pursuant to 15 U.S.C. § 1116, Defendants be ordered to file with this Court and to serve upon Versace within thirty (30) days after the entry of an injunction, a report in writing and under oath setting forth in detail the manner in which Defendants have complied with the injunction;

J.      That an accounting be ordered to determine Defendants' profits resulting from its infringement, unfair competition, dilution, and false designation of origin, and that Versace be awarded monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including:

1.      all profits received by Defendants from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled'

2.      all damages sustained by Versace as a result of Defendants' acts of infringement, unfair competition, false designation of origin, and dilution, and that such damages be trebled; and

3.      punitive damages in the event it is determined that the Defendants' actions were willful, intentional, or malicious;

K.      That such damages and profits be trebled and awarded to Versace pursuant to 15 U.S.C. § 1117;

L.      That because of the exceptional nature of this case resulting from Defendants' deliberate infringing conduct, this Court award to Versace all reasonable attorneys' fees, costs and disbursements incurred as a result of this action;

M.      That Versace be awarded pre-judgment interest on its judgment; and

N.      That the Court order such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Versace demands trial by jury in this action of all claims and issues so triable.

1    DATED:  June 27, 2016                    MUNGER, TOLLES & OLSON LLP
2                                                   ROSEMARIE T. RING
                                                    MALCOLM A. HEINICKE
3                                                   CAROLINE M. CUNNINGHAM

4

5                                             By:  _____/s/ Rosemarie T. Ring_____
6                                                   ROSEMARIE T. RING
                                              Attorneys for Gianni Versace, S.P.A and
7                                             Versace USA, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

Int. Cl.: 25

Prior U.S. Cl.: 39

## United States Patent and Trademark Office

Reg. No. 1,123,748
Registered Aug. 7, 1979

# TRADEMARK
### Principal Register



Gianni Versace & C. s.a.s. (Italian corporation)
Via Degli Arconti 24
89100 Reggio Calabria, Italy

For: T-SHIRTS, GLOVES, HATS, SOCKS, STOCK-INGS, SHOES, SKIRTS, JACKETS, B L O U S E S, SCARVES, SWEATERS, BELTS, FURS, DRESSES, SLACKS, SUITS, COATS AND SHIRTS FOR MEN AND WOMEN, in CLASS 25 (U.S. CL. 39).

First use September 1972; in commerce March 1974.

Ser. No. 158,016, filed Feb. 7, 1978.

R. PEVERADA, Examiner

Int. Cls.: 3, 18, and 25

Prior U.S. Cls.: 1, 3, 39, 41, 51, and 52

Reg. No. 1,891,546

# United States Patent and Trademark Office

Registered Apr. 25, 1995

## TRADEMARK
### PRINCIPAL REGISTER

## GIANNI VERSACE

GIANNI VERSACE SPA (ITALY CORPORA-
TION)
VIA BORGOSPESSO 17
MILANO, ITALY

FOR: PERFUMES; NON-MEDICATED
TOILET PREPARATIONS; NAMELY, HAND
CREAM AND SKIN MOISTURIZER; COSMET-
ICS; NAMELY, LIPSTICK, MAKE-UP, EYE
PENCILS, EYE SHADOW, MASCARA, EYE-
LINER, AND BLUSHER; ESSENTIAL OILS
FOR PERSONAL USE; ESSENTIAL OILS FOR
USE AS INGREDIENTS IN THE MANUFAC-
TURE OF COSMETIC PREPARATIONS; NON-
MEDICATED HAIR CARE PREPARATIONS;
DENTIFRICES; DEODORANT SOAP, TOILET
SOAP, LIQUID SOAP FOR HANDS, FACE,
AND BODY; BABY SHAMPOO, HAIR SHAM-
POO; ANTIPERSPIRANT; PERSONAL DE-
ODORANTS FOR MEN AND WOMEN; SHAV-
ING CREAM FOAM; AFTERSHAVE LOTIONS,
IN CLASS 3 (U.S. CLS. 51 AND 52).
FIRST USE 0–0–1988; IN COMMERCE
4–0–1988.
FOR: LEATHER AND IMITATION LEATH-
ER, BOTH SOLD IN BULK; LEATHER AND

IMITATION LEATHER HANDBAGS, WAL-
LETS, KEY CASES, SHOULDER BAGS, AND
BRIEFCASES; ANIMAL HIDES AND SKINS;
TRUNKS FOR TRAVELING AND TRAVELING
BAGS; UMBRELLAS, PARASOLS, AND WALK-
ING STICKS; WHIPS, HARNESS AND SAD-
DLERY, IN CLASS 18 (U.S. CLS. 1, 3 AND 41).
FIRST USE 0–0–1979; IN COMMERCE
4–0–1987.
FOR: CLOTHING; NAMELY, SHIRTS,
PANTS, JACKETS, HATS, DRESSES, SKIRTS,
BOOTS, SHOES AND SLIPPERS, IN CLASS 25
(U.S. CL. 39).
FIRST USE 0–0–1979; IN COMMERCE
4–0–1987.
OWNER OF U.S. REG. NOS. 1,123,748,
1,649,891, AND OTHERS.
"GIANNI VERSACE" IS A LIVING INDIVID-
UAL WHOSE WRITTEN CONSENT IS OF
RECORD.

SN 74–217,552, FILED 10–29–1991.

CATHERINE KAISER KREBS, EXAMINING
ATTORNEY

Int. Cls.: 9, 14, 16, 20, and 24

Prior U.S. Cls.: 2, 5, 13, 21, 22, 23, 25, 26, 27, 28,
29, 32, 36, 37, 38, 42, and 50

Reg. No. 1,973,178

## United States Patent and Trademark Office

Registered May 7, 1996

## TRADEMARK
### PRINCIPAL REGISTER

# GIANNI VERSACE

GIANNI VERSACE SPA (ITALY CORPORA-
TION)
VIA DELLA SPIGA 25
MILANO, ITALY

FOR: GLASSES AND SUNGLASSES, IN
CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).
FIRST USE 0–0–1978; IN COMMERCE
0–0–1978.
FOR: HOROLOGICAL INSTRUMENTS;
NAMELY, WRIST WATCHES, ALARM
CLOCKS, TABLE CLOCKS, ELECTRIC
CLOCKS, ELECTRONIC CLOCKS; SEMI-PRE-
CIOUS GEMS, AND/OR PRECIOUS GEMS;
JEWELRY; NAMELY, NECKLACES, EAR-
RINGS, BRACELETS, BROOCHES, RINGS,
NECKTIE PINS, BADGES OF PRECIOUS
METAL, MEDALLIONS AND BELT BUCKLES
OF PRECIOUS METAL FOR CLOTHING, IN
CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 0–0–1978; IN COMMERCE
0–0–1978.
FOR: STATIONERY ARTICLES; NAMELY,
PAPER NAME BADGES, EXERCISE BOOKS,
ADDRESS BOOKS AND NOTEBOOKS, NU-
MERICAL AND ALPHABETICAL INSERTS,
ENVELOPES, CALENDARS, AND AGENDAS;
WRITING AND MARKING INSTRUMENTS;

NAMELY, FOUNTAIN PENS, BALL PENS,
FELT-TIPPED PENS AND ROLLER PENS,
MARKERS, MARKING PENS, PENCILS,
PENCIL LEADS AND REFILLS FOR PENS, IN
CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND
50).

FIRST USE 0–0–1978; IN COMMERCE
0–0–1978.

FOR: CUSHIONS AND PILLOWS FOR BEDS,
SOFAS AND CHAIRS, IN CLASS 20 (U.S. CLS. 2,
13, 22, 25, 32 AND 50).

FIRST USE 0–0–1978; IN COMMERCE
0–0–1978.

FOR: TEXTILE FABRIC FOR USE IN THE
MANUFACTURE OF CLOTHING; TEXTILE
WALL HANGINGS; BED LINEN, TABLE
LINEN, UPHOLSTERY FABRIC; HOUSEHOLD
LINEN AND TOWELS, IN CLASS 24 (U.S. CLS.
42 AND 50).

FIRST USE 0–0–1978; IN COMMERCE
0–0–1978.

Int. Cls.: 3, 18, and 25

Prior U.S. Cls.: 1, 2, 3, 4, 6, 22, 39, 41, 50, 51, and 52

Reg. No. 2,121,984

## United States Patent and Trademark Office

Registered Dec. 16, 1997

## TRADEMARK
## PRINCIPAL REGISTER

## VERSACE

GIANNI VERSACE S.P.A. (ITALY CORPORA-
TION)
VIA DELLA SPIGA, 25
20121 MILANO, ITALY

FOR: COSMETICS, NAMELY NIGHT AND
DAY CREAM, CLEANING PREPARATIONS
FOR THE FACE AND BODY, BATHFOAM,
SHAVING FOAM, AFTER-SHAVE, FOUNDA-
TION MAKEUP, NAIL POLISH, DEODORANTS
FOR MEN AND WOMEN, PERFUMED, UNPER-
FUMED (NATURAL) AND HYPOALLERGENIC
PERFUMES, COLOGNE, TOILET WATER,
BATH OILS, HAND AND BABY SOAP, HAIR
SHAMPOO AND RINSES, HAIR SPRAY,
TOOTHPASTE, AND FRAGRANCES, NAMELY
PERFUME, TOILET WATER AND ESSENCE
OILS FOR PERSONAL USE FOR MEN AND
WOMEN, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51
AND 52).
FIRST USE 9-0-1994; IN COMMERCE
9-0-1994.
FOR: LEATHER OR IMITATIONS OF
LEATHER, NAMELY ANIMAL SKINS AND
HIDES, HANDBAGS, WALLETS, LUGGAGE,
ATTACHE CASES, TOTE BAGS, BRIEFCASES,

ALL PURPOSE SPORT BAGS, TRAVELLING
TRUNKS AND CARRY-ON BAGS, SHOULDER
BAGS, GARMENT BAGS FOR TRAVELLING,
KEYCASES, UMBRELLAS, PARASOLS AND
WALKING STICKS, WHIPS, HARNESSES AND
SADDLERY, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22
AND 41).
FIRST USE 9-0-1994; IN COMMERCE
9-0-1994.
FOR: CLOTHING FOR MEN, WOMEN AND
CHILDREN, NAMELY BELTS, COATS, RAIN-
COATS, WAISTCOATS, BLOUSES AND PULL-
OVERS, JACKETS, TROUSERS, SKIRTS,
DRESSES, SUITS, SHIRTS AND CHEMISES, T-
SHIRTS, SWEATERS, UNDERWEAR, SOCKS
AND STOCKINGS, GLOVES, TIES, SCARVES,
HATS AND CAPS, BOOTS, SHOES AND SLIP-
PERS, IN CLASS 25 (U.S. CLS. 22 AND 39).
FIRST USE 9-0-1994; IN COMMERCE
9-0-1994.
SEC. 2(F).

SN 74-582,355, FILED 10-5-1994.

CATHERINE KAISER KREBS, EXAMINING
ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**United States Patent and Trademark Office**

Reg. No. 2,190,233

Registered Sep. 22, 1998

## TRADEMARK
### PRINCIPAL REGISTER

## VERSACE

GIANNI VERSACE S.P.A. (ITALY CORPORA-
TION)
VIA DELLA SPIGA, 25
20121 MILANO, ITALY

FOR: GLASSES AND SUNGLASSES, IN
CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).
FIRST USE 0-0-1985; IN COMMERCE
0-0-1985.

OWNER OF ITALY REG. NO. 655092, DATED
8-2-1995, EXPIRES 3-7-2005.
OWNER OF U.S. REG. NOS. 1,123,748, 1,862,184
AND OTHERS.
SEC. 2(F).

SER. NO. 75-110,711, FILED 5-28-1996.

CORA MOORHEAD, EXAMINING ATTORNEY

Int. Cls.: 8, 19, 20, 21 and 24

Prior U.S. Cls.: 1, 2, 12, 13, 22, 23, 25, 28, 29, 30, 32,
33, 40, 42, 44 and 50

Reg. No. 2,440,541

## United States Patent and Trademark Office

Registered Apr. 3, 2001

## TRADEMARK
### PRINCIPAL REGISTER

## VERSACE

GIANNI VERSACE S.P.A. (ITALY CORPORA-
TION)
VIA MANZONI, 38
MILAN, ITALY

FOR: TABLEWARE; FORKS, KNIVES AND
SPOONS; STERLING SILVER TABLE FORKS, KNI-
VES AND SPOONS; PARTS AND FITTINGS FOR
ALL THE AFORESAID GOODS, IN CLASS 8 (U.S.
CLS. 23, 28 AND 44).

FIRST USE 0-0-1995; IN COMMERCE 0-0-1995.

FOR: FIREPLACE SURROUNDS; FLOOR TILES;
WOOD TILE FLOORS; GLASS TILES, PARQUET
FLOORING; STATUETTES OF STONE, CONCRETE
OR MARBLE; WALL PANELS; PARTS AND FIT-
TINGS FOR ALL THE AFORESAID GOODS, IN
CLASS 19 (U.S. CLS. 1, 12, 33 AND 50).

FIRST USE 0-0-1982; IN COMMERCE 0-0-1982.

FOR: CHAIRS, CUPBOARDS; CUSHIONS; DESKS;
DIVANS; DOORKNOBS; FIGURES OF BONE, IV-
ORY, PLASTER, PLASTIC, WAX AND WOOD; DO-
MESTIC FIREPLACE BELLOWS FLOWER
BASKETS, DOOR HANDLES FOR FURNITURE;
KEY CHAINS; MAGAZINE RACKS OFFICE FUR-
NITURE; PILLOWS; PARTS AND FITTINGS FOR
ALL THE AFORESAID GOODS, IN CLASS 20 (U.S.
CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 0-0-1995; IN COMMERCE 0-0-1995.

FOR: HOUSEHOLD OR KITCHEN UTENSILS
AND CONTAINERS; DINNERWARE; BEVERAGE
WARE GLASSWARE SUGAR BOWLS; BEER MUGS;
BOTTLE OPENERS; BOWLS; CANDLE HOLDERS
NOT OF PRECIOUS METAL; CHINA ORNAMENTS;
COOKWARE; CORKSCREWS; SOAP DISPENSERS;
FIGURINES IN CHINA, CRYSTAL, EARTHEN-
WARE GLASS, PORCELAIN AND TERRA COTTA;
HOLDERS FOR FLOWERS AND PLANTS; PER-
FUME ATOMIZERS SOLD EMPTY, PLATES; POTS,
SOAP BOXES; SOAP HOLDERS; VASES; PARTS
AND FITTINGS FOR THE AFORESAID GOODS,
IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 0-0-1995; IN COMMERCE 0-0-1995.

FOR: BATH LINEN, BATH MATS, BED LINEN;
BLANKETS; CURTAINS; FURNITURE COVERS;
HANDKERCHIEFS; KITCHEN TOWELS, IN CLASS
24 (U.S. CLS. 42 AND 50).

FIRST USE 0-0-1984; IN COMMERCE 0-0-1984.

OWNER OF U.S. REG. NOS. 2,077,160, 2,278,257
AND OTHERS.

SEC. 2(F).

SER. NO. 75-864,716, FILED 12-6-1999.

SCOTT OSLICK, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office

# VERSACE

**Reg. No. 3,976,544**

**Registered June 14, 2011**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

GIANNI VERSACE S.P.A. (ITALY CORPORATION)
VIA MANZONI, 38
I-20121 MILANO
ITALY

FOR: GLASSES, NAMELY, EYEGLASSES; SUNGLASSES; SPECTACLES; SPECTACLE FRAMES; MONOCLES; LORGNETTES; SPECTACLE CASES, SPECTACLE CHAINS; SPECTACLE CORDS; PARTS AND ACCESSORIES FOR THE AFOREMENTIONED PRODUCTS, NAMELY, EYEGLASSES, LENSES AND OPTICAL FRAMES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 5-25-2009 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 1018595 DATED 9-3-2009, EXPIRES 9-3-2019.

OWNER OF U.S. REG. NOS. 1,123,748, 1,641,270 AND OTHERS.

SEC. 2(F).

SER. NO. 79-074,858, FILED 9-3-2009.

APRIL ROACH, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# United States of America
## United States Patent and Trademark Office

# VERSACE

**Reg. No. 4,398,385**

**Registered Sep. 10, 2013**

**Int. Cls.: 11, 14, 27 and 35**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**



Sera Stewart Lee

Acting Director of the United States Patent and Trademark Office

GIANNI VERSACE S.P.A. (ITALY CORPORATION)
VIA MANZONI, 38
I-20121 MILANO
ITALY

FOR: FIREPLACES; LAMPS, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FOR: ARTICLES MADE OF PRECIOUS METALS AND ALLOYS OF PRECIOUS METALS WITH OR WITHOUT PRECIOUS STONES, NAMELY, RINGS, NECKLACES, BRACELETS, BROOCHES, EARRINGS, TIE CLIPS, CUFFLINKS, DIAMONDS, JEWEL CASES, WATCHES, CLOCKS, CHRONOMETERS, WATCH CASES, COSTUME JEWELRY, PARTS AND FITTINGS FOR ALL THE AFORESAID GOODS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FOR: CARPETS, BATH MATS; RUGS, MATS AND MATTING, AND OTHER MATERIALS FOR COVERING EXISTING FLOORS; NON-TEXTILE WALL HANGINGS, IN CLASS 27 (U.S. CLS. 19, 20, 37, 42 AND 50).

FOR: ADVERTISING; BUSINESS MANAGEMENT; BUSINESS ADMINISTRATION; OFFICE FUNCTIONS; DISSEMINATION OF ADVERTISEMENTS; DISSEMINATION OF ADVERTISING MATTER; INDUSTRIAL BUSINESS MANAGEMENT CONSULTANCY AND ASSISTANCE; PROFESSIONAL BUSINESS CONSULTANCY; FRANCHISING, NAMELY, SERVICES PROVIDED BY A FRANCHISOR FOR THIRD PARTIES IN HELPING, MANAGING AND DEVELOPING COMMERCIAL ENTERPRISES; GATHERING VARIOUS GOODS IN THE FIELD OF FASHION AND HOME FURNISHING AND ACCESSORIES ALLOWING THE CONSUMER TO VIEW AND BUY THE AFORESAID GOODS IN RETAIL STORES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 6-10-2010 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 1073076 DATED 11-9-2010, EXPIRES 11-9-2020.

OWNER OF U.S. REG. NOS. 1,880,658, 2,278,257 AND OTHERS.

Int. Cls.: 18 and 25

Prior U.S. Cls.: 1, 2, 3, 22, 39 and 41

**Reg. No. 2,426,052**

## United States Patent and Trademark Office

Registered Feb. 6, 2001

### TRADEMARK
### PRINCIPAL REGISTER

## VERSACE JEANS COUTURE

GIANNI VERSACE S.P.A. (ITALY CORPORATION)
VIA MANZONI 38
20121 MILANO, ITALY

FOR: ATHLETIC BAGS, ATTACHE CASES, BABY BACKPACKS, BAGS FOR ALL PURPOSES, NAMELY; FOR ALL SPORT PURPOSE, BEACH BAGS, BOOK BAGS, CARRY-ON BAGS, GYM BAGS, HANDBAGS, LEATHER SHOPPING BAGS, OVERNIGHT BAGS, SCHOOL BAGS, TEXTILE SHOPPING BAGS, TOTE BAGS, SHOULDER BAGS, TRAVEL BAGS, SUITCASES, BEACH UMBRELLAS, HAT BOXES FOR TRAVEL, BRIEFCASES-TYPE PORTFOLIOS, BRIEFCASES, BUSINESS CARD CASES, CALLING CARD CASES, CANE HANDLES, CREDIT CARD CASES, PURSES, COSMETIC CASES, DOCUMENT CASES, GARMENT BAGS FOR TRAVEL, KEY CASES, PARASOLS, SADDLERY, SHOES BAGS FOR TRAVEL, UMBRELLAS, WALLETS, WALKING STICKS, WHIPS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FOR: AFTER SKI BOOTS, ASCOTS, ATHLETIC FOOTWEAR, ATHLETIC SHOES, ATHLETIC UNIFORMS, HEAD BANDS, NECK BANDS, SWEAT BANDS, WRIST BANDS, BATHING SUITS, BATHROBES, BEACHWEAR, BED JACKETS, BELTS, BERETS, BERMUDA SHORTS, BIKINIS, BLOUSES, BLOUSONS, BODY SUITS, BOOTS, BOW TIES, BOXER SHORTS, BRASSIERES, UNDERWEAR BRIEFS, BUSTIERS, CAMISOLES, CLOTHING CAPS, CARDIGANS, CHEMISES, COATS, FUR COATS, FUR JACKETS, FUR STOLES, LEATHER COATS, OVER COATS, RAIN COATS, SUIT COATS, CORSETS, CRAVATS, CULOTTES, DRESSES, EVENING GOWNS, NIGHT GOWNS, EAR MUFFS, ESPADRILLES, FOOTWEAR, GLOVES, HATS, HEAD WEAR, INFANTWEAR, JEANS, JOGGING SUITS, KILTS, LINGERIE, CLOTHING MANTLES, MOCCASINS, NECKERCHIEFS, NIGHT SHIRTS, PAJAMAS, PANTS, PANTYHOSE, PAREU, PARKAS, POLOSHIRTS, PULLOVERS, SANDALS, SHOES, SHORTS, SKI WEAR, SLIPPERS, SLIPS, SOCKS, STOCKING, IN CLASS 25 (U.S. CLS. 22 AND 39).

PRIORITY CLAIMED UNDER SEC. 44(D) ON ITALY APPLICATION NO. 005905, FILED 6–10–1998, REG. NO. 761384, DATED 6–10–1998, EXPIRES 6–10–2008.

OWNER OF U.S. REG. NOS. 1,123,748, 2,224,935 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE ''JEANS COUTURE'', APART FROM THE MARK AS SHOWN.

SER. NO. 75–519,687, FILED 7–8–1998.

ANGELA M. MICHELI, EXAMINING ATTORNEY

# EXHIBIT B



**ITALIAN REPUBLIC**

**IN THE NAME OF THE ITALIAN PEOPLE THE COURT OF MILAN**

**Specialized Section in Business Matters**

**Section A**

The Court, sitting en banc, consisting of the following judges:

Ms. Paola Maria Gandolfi                Chief Justice

Ms. Alessandra Dal Moro            Judge

Ms. Alima Zana                    Judge

issued the following

DECISION

in the Level I civil case registered at **No. 58403/2013 of the General Register** brought by:

THEOFANIS PAPADAS (Tax ID no. PPDTFN66E12Z115P), in his own capacity and as legal representative of Versace 1969 Abbigliamento Sportivo s.r.l. and of Gia+Fra [sic: Gia+Fa] s.r.l., with the assistance of attorneys GIUSEPPE MASSIMO CANNELLA (CNNGPP67L05Z133G), VIALE MAINO, 20 20129 MILAN and MARIA CHATZIKONSTANTI (CHTMRA75S55Z114D), VIALE MAJNO 20 21100 MILAN;

PLAINTIFFS;

v.


Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68067 – Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: deeee

GIANNI VERSACE SPA (Tax ID No. 13353520151), with the assistance of attorney SIMONE GIOVANNI and [sic]

DEFENDANT

The parties' conclusions were set forth in the record of the hearing on 11/04/2015

For the plaintiffs: see the record of the hearing and the electronic file

for the defendant: "This Honorable Court, ignoring and dismissing all petitions and claims to the contrary, is requested to rule:

<u>on a preliminary basis</u>:

- to dismiss all petitions to suspend the enforceability of the Order dated 08.23.2013, in which the Court of Milan, Business, Sec. A, sitting en banc, dismissed the opposing party's claim as unfounded and inadmissible;

<u>regarding the main claim</u>:

- to rule that the claims made by the plaintiffs are unfounded in fact and in law and, as a result, dismiss all of the plaintiffs' claims, for the reasons already set forth in the narrative;

<u>regarding the counterclaim</u>:

- pursuant to **Art**. **131 of the Industrial Property Code** and **Art. 2599 of the Civil Code**, to prohibit Mr. Theofanis Papadas, in his dual role indicated above, both in Italy and the European Union, from using the "Versace" name in all of its forms and, in particular, from using the corporate name "Versace 19.69 Abbigliamento Sportivo S.r.l.", with a resulting order to change that name, pursuant to and for all purposes of **Art. 2564 of the Civil Code**;

<u>as a procedural matter</u>:

- we reserve the right to further deduce, produce and set forth evidence and name witnesses, including in response to the opposing party's pleadings, requesting permission to provide rebuttal evidence if improbable procedural requests made by the opposing are granted.

With payment of costs, charges and fees of this trial and an order that the plaintiffs pay damages to be determined equitably for vexatious litigation pursuant to and for all purposes of Art. 96 of the Code of Civil Procedure, and authorizing, if deemed appropriate, pursuant to Art. 120 of the Code of Civil Procedure, publication of the Decision (excerpted, or via communication in the forms specifically indicated), at the plaintiffs' expense, within 30 days of the filing of the Decision in the court clerk's office, in the national editions of the daily newspapers "Il Corriere della Sera" and "Il Sole 24 Ore", for two days, and in one issue of the Italian edition of the monthly magazine "VOGUE",

Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: deeee . Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: 68067 . Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68067



in a font twice the normal size, with GIANNI VERSACE S.p.A. having the right to do so itself if the plaintiffs fail to do so, and giving the defendant Gianni Versace to demand the necessary costs of those actions from the plaintiffs".

\*\*\*\*\*

## THE DEVELOPMENT OF THE TRIAL.

In a complaint served on 07/29/2013, Theofanis Papadas, in his individual capacity and as legal representative of Versace 1969 Abbigliamento Sportivo s.r.l. and Gia+Fa s.r.l., brought suit against Gianni Versace s.p.a. seeking a court ruling that the plaintiff had the right and obligation to indicate the full name of "Versace 19.69 abbigliamento sportivo" [Versace 19.69 sportswear] of the manufacturer/importer of the products in cases where required by law, modifying the font and without using the Versace sign, on the products and on the label and rule that such uses do not constitute infringement. In addition, the plaintiffs requested a ruling that they have the right to use the full name as a domain name and, lastly, to rule that the comments made by Versace s.p.a. against them, in various communications, constitute unfair competition.

The plaintiffs recalled the facts leading to the execution with the defendant of a settlement agreement before the judge and [seeking] a precautionary measure of non-infringement, essentially involving the same claims made herein, which was dismissed by the Designated Judge, in a measure that was appealed.

Versace s.p.a. responded, in turn reconstructing the proceedings where the parties were in conflict, including in foreign jurisdictions, as well as the customs seizures, that bore witness to the stubborn use of the Versace sign to distinguish the plaintiff companies' products and business.

On the merits, considering the speculative intent with which the plaintiffs used Versace's concessions in the conciliation record, in a counterclaim the defendant sought a ruling prohibiting the plaintiffs from "*using the Versace name in all of its forms and, in particular, from using the corporate name "Versace 19.69 Abbigliamento Sportivo S.r.l.", with a resulting order to change that name, pursuant to and for all purposes of Art. 2564 of the Civil Code.*"

Before the first appearance hearing, the case was suspended pending a proceeding for recusal of the Investigating Judge – brought by the plaintiffs, because she had already made a precautionary ruling – which was dismissed, with a resulting resumption with a petition from the defendant dated 02/10/2014.

After allowing the time periods pursuant to Art. 183, VI of the Code of Civil Procedure, the Investigating Judge admitted and reviewed the evidence deduced by the plaintiffs in relation to the implementation of the settlement agreement that had been carried out.



Decision no. 2471/2016 published on 02/25/2016

General Register

Lastly, at the hearing on 11/04/2015, the case was referred for decision.

REASONS FOR THE DECISION.

First of all, the Panel notes that the defendant adopted the inadmissible practice – unfortunately facilitated by the structure of the PCT (Processo Civile Telematico [Electronic Civil Trial]) that does not have limiting filters – of filing copious documentation with final defensive pleadings, well beyond the limits of the rigid preclusions of Art. 183, VI of the Code of Civil Procedure.

As a consequence, the defendant's productions of documents 107 to 127 and those of the plaintiffs (thus in response in the event the aforesaid defendant's documents had been considered) under 68 and 69 must be held inadmissible, which not only will not be examined by the Court, but must be deleted from the computer file by the parties.

On the merits, as shown by the documents that were timely produced, on 09/14/2009, Gia+Fra [sic: Gia+Fa] s.r.l., represented by its Sole Director, Theofanis Papadas, purchased the trademark from Versace 19.69 Abbigliamento Sportivo s.r.l. and then, in a document dated 02/23/2012, the business division. In a petition dated 05/23/2012 Gianni Versace s.p.a., the owner of the registered trademarks in Italy and the European Union containing the surname of the well-known designer, took precautionary action against the plaintiffs, seeking a prohibition on the use of signs containing the "Versace" name, seizure of the branded products, setting of a penalty and publication of the decision.

The petitioner stated that it had taken criminal and civil actions against the prior owner of the company and the signs purchased by Gia+Fra [sic: Gia+Fa] and pointed out the obvious interference between the trademarks it owns (of Italian and international renown) and the "Versace 1969" sign.

This Court observes that, in effect, in the "Versace 1969 Abbigliamento Sportivo" sign, the term "Versace", due to the significance assumed in the overall context (the rest of which, besides, is only a date, which suggests to the public an imaginary business start-up, and a description of the branded products), comprises the ideological nucleus that embodies the personalized attitude (the "heart"), which has independent – and exclusive – evocative potential in the consumer's memory.

That choice can, first of all, pursuant to Art. 20 letter b) of the Industrial Property Code, create a risk of confusion as to the origin of the goods, also (and especially) from the perspective of the risk of association, understood to be the probable error of the public as to the existence of contractual or group relationships between the owner and the second registrant. That risk is amplified by the presence of multiple trademarks of the defendant characterized by the same "heart", which would lead consumers to believe that "Versace 1969" is also an expression of the same entrepreneurial origin or of a license agreement granted by the plaintiff herein.

In addition, pursuant to Art. 20 letter c) of the Industrial Property Code, the use of the "Versace 1969 Abbigliamento Sportivo" sign would allow the plaintiffs to improperly reap an advantage from the prestige of the defendant's signs and, at the same time, would impair their distinctive force and ability to carry a significant message in the public's estimation (which is not merely an indicator of origin), by exploiting their evocative potential.

Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68067 – Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: deeee

Decision no. 2471/2016 published on 02/25/2016

General Register

As is well-known, a renowned trademark is not the same as a celebrated trademark, and significant prestige is not always necessary, since it must be considered sufficient if the sign is known by a significant portion of the public interested in the branded products or services (Court of Justice 07/14/1999 General Motors); that requirement must be evaluated in light of the market share held by the trademark, the intensity, geographic extent and duration of its use, and the amount of the investments made to promote it (cf. Cass. 21086/05).

The goal of European Union (and also Italian) laws has been to protect the exclusive right to the sign as an attractive and communicational element, preventing appropriation thereof whenever this can result in either an undue advantage for the usurper or detriment to the owner.

There are varying levels of prestige, which ranges from signs known to most of the population to those only broadly considered creditable by a segment of the consumer public, which are associated with differing extensions of protection, which go beyond the merchandise context and the risk of confusion in a strict sense (hence an unjustified linkage, which allows placement on the market by exploiting the evocative value of the prestigious sign, must be deemed sufficient).

The different level of prestige has an impact on the burden of proof, and, in the case of notorious signs (such as the one in this case), the Court may well rely on notions of common experience.

Lastly, it must be kept in mind that, under the principle of the unitary nature of distinctive signs under Art. 22 of the Industrial Property Code, a sign that is the same or similar to another party's trademark cannot be adopted as a firm, company name, insignia or corporate domain name if it could result in the same risk of confusing the public or exploitation, with resulting harm, pursuant to Art. 20 of the Industrial Property Code.

Moreover, the parties, in the cited precautionary phase, judicially settled the dispute by executing a record (doc. 5 att.) in which Mr. Papadas, on his own behalf and for the companies then named in the lawsuit, stated that he "*agrees to forego registration of the distinctive sign Versace 19.69 abbigliamento sportivo, which is subject to application no. 10844473 of 04/17/2012 and, for conciliatory and settlement purposes, agrees to not use the VERSACE name in the future on any of the products involved in the business conducted in his individual capacity or by the companies he represents, or in advertising the products by any other means of communication or promotion of such products to the public, although he retains the right duty [sic] to indicate the full company name of the manufacturer or importer of the products in cases where required by law, including for purposes of the labelling, but the current font being used must be modified*".

In addition, "*Mr. Theofanis Papadas also agrees to not use the Versace name on his website and on the websites associated with the companies he represents, without affecting his ability to indicate the complete corporate name of the manufacturer and/or the marketer of the products, including on the aforementioned sites*".

page 5 of 10



Decision no. 2471/2016 published on 02/25/2016
General Register

The settlement agreement must be interpreted according to the rules in Art. 1362 et seq. of the Civil Code, keeping in mind that the legal criteria for contract interpretation are governed by an internal hierarchy. Based on that principle, strictly interpretive standards prevail over those which are interpretive/supplementary, which the good faith principle must also be considered to be, although the latter represents a point of connection between the two categories (see, among many, Cass. 12120/05). Therefore, "*in interpreting the contract, the priority nature of the literal element must not be understood in an absolute sense, because the reference contained in Art. 1362 Civil Code to the parties' mutual intent requires, in order to identify it, that the investigation also be extended to the logical element*" (Cass. 18670/04).

Based on these rulings, this Panel agrees with the comments already made by the Designated Judge about the investigation of the parties' mutual intent, which investigation, as is well-known, is not aimed at clarifying each of their full intentions (nor, much less, their mental reservations), but rather that portion of their respective intentions that merged, thus giving rise to the prescriptive nature of the contract.

The literal tenor of the clause and the entire agreement indisputably shows that Gianni Versace s.p.a. completely waived enforcing the rights arising out of the prior registrations of the mark in relation, pursuant to Art. 22 of the Industrial Property Code, solely to the name and company name of the petitioner (which would have permitted them to demand the modifications pursuant to Art. 2564 of the Civil Code).

However, it also seems clear to this Panel that the parties did not intend to execute an agreement for distinctive signs to co-exist, since in no way did Gianni Versace s.p.a. waive the ability to enforce the additional rights arising out of the registrations of trademarks with the surname Versace.

Therefore, also considering the interest of consumers in not being deceived as to the business origin of goods, the agreement by Gianni Versace s.p.a. to forego exercising the rights under Art. 20 of the Industrial Property Code, in relation specifically and solely to the petitioner's company name, must be interpreted, first and foremost, in reference to its typical uses, in business relationships with parties other than final consumers (e.g., in business correspondence, on the seal and in forms).

As to "in cases where required by law", a correct interpretation of the clause in the context of the settlement agreement – which, overall, reconfirms Gianni Versace s.p.a.'s trademark rights – requires the Court to hold that the authorization to use the company name, which strongly interferes with those rights, was intended by the parties to be strictly limited to cases where the use of the manufacturer, importer or exporter company's name is required by law and is not otherwise substitutable (for example, for products subject to a CE marking using the (uncontested) registered trademark and the address) and, in any event, in a manner that precludes the use thereof on the products as a distinctive sign (internal labels on the articles of clothing, packaging and accompanying documents, etc. – see Chapter R2 Annex I EC Reg. 765/2008).

Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68067 – Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: deeee



Decision no. 2471/2016 published on 02/25/2016

General Register

It is thus up to the plaintiffs, in the event of a challenge, to offer rigorous proof that in that specific circumstance it was not possible, due to the specific industry regulations, to use another indication, such as the trademarks, which would allow identification of the manufacturing/marketing company.

Certainly, general use of such an interfering company name cannot be said to result generally from the laws of the Consumer Code (Legislative Decree 206/05), particularly Arts. 6 and 22, which set forth the minimum content of the communication that consumers must receive. In fact, the cited provisions equate the trademark to the manufacturer's corporate name, and that indication is sufficient to avoid the deceptiveness under Art. 22, since it contains all the relevant information an average consumer needs to make an informed decision.

To the contrary, it is an abuse of the corporate name "versace [sic: Versace] 1969", that so interferes with the defendant's notorious trademarks that it must be considered deceptive under Art. 22, II of the cited Legislative Decree, because the relevant information for the consumer's choice is provided to him or her in an obscure and ambiguous way, leading him or her to make a purchase decision that he or she otherwise (knowing the actual business origin, which is not from the famous fashion house) would not have made.

In addition, the use of the manufacturer's or marketer's company name on the plaintiffs' websites must be solely for informational purposes in the context of a narrative description of the products provided and their manufacturing origin, without the use of special characters or particular highlighting and always accompanied by the clarification, as indicated in paragraph 7 of the agreement, that there are no relationships with Gianni Versace s.p.a. Lastly, it must be clarified that the agreement authorizes only the use of the company name, and thus the other interfering uses listed in Art. 22 of the Industrial Property Code, such as the firm, insignia, and company domain name, must be deemed to be excluded.

The use on web pages and in advertising materials of the name Versace 19.69 clearly superimposed over images of the products, stores and other, which has obvious distinctive and promotional effects, cannot be considered as being allowed by the agreement.

In effect, the documentation produced going back to the precautionary phase shows that the Versace 19.69 company name had been highlighted on the external labelling of knitwear products, was placed on eyewear frames and even reproduced as a decorative element on a handbag closure.

Such use of the petitioner's name, whose identifying heart is clearly represented by the surname VERSACE, clearly exceeds the need to comply with European Union law and consumer protection law to allow the manufacturer to be identified, and represents a form of use strictly as a distinctive sign, in violation of the settlement agreements invoked, and as such must be considered infringement pursuant to Art. 20, letters b) and c) of the Industrial Property Code.

Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68067 – Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: deeee



Decision no. 2471/2016 published on 02/25/2016

General Register

During the trial, the oral evidence requested by plaintiffs' counsel was produced to demonstrate that all of the modifications required by the precautionary decision (even though it was being challenged) had been made.

Witnesses Travaras and Paparis, contractors for Papadas' companies in the eyewear sector and linens for the home, respectively, confirmed the efforts at compliance made to eliminate the surname Versace from the products and from the packaging, using the undisputed 19V69 logo.

However, the ample documentation timely produced by the defendant shows that, in spite of such actions carried out by the contractors to comply with the judicial ruling, the plaintiffs are still making extensive use of the corporate name "Versace 1969, Abbigliamento Sportivo" with great emphasis, for store insignias and in advertising materials on paper and via the internet (docs. 45 et seq.).

The entirety of the documental production (the authenticity of which is not disputed) shows a use of the corporate name "Versace 1969 Abbigliamento Sportivo" to validate a commercial operation that is taking on very large dimensions, especially in western European markets, and which it must be presumed owes a part of its fortunes to the improper linkage to the well-known Italian fashion trademark.

Even today, in spite of the stated intention to comply with the precautionary order, such use of the plaintiffs' company name allows them to improperly reap an advantage from the prestige of the plaintiff's [sic: defendant's] signs and, at the same time, impairs their distinctive force and ability to carry a significant message in the public's estimation by exploiting their evocative potential.

Therefore, the request for a ruling as to the lawfulness of the documented conduct seems to lack foundation – in view of its obvious parasitism on the notoriety of the "Versace" signs – since, to the contrary, it must be considered to be an infringement of the respondent's marks and, as such, the source of legitimate reactions, such as the request for customs seizure.

As to the allegedly derogatory communications (doc. 13 att.), it also seems to the Panel that these are merely an accurate reconstruction of the facts, devoid of gratuitous charges of business impropriety, and merely provide clarifications to customers in relation to the potential confusing and parasitic effects of the petitioners' conduct addressed above.

It can thus grant Gianni Versace s.p.a.'s counterclaim and prohibit all use by the plaintiffs of distinctive signs containing the surname "Versace" to brand the products and their business, including its use as a firm, insignia and domain name, except for the company name within the very strict limits set forth in the reasoning (in business relationships with parties other than final consumers, in business correspondence, on the seal and in forms and where it is strictly required by law in interactions with administrative authorities and is not otherwise substitutable).

Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68067 – Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: deeee



Decision no. 2471/2016 published on 02/25/2016

General Register

The defendant is the owner of the European Union trademarks and, in particular, trademark 1665439 doc. 101 att.) registered for classes 9, 24 and 25.

Therefore, since this Court is competent pursuant to Art. 97 of EC Reg. no. 207 of 02/26/2009, § 1, the prohibition in question can be issued under Art. 102 not only in relation to Italy but also in relation to all actions that may be committed in any European Union Member State.

Obviously, actions committed outside of the European Union are beyond the jurisdiction of this Court.

However, the defendant's additional counterclaim, that seeks to also prohibit the use of the company name and related order to modify pursuant to Art. 2564 of the Civil Code, cannot be granted.

In fact, as discussed, Gianni Versace s.p.a. is required, in the judicial agreement of 07/02/2012, to allow Papadas to use the company name "Versace 1969 Abbigliamento Sportivo", albeit within the very strict limits described above, even though that name clearly interferes with its trademarks.

The defendant, which has used the agreement in question as an enforceable right, has not requested this Court to terminate the contract, notwithstanding the plaintiffs' breaches, and thus it remains in effect between the parties (although such a claim, while not raised here, could be examined in another forum). Therefore, the claim pursuant to Art. 2564 Civil Code cannot be granted.

The defendant, in its first pleading, did not request other sanctions or publication of the measure, which represents a form of compensation in a specific form and as such is precluded, because it was not timely requested and cannot be granted at this time.

In conclusion, the plaintiffs' claims, to the extent they do not reiterate what is already covered by the agreement between the parties, as interpreted above, cannot be granted, whereas the counterclaim can be partially granted.

As a consequence, the plaintiffs must be ordered to reimburse the defendant for the costs of the proceedings, set at EUR 20,000.00 as professional fees, plus accessory costs under law and 15% general expenses.

However, it does not appear to this judge, also given the actions of partial compliance carried out by the plaintiffs, that the requirements have been met for an order under Art. 96 of the Code of Civil Procedure.

FOR WHICH REASONS

The Court, definitively ruling on the claims made in the complaint served on 07/29/2013 by Theofanis Papadas, in his own capacity and as legal representative of Versace 1969 Abbigliamento Sportivo s.r.l. and Gia+Fa s.r.l. against Gianni Versace s.p.a., ignoring all petitions and claims to the contrary, hereby:

Signed By: PAOLA MARIA GANDOLFI Issued By: POSTECOM CA3 Serial#: 68f67 – Signed By: CARMELO GAROFALO Issued By: POSTECOM CA3 Serial#: deeee



Decision no. 2471/2016 published on 02/25/2016
General Register

A) dismisses all of the plaintiffs' claims;

B) in partially granting the counterclaim, prohibits all use by the plaintiffs of distinctive signs containing the surname "Versace" to brand the products and their business, including its use as a firm, insignia and domain name, except for the company name within the very strict limits set forth in the reasoning (in business relationships with parties other than final consumers, in business correspondence, on the seal and in forms and where it is strictly required by law in interactions with administrative authorities and is not otherwise substitutable);

C) considering that the defendant is the owner of the European Union trademarks and, in particular, trademark 1665439 doc. 101 att.) registered for classes 9, 24 and 25, in view of the Court's competence pursuant to Art. 97 of EC Reg. no. 207 of 02/26/2009, § 1, it issues the aforementioned prohibition, pursuant to Art. 102 of the cited Reg., not only in relation to Italy but also in relation to all actions that may be committed in any European Union Member State;

D) orders the plaintiffs to reimburse the defendant for the costs of the proceedings, set at EUR 20,000.00 as stated above, plus accessory costs under law and 15% general expenses.

So decided in Milan, Chambers on 02/04/2016

The Chief Justice and reporting judge
Ms. Paola Gandolfi





City of New York, State of New York, County of New York

I, Wendy Poon, hereby certify that the document **"Sentenza 2471-16"** is to the best of my knowledge and belief, a true and accurate translation from Italian into English.

_____
Wendy Poon

Sworn to before me this
June 1, 2016

_____
Signature, Notary Public

ALITASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

EXHIBIT C

 SimplyHired

Search millions of jobs

Versace V1969

# store manager

San Francisco, CA
Date posted: May 04 2016

**Apply Now**

## Share This Page

   

### Related Searches

Assistant Manager

Service Manager

Ios Engineer

Store Manager

Ios Developer

Assistant Store Manager

General Manager

Product Manager

Sales Associate

Senior Software Engineer

We are looking for a store manager for our new location in San Francisco. The Versace V-1969 brand is a high end line of fashion and beauty products.

**Overview:** The Store Manager leads the overall store business objectives, including the achievement of sales and profitability goals. The store manager will have oversight of all store operations, as well as, recruiting, hiring and development of all team members. This dynamic individual will demonstrate excellent relationship building skills, with both internal and external clients, to establish an exceptional service culture. This individual will serve as a Versace v-1969 brand ambassador, engaging in opportunities that promote the product, vision and inspiration of the brand within the market.

· Create and execute strategic initiatives to deliver the planned annual sales goals· Lead, motivate and drive sales professionals to meet their sales goals and exceed the highest expectations for customer service· Demonstrate sales leadership for associates by taking an active role on the selling floor to engage clients, participate in clientele development, and build local brand/store awareness· Remain current and knowledgeable of industry trends, to determine strategic opportunities to maximize sales within the market.· Partner with the Buying & Merchandising team to ensure product assortment is consistent with market needs and sales goals· Monitor and measure all stores' performance and provide to Corporate leaders a thorough understanding and reporting of issues, performance results, opportunities, and challenges particular to specific locations of responsibility, along with recommendations and action plans for improvement.

Clientele/Service Management· Lead a culture focused on client satisfaction including resolution of customer services issues and empowerment of sales and operations associates to satisfy the client· Ensure associates deliver goals for CRM data capture/clientele rapport building and collaborate on the development of strategic customer retention and acquisition goals· Execute proactive strategic outreach with the goal of positioning and realizing future sales opportunities and exceeding customer expectations· Model, coach

### Cities with Store Manager jobs near San Francisco, CA

Brisbane, CA

Foster City, CA

Millbrae, CA

Berkeley, CA

Burlingame, CA

### Companies you might like

Whole Foods Market

Equinox

Williams-Sonoma

Wells Fargo

Gap

and hold staff accountable for providing a positive and rewarding client experience in all customer interactions· Guide store to ensure that client outreach and continued client development is executed on a regular basis with accountability practices in place for all sales professionals.
Operations· Deliver controllable expenses on and/or under expense budgets· Ensure all company policies and procedures are communicated appropriately and followed by all store associates· Establish a culture of inventory care and management by ensuring all inventory counts/audits is conducted in compliance with company standards.· Maintain proper care standards for the product to ensure quality saleable condition· Establish and maintain store opening and closing procedures and create staff work schedules that ensure appropriate store coverage to meet the needs of the business· Embrace technology to enhance customer experience and create expectation with associates to utilize· Ensure all security procedures are communicated appropriately and followed by all store associates
Talent Training and Development· Recruit top candidates for all positions with a focus on hiring talent that embodies the spirit and standards of the Versace v 1969 brand· Develop and motivate staff through clear communication, goal setting and regular coaching opportunities· Lead succession planning by training and developing store management team· Manage compliance with all company policies and ensure that all procedure are being followed for required disciplinary action· Identify training needs and develop growth potential of each staff member

**Qualifications** · Computer Skills: Proficient in Microsoft Word, Excel, and Outlook· Work Experience: 3+ years retail sales management experience in a similar role, preferably within a high-end luxury accessories boutique· Exceptional clientele, customer relationship building skills with the ability to lead a luxury service culture· Strong written and verbal communication skills with an emphasis on motivating talent to achieve goals.· Ability to manage multiple tasks in a fast-paced environment· Proven ability to manage high volume and inventory with an emphasis on driving results· Flexibility to work in various roles based on business needs (i.e. on the sales floor, operations, etc.).· Flexibility to work non-traditional hours, including days, nights, weekends and holidays.
Above all have passion for high end fashion ,skin care ,makeup and hair care .

Job Type: Full-time

Required experience:

- sales: 3 years

Apply Now

# EXHIBIT D

This is Google's cache of http://www.careerbuilder.com/job/JHV62877LP8R5MM027K?job_did=JHV62877LP8R5MM027K&searchid=bebc45ec-2edb-48e4-83bd-66a753a92942. It is a snapshot of the page as it appeared on Jun 8, 2016 18:23:59 GMT.

The current page could have changed in the meantime. Learn more

**Full version**     Text-only version     View source

Tip: To quickly find your search term on this page, press **Ctrl+F** or   **⌘-F** (Mac) and use the find bar.

Start a new
search



Advertisement



## Apply Now

# Human Resources Director

Versace V1969   •   Miami, FL   •   6/8/2016

☐ Save
Job        ☐ Email      ☐ Report

## Job Description

Job Description for HR Director

Summary

We are seeking a dynamic, resourceful and hands-on Human Resources Director who can guide and advance our human resources function and contribute as a team member. The successful candidate will possess the ability to handle highly-sensitive matters with professionalism and discretion. The position requires a great deal of initiative, follow-through, flexibility and resourcefulness, multi-tasking, prioritizing and adhering to deadlines with minimal supervision.

### Company Overview

**Versace V1969**

**Contact Information**

300 Northeast 183rd Street
Miami, FL
Eric Rudolph
Phone: 305-299-3010

## SIMILAR JOBS

The Human Resources Director will serve as a strategic business partner to align business objectives with employees and management. Provide HR leadership and expertise to senior leaders, act as employee advocate, change agent, and administrative expert in people matters. Ensure excellent HR service to all levels of employees.

## Responsibilities

● Develop and maintain HR systems, policies, and procedures, ensuring compliance with applicable laws and fulfillment of the organization's mission.

● Provide training and support to managers and supervisors to ensure compliance with HR policies and procedures in a manner consistent with best practices and the organization's values.

● Provide advice, consultation, and coaching to managers and supervisors to effectively resolve employee relations, performance, and/or discipline issues.

● Receive and resolve employee complaints and conduct investigations as needed.

● Conduct workforce planning and development.

● Develop and maintain job descriptions.

● Plan and manage employee recruitment selection and orientation.

● Plan and administer the organization's compensation policy.

● Plan and administer employee benefits program.

● Maintain performance review process, including training of all supervisors.

● Help Process semi-monthly payroll with CFO

● Plan and coordinate staff development and training.

● Organize and maintain company events.

● Additional projects as assigned by management.

● **Also help out with Operations Department**

**Human Resources Director**
Amatheon Pharmaceuticals

**Human Resources Director**
ARC Broward

**Human Resource Director / HR Director**
Care-Strong LLC

**Director of Human Resources**
Lucas Group - Search

**HR DIRECTOR - ACQUISITIONS & FIELD**
Sheridan Healthcorp Inc.

# Job Requirements

Qualifications

·  Bachelor's degree in Human Resources or Business
Management MBA a plus.

●  5 years progressively responsible human resource management
experience.

●  Minimum one year of Payroll experience.

●  Solid working knowledge of federal, state and local laws as they
apply to human resources management.

●  Computer proficiency to include word processing, spreadsheet,
database, HRIS, and Quickbooks.

●  Excellent verbal and written communication skills

●  Service-minded and team player with strong integrity and ability
to handle confidential information.

●  Flexibility and ability to drive change.

●  A take charge individual that wants to makes his mark in an
organization and has done it before in his prior work experience.

# Job Snapshot

| | |
|---|---|
| **Base Pay** | $37,500.00 - $45,000.00 /Year |
| **Employment Type** | Full-Time |
| **Job Type** | Human Resources |
| **Education** | 4 Year Degree |
| **Experience** | 5 to greater than 15 years |
| **Manages Others** | Yes |
| **Industry** | Retail |
| **Required Travel** | Not Specified |

Apply Now

**CAREERBUILDER TIP:**

For your *privacy and protection*, when applying to a job online, never give your social security number to a prospective employer, provide credit card or bank account information, or perform any sort of monetary transaction. *Learn more.*

By applying to a job using CareerBuilder.com you are agreeing to comply with and be subject to the CareerBuilder.com *Terms and Conditions* for use of our website. To use our website, you must agree with the *Terms and Conditions* and both meet and comply with their provisions.



Customer Service: (866) 438-1485

Sign in

Available on the
App Store

EXHIBIT E



# Human Resources Director

## V19.69 Italia • Miami, FL

*Posted 9 days ago*

**Apply Now**

☐ Email Job    ☐ Save Job

## Job Snapshot

| Full-Time | Experience - 5 to greater than 15 years | Degree - 4 Year Degree |
|---|---|---|
| $37,500.00 - $45,000.00 /Year | Retail | Human Resources |

## Job Description

<u>Job Description for HR Director</u>

Summary

We are seeking a dynamic, resourceful and hands-on Human Resources Director who can guide and advance our human resources function and contribute as a team member. The successful candidate will possess the ability to handle highly-sensitive matters with professionalism and discretion. The position requires a great deal of initiative, follow-through, flexibility and resourcefulness, multi-tasking, prioritizing and adhering to deadlines with minimal supervision.

The Human Resources Director will serve as a strategic business partner to align business objectives with employees and management. Provide HR leadership and expertise to senior leaders, act as employee advocate, change agent, and administrative expert in people matters. Ensure excellent HR service to all levels of employees.

Responsibilities

- Develop and maintain HR systems, policies, and procedures, ensuring compliance with applicable laws and fulfillment of the organization's mission.

- Provide training and support to managers and supervisors to ensure compliance with HR policies and procedures in a manner consistent with best practices and the organization's values.

- Provide advice, consultation, and coaching to managers and supervisors to effectively resolve employee relations, performance, and/or discipline issues.

- Receive and resolve employee complaints and conduct investigations as needed.

- Conduct workforce planning and development.

- Develop and maintain job descriptions.

- Plan and manage employee recruitment selection and orientation.

- Plan and administer the organization's compensation policy.

- Plan and administer employee benefits program.

- Maintain performance review process, including training of all supervisors.

- Help Process semi-monthly payroll with CFO

- Plan and coordinate staff development and training.

- Organize and maintain company events.

- Additional projects as assigned by management.

- **Also help out with Operations Department**

# Job Requirements

Qualifications
· Bachelor's degree in Human Resources or Business Management MBA a plus.

- 5 years progressively responsible human resource management experience.

- Minimum one year of Payroll experience.

- Solid working knowledge of federal, state and local laws as they apply to human resources management.

- Computer proficiency to include word processing, spreadsheet, database, HRIS, and Quickbooks.

- Excellent verbal and written communication skills

- Service-minded and team player with strong integrity and ability to handle confidential information.

- Flexibility and ability to drive change.

- A take charge individual that wants to makes his mark in an organization and has done it before in his prior work experience.

**Apply Now**

☐ Email Job    ☐ Save Job

*Help us improve CareerBuilder by providing feedback about this job:* *Report this Job.*

*C A R E E R B U I L D E R   T I P*

*For your privacy and protection, when applying to a job online, never give your social security number to a prospective employer, provide credit card or bank account information, or perform any sort of monetary transaction. Learn more.*

*By applying to a job using CareerBuilder you are agreeing to comply with and be subject to the CareerBuilder Terms and Conditions for use of our website. To use our website, you must agree with the Terms and Conditions and both meet and comply with their provisions.*

**V19.69 Italia**

**Contact Info**

300 Northeast 183rd Street
Miami, FL 33179
Eric Rudolph
Phone: 305-299-3010

## Similar Jobs

### Human Resources Manager

Robert Half Finance & Accounting U.S | FL - Miami

### Vice President of Human Resources

Benihana National Corporation | FL - Aventura

### Human Resources Director

ARC Broward | FL - Lauderhill

HR Manager- $70K- Fort Lauderdale- 40% Travel

Vaco Staffing | FL - Fort Lauderdale

Director of Human Resources

Lucas Group - Search | FL - Miami

**View All Similar Jobs**

## Job Seekers

International Jobs
Blog
Career Insights
Sitemap
Accessibility

## Help Center

Manage Email
Reset Password
Customer Service

## Employers

Search Resumes
Post Jobs
Talent Networks
Advertising

## CareerBuilder

About Us
Work at CareerBuilder
Send Feedback

200 N. LaSalle St.
Suite 1100
Chicago, IL 60601

## Stay Connected

Twitter
Instagram
Youtube
Facebook
Tumblr
Google Plus
Pinterest
LinkedIn

## Legal

Security & Fraud
Privacy Policy
Terms
Ad Choices ▷

## Search on the Go

Download on the App Store
GET IT ON Google play

© 2016 Careerbuilder, LLC. All rights reserved.