PAGES 1 – 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE HAYWOOD S. GILLIAM

GIANNI VERSACE, S.P.A. AND           )
VERSACE USA, INC.,                   )
                                     )
          PLAINTIFFS,                )
                                     )
  VS.                                ) NO. 16-CV-03617 HSG
                                     )
VERSACE 19.69 ABBIGLIAMENTO          )
SPORTIVO S.R.L., THEOFANIS           )
PAPADAS, V1969 VERSACE SMO LLC,      )
V1969 VERSACE HG LLC, AND V1969,     )
USA LLC,                             )
                                     )
          DEFENDANTS.                ) TUESDAY
                                     ) FEBRUARY 21, 2017
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  2:10 P.M. – 2:38 P.M.**

**APPEARANCES**:

**FOR PLAINTIFFS**          MUNGER, TOLLES & OLSON LLP
                            560 MISSION STREET
                            TWENTY-SEVENTH FLOOR
                            SAN FRANCISCO, CALIFORNIA 94105-2907
                     **BY:  ROSEMARIE T. RING, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                  *RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES (CONTINUED):**

**FOR DEFENDANT**        MILLER STARR REGALIA
**VERSACE 19.69**        N. CALIFORNIA BOULEVARD
**ABBIGLIAMENTO**        WALNUT CREEK, CALIFORNIA  94596
**SPORTIVO SRL**      **BY:  ALLISON KOP WOPSCHALL, ESQUIRE**


**FOR DEFENDANT**        **ADAM STEVEN ROSSMAN, ESQUIRE**
**V1969 VERSACE SMO LLC**   449 S. BEVERLY DRIVE
**V1969 VERSACE HG LLC**    SUITE 210
**V1969 USA LLC**        BEVERLY HILLS, CALIFORNIA 90212

```
1   TUESDAY, FEBRUARY 21, 2017                    2:10 P.M.

2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                          ---O0O---

6                         PROCEEDINGS

7        THE CLERK:  WE'RE CALLING C 16-3617, GIANNI VERSACE

8   S.P.A., ET AL. VERSUS VERSACE 1969 ABBLIGLIAMENTO SPORTIVO SRL,

9   ET AL.

10         PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR

11  THE RECORD.

12        MS. RING:  GOOD AFTERNOON, YOUR HONOR.  ROSE RING,

13  MUNGER, TOLLES & OLSON ON BEHALF OF GIANNI VERSACE S.P.A. AND

14  VERSACE USA INC.

15        THE COURT:  ALL RIGHT.  GOOD AFTERNOON, MS. RING.

16        MS. WOPSCHALL:  GOOD MORNING, YOUR HONOR.  ALLISON

17  WOPSCHALL, MILLER, STARR, REGALIA FOR DEFENDANTS MR. PAPADAS

18  AND WHAT'S BEEN KNOWN AS THE VAS DEFENDANTS.  IT'S V1969

19  ABBILGIAMENTO SPORTIVO SRL.

20        THE COURT:  EXCELLENT PRONUNCIATION.

21        MR. ROSSMAN:  GOOD AFTERNOON, YOUR HONOR.  ADAM

22  ROSSMAN ON COURT CALL FOR DEFENDANT V1969 VERSACE SMO LLC, HTC

23  LLC, AND USA LLC.

24        THE COURT:  GOOD AFTERNOON, MR. ROSSMAN AND

25  MS. WOPSCHALL.
```

1          ALL RIGHT.  SO I THINK THIS IS ACTUALLY OUR INITIAL

2     CASE MANAGEMENT CONFERENCE, ALTHOUGH I KNOW THERE HAS BEEN A

3     LOT HAPPENING OFF LINE.  THE THINGS I WANTED TO TALK WITH YOU

4     ABOUT ARE, ONE, THE PROPOSED SCHEDULE, INCLUDING WHAT THE

5     PARTIES ARE ANTICIPATING IN TERMS OF THIS PRELIMINARY

6     INJUNCTION MOTION.  AND THEN, TWO, WHETHER AND WHEN IT MAKES

7     SENSE TO SET THIS FOR A SETTLEMENT SESSION WITH THE MAGISTRATE.

8          I KNOW THAT YOU HAD A CALL LAST MONTH WITH OUR ADR

9     UNIT, AND IT STRUCK ME THAT THERE IS SOME VALUE AT SOME POINT

10    RELATIVELY SOON IN HAVING THAT DISCUSSION ONCE THERE'S SOME

11    DEGREE OF DISCOVERY THAT'S BEEN DONE.

12         SO THOSE ARE THE REAL TWO MAIN TOPICS THAT I HAVE.

13         I ALSO SAW REFERENCE IN THE JOINT STATEMENT TO VAS

14    DEFENDANT'S PLAN TO AMEND THE COMPLAINT TO ADD ANOTHER

15    COUNTERCLAIM, BUT THEN IT LOOKED TO ME THAT HAPPENED ON --

16         **MS. WOPSCHALL:**  FRIDAY.

17         **THE COURT:**  FRIDAY?

18         **MS. WOPSCHALL:**  YES.

19         **THE COURT:**  ALL RIGHT.  SO THAT'S DONE?

20         **MS. WOPSCHALL:**  THAT'S SETTLED.

21         **THE COURT:**  ALL RIGHT.

22         **MS. WOPSCHALL:**  IT WAS JUST AN ADDED DECLARATORY

23    RELIEF CLAIM, YOUR HONOR.  SO IT DOESN'T CHANGE MUCH.

24         **THE COURT:**  OKAY.  ALTHOUGH I SAW THAT THE SAME DAY

25    THE PLAINTIFF HAD HAD TO RESPOND, AND SO NOW DO THEY HAVE TO

1  RESPOND AGAIN TO YOUR REVISION, AND, IF SO, WHY WAS THAT NOT

2  COORDINATED BETTER?

3        **MS. WOPSCHALL:**  YEAH, WE HAD A LITTLE

4  MISCOMMUNICATION THERE, AND WE'LL DEFINITELY DO BETTER ABOUT

5  COMMUNICATING IN THE FUTURE.

6        WE THOUGHT WE HAD -- WE HAD LET THEM KNOW THAT WE

7  WERE PLANNING TO AMEND.  THEY DIDN'T KNOW THAT WE WERE PLANNING

8  TO AMEND, I GUESS, SO SOON.  SO I GUESS NEXT TIME WE'LL DO

9  BETTER ABOUT JUST TALKING TO EACH OTHER ABOUT IT.  WE NOTICED

10  RIGHT AFTER THE FACT THAT WE HAD A -- YOU KNOW, THAT WE WERE

11  PASSING SHIPS THAT DAY.

12        **THE COURT:**  RIGHT.  ALL RIGHT.  SO SCHEDULE AND THEN

13  ADR.

14        ANY OTHER TOPICS ON YOUR AGENDA?

15        **MS. RING:**  NO, YOUR HONOR.  WE SUBMITTED THE

16  SCHEDULE, THE PROPOSED SCHEDULE, ON FEBRUARY 10TH.  AS WE SAID

17  IN OUR SECTION OF THE JOINT CASE MANAGEMENT STATEMENT, WE THINK

18  THERE HAS BEEN MANY, MANY MONTHS OF UNNECESSARY DELAY, AND

19  INCLUDING WITH THE NEW YORK ACTION THAT WAS FILED IN THE MIDDLE

20  OF WHAT WE THOUGHT WERE SETTLEMENT DISCUSSIONS WITH NO NOTICE

21  TO US.

22        BUT NOW, SINCE THAT ACTION HAS BEEN STAYED AND THE

23  PRELIMINARY INJUNCTION MOTION THAT THEY FILED THERE HAS BEEN

24  DENIED, AND THE OTHER MOTION THAT THEY FILED IN THIS ACTION TO

25  DISMISS FOR LACK OF PERSONAL JURISDICTION HAS ALSO FINALLY BEEN

1   WITHDRAWN, WE THINK THE CASE CAN FINALLY PROCEED ON THE

2   SCHEDULE THAT WE PROPOSED.

3           ON THE SECOND ISSUE --

4           **THE COURT:**  WELL, HOLD ON.  SO I SAW THE PROPOSED

5   SCHEDULE.  IT SEEMED TO ME MORE DRAWN OUT THAN IT NEEDED TO BE.

6   THE FACT DISCOVERY PERIOD SEEMS A LITTLE TOO LONG.  I THOUGHT

7   THE EXPERT DISCOVERY PERIOD OF THREE MONTHS SEEMED WAY TOO

8   LONG.  AND SO IF -- I AGREE WITH YOU, I WANT TO GET IT MOVING,

9   AND I NEED SOME EXPLANATION AS TO WHY YOU ALL NEED A

10  THREE-MONTH PERIOD OF EXPERT DISCOVERY.

11          MY GENERAL INCLINATION WOULD BE ON FACT DISCOVERY TO

12  SET IT FOR END OF JULY, AND SO THAT'S -- I'M NOT SAYING I WON'T

13  LISTEN TO YOU, BUT THAT'S WHAT I WOULD IN THE ORDINARY COURSE

14  DO.  AND MY EXPERT DISCOVERY STANDARD IS WAY SHORTER THAN

15  WHAT'S BEEN PROPOSED.

16          SO WHY DON'T YOU ALL TELL ME WHAT IN PARTICULAR IN

17  TERMS OF WITNESSES, DOCUMENTS, ET CETERA, MOTIVATES THE

18  PROPOSAL THAT YOU MADE.

19          **MS. RING:**  SO, OF COURSE, YOUR HONOR.  THE PROPOSED

20  SCHEDULE IS THE SAME AS THE ONE THAT WE SUBMITTED IN SEPTEMBER

21  OF LAST YEAR WHEN WE FILED THE INITIAL CASE MANAGEMENT

22  CONFERENCE STATEMENT, EXCEPT WE DID GIVE MORE TIME FOR

23  SUBSEQUENT DEADLINES.  SO THE FACT DISCOVERY CUTOFF IS EXACTLY

24  THE SAME AS WHAT WE PROPOSED LAST YEAR.

25          THE OTHER -- FOR THE EXPERT DISCOVERY I -- WE HAD

1   DISCUSSION WITH OTHER COUNSEL.  THERE WAS SOME CONCERN THAT IT

2   WAS ALL OVER THE HOLIDAYS, AND SO THAT IT MIGHT BE DIFFICULT TO

3   LINE UP EXPERTS AND GET THEM TO RESPOND.

4        WE ARE CERTAINLY WILLING TO REVISIT THE SCHEDULE.  WE

5   WERE TRYING TO REACH AGREEMENT FOR THE COURT, BUT WE CAN

6   CERTAINLY REVISIT THOSE DATES.

7        ON FACT DISCOVERY, THE REASON THAT WE STAYED WITH THE

8   OCTOBER DATE THAT THE PARTIES INITIALLY PROPOSED IS THAT EVEN

9   THOUGH AT THE TIME THAT WAS ALSO A LOT OF TIME FOR FACT

10  DISCOVERY, WE WERE NOT ALLOWED TO TAKE ANY FACT DISCOVERY

11  DURING THAT PERIOD BECAUSE THE VAS DEFENDANTS INFORMED US THAT

12  IT WAS THEIR POSITION THAT THIS COURT DID NOT HAVE PERSONAL

13  JURISDICTION OVER THEM, THAT THEY WOULD OPPOSE ANY DISCOVERY WE

14  SERVED, AND SEEK PROTECTIVE ORDER.

15       AND SO TO AVOID THAT WHOLE MESS, I THINK AS THE COURT

16  MAY OR MAY NOT KNOW, WE SUBMITTED ADDITIONAL AND THEN AMENDED

17  STIPULATED SCHEDULES WHICH PROVIDED FOR RESOLUTION OF THE

18  PERSONAL JURISDICTION MOTION AND RELATED DISCOVERY.

19       IN EACH CASE, DAYS BEFORE THAT DISCOVERY WAS DUE TO

20  US, WE WERE TOLD THAT WE WOULD BE GETTING NO DISCOVERY, AND SO

21  WE AGREED TO AN ADJUSTED SCHEDULE.

22       IN SHORT, YOUR HONOR, WE HAVEN'T BEEN ABLE TO DO ANY

23  DISCOVERY BECAUSE FIRST WE WERE SUED IN NEW YORK AND THEN THE

24  PLAINTIFFS -- OR THE DEFENDANTS HERE WERE SEEKING TO DISMISS

25  FOR LACK OF PERSONAL JURISDICTION AND SAID THEY WOULD OPPOSE

```
 1    ANY DISCOVERY ON THAT BASIS.

 2              THE COURT:  UNDERSTOOD.  AND I'M NOT SAYING THAT THE

 3    PARTIES WERE ACTING INCONSISTENTLY WITH WHAT YOU PROPOSED

 4    BEFORE, BUT JUST STARTING RIGHT NOW -- SO, BASICALLY, WE ARE

 5    END OF FEBRUARY.  SO MARCH, APRIL, MAY, JUNE, JULY.  WHY WOULD

 6    WE NEED MORE THAN FIVE MONTHS OF DISCOVERY IN THIS CASE?

 7              MS. RING:  YOUR HONOR, MY HOPE WOULD BE WE COULD GET

 8    AT ALL DISCOVERY WE NEED BY THEN.  MY CONCERN IS THAT WE HAVE

 9    YET TO SEE ANY RESPONSE TO ANY DISCOVERY THAT WE SERVED.  AND

10    WE'VE NOW BEEN ASKED FOR ANOTHER EXTENSION TO RESPOND TO

11    DISCOVERY THAT WE DID SERVE ONCE THEY WITHDREW THE MOTION FOR

12    LACK OF PERSONAL JURISDICTION.

13              SO -- AND AS THE COURT PROBABLY KNOWS AS WELL, THESE

14    ARE FOREIGN DEFENDANTS, AND SO THERE HAS BEEN INNUENDO FROM

15    TIME TO TIME ABOUT HOW THEY MIGHT REQUIRE US TO SERVE THEM

16    THROUGH HAGUE CONVENTION, EVEN THOUGH THEY'VE ALREADY AGREED TO

17    ACCEPT SERVICE OF DISCOVERY AND OTHER PLEADINGS IN THIS CASE

18    OVER EMAIL.  SO --

19              MS. WOPSCHALL:  WELL, I CAN COMMENT ON THAT, YOUR

20    HONOR, IF IT WOULD BE HELPFUL.  GO AHEAD.

21              MS. RING:  PLEASE GO AHEAD.

22              MS. WOPSCHALL:  SO MY FIRM HAS JUST RECENTLY JOINED

23    THIS CASE, AS I AM SURE YOU'RE AWARE, JUST A FEW WEEKS AGO.  SO

24    WE AREN'T FULLY -- YOU KNOW, WE OBVIOUSLY WEREN'T INVOLVED IN

25    THESE EARLY DISCUSSIONS THAT MS. RING HAD WITH OUR CO-COUNSEL.
```

1  BUT AS FAR AS DISCOVERY, YOU KNOW, WE'RE INTENDING TO RESPOND

2  TO DISCOVERY.  IT WAS JUST SERVED IN JANUARY.  WE ASKED FOR A

3  SHORT TWO-WEEK EXTENSION, I BELIEVE, SINCE WE JUST JOINED THE

4  CASE.  BUT WE'RE FULLY WITHIN THE TIME PERIOD TO RESPOND TO

5  THAT, KEEPING IN MIND THAT EXTENSION.

6       MR. PAPADAS, WHO IS THE PRINCIPAL OF THE VAS

7  DEFENDANTS, HE'S AGREED TO BE DEPOSED IN NEW YORK, EVEN THOUGH

8  HE RESIDES IN GREECE.  SO I THINK THAT WILL SPEED THAT ALONG.

9       THE ONLY OTHER ISSUE I CAN THINK OF IS WE WILL NEED

10 TO DEPOSE SOME VERSACE WITNESSES.  I ASSUME THEY'RE PROBABLY

11 BASED IN ITALY.  I DON'T KNOW.  HOPEFULLY, WE CAN REACH SOME

12 KIND OF AGREEMENT WHERE PERHAPS THEY COULD TRAVEL TO THE U.S.,

13 PERHAPS, EITHER TO THE WEST COAST OR EAST COAST.

14       BECAUSE AS FAR AS DOCUMENTS, YOU KNOW, WE'VE

15 WITHDRAWN OUR PERSONAL JURISDICTION MOTION.  I UNDERSTAND THAT

16 VERSACE HAS WITHDRAWN THOSE PERSONAL JURISDICTION DISCOVERY

17 REQUESTS, SO THOSE AREN'T REALLY RELEVANT ANYMORE, AND WE'RE

18 READY TO PROCEED ON A FASTER SCHEDULE IF THAT'S WHAT THE COURT

19 WOULD LIKE.

20       YOU KNOW, TO BE HONEST, OUR CLIENT MAY BE OUT OF

21 BUSINESS SOONER RATHER THAN LATER IF WE DON'T RESOLVE THIS.  SO

22 WE'RE PREPARED TO RESOLVE IT AS QUICKLY AS WE CAN.

23       **MS. RING:**  YOUR HONOR, THIS IS THE FIRST I HEARD THAT

24 MR. PAPADAS AGREED TO A DEPOSITION IN NEW YORK, BUT I'M HAPPY

25 TO HEAR IT.  AND WE CAN CERTAINLY REVISIT AND TIGHTEN UP THE

1    SCHEDULE.

2              **THE COURT:**  YEAH.  IT SOUNDS TO ME LIKE FIVE OR SIX

3    MONTHS OF DISCOVERY -- AND OBVIOUSLY, YOU KNOW, IF SOMETHING

4    HAPPENS AND THERE IS AN ARTICULABLE BASIS FOR NEEDING TO CHANGE

5    THAT, I ALWAYS WILL LISTEN TO THAT.  BUT IT STRIKES ME THAT THE

6    SUBJECT MATTER OF THE CASE IS RELATIVELY WELL-DEFINED.  AND I

7    WOULD AGREE, I THINK IT'S IN BOTH PARTIES' INTERESTS TO HAVE

8    THIS SETTLED SOONER RATHER THAN LATER.

9              SO WHAT I WOULD SUGGEST IS YOU -- AND THEN IN TERMS

10   OF THE TRIAL, IT SEEMS TO ME THIS IS THE KIND OF CASE I WOULD

11   BE INCLINED TO HAVE RESOLVED BY A TRIAL, IF IT GOES THAT FAR,

12   BY ABOUT A YEAR FROM NOW.

13             SO PROBABLY WHAT IT MAKES SENSE TO DO IS GIVE YOU

14   THAT GUIDANCE, AND YOU CAN MEET AND CONFER AND COME BACK WITH

15   ANOTHER PROPOSAL THAT WILL HAVE THE ADDITIONAL HAPPY EFFECT OF

16   AVOIDING THE HOLIDAYS ALL TOGETHER FOR THE EXPERT DISCOVERY

17   BECAUSE IT WILL BE SOONER THAN THAT.  WHAT I WAS THINKING IS

18   END OF JULY FOR CLOSE OF FACT DISCOVERY.  AND, AGAIN, IF YOU

19   NEED A MONTH FOR SOME MORE THAN THAT, IT SOUNDS LIKE WITH

20   POTENTIAL FOREIGN WITNESSES, THAT COULD BE REASONABLE.  AND

21   THEN, YOU KNOW, A TRIAL IN EARLY FEBRUARY OR BEGINNING OF

22   MARCH, AT THE LATEST, OF 2018.

23             AND THEN I ALWAYS NEED -- ACTUALLY, THE AMOUNT OF

24   TIME THAT YOU BUILT IN BETWEEN THE DISPOSITIVE MOTION HEARING

25   AND THE PRETRIAL CONFERENCE SEEMED FINE.  I USUALLY TRY TO HAVE

1    ABOUT TWO TO THREE MONTHS IN BETWEEN THOSE DEADLINES SO THAT I

2    CAN RESOLVE THE DISPOSITIVE MOTIONS IN TIME FOR YOU TO HAVE

3    THAT BEFORE YOU HAVE TO START DOING YOUR PRETRIAL FILINGS.

4              BUT I WOULD SUGGEST YOU TAKE A CRACK WITH THAT

5    FEEDBACK AND SEE WHAT YOU CAN COME UP WITH IN TERMS OF A

6    SCHEDULE.

7              AND THEN WITH REGARDS TO THE MAGISTRATE JUDGE

8    MEETING, IT DID -- WHAT I GATHERED FROM THE REPORT THAT I READ

9    FROM MR. HERMAN WAS THAT THE PARTIES THOUGHT THAT AN ADR

10   DISCUSSION COULD MAKE SENSE BUT ONLY AFTER THERE WAS SOME

11   DISCOVERY, WHICH I CAN UNDERSTAND.

12             AND SO THE QUESTION FOR YOU HERE IS:  ONE, DO YOU

13   HAVE A PREFERENCE AS BETWEEN PRIVATE MEDIATION AND MAGISTRATE

14   JUDGE SETTLEMENT CONFERENCE?  AND, TWO, TAKING INTO ACCOUNT

15   THAT OFTEN A VOLUNTARY EXCHANGE OF SOME KEY INFORMATION HELPS

16   TO SET THE TABLE FOR THAT DISCUSSION, HOW LONG DO YOU THINK IT

17   WOULD BE BEFORE THAT COULD BE PRODUCTIVE?

18             **MS. WOPSCHALL:**  WELL, YOUR HONOR, IF I MIGHT, I THINK

19   FROM OUR PERSPECTIVE, MORE IMPORTANT IS PROBABLY THIS

20   PRELIMINARY INJUNCTION MOTION THAT WE'VE NOTED IN OUR

21   STATEMENT.  YOU KNOW, THE WAY WE SEE THIS CASE IT'S REALLY MORE

22   OF A CONTRACT CASE THAN A TRADEMARK CASE (INDISCERNIBLE) TO THE

23   INTERPRETATION OF THE CONCILIATION AGREEMENT.  SO WE PLAN TO

24   FILE THAT AS SOON AS WE CAN.

25             WE CHECKED THE COURT'S DOCKET THIS MORNING.  I SEE

1  MAY 4TH IS THE SOONEST HEARING DATE THAT YOUR HONOR HAS

2  AVAILABLE.  I DON'T KNOW IF IT'S POSSIBLE TO RESERVE THAT DATE

3  TODAY.  I KNOW THAT YOU DON'T NECESSARILY RESERVE THEM ONLINE

4  OR ANYTHING LIKE THAT.  BUT I THINK FROM OUR PERSPECTIVE

5  PROBABLY -- I THINK IT WOULD BE HELPFUL TO HAVE A RULING ON

6  THAT ISSUE BEFORE WE HAVE -- FOR THE SETTLEMENT DISCUSSIONS.

7      THAT SAID, WE'RE ALWAYS WILLING TO DISCUSS

8  SETTLEMENT.  IF PLAINTIFFS DISAGREE AND THINK IT WOULD BE

9  HELPFUL TO HAVE A DISCUSSION BEFORE THEN, WE COULD TALK ABOUT

10  THAT.  BUT THAT'S OUR PERSPECTIVE RIGHT NOW.

11      **THE COURT:**  ALL RIGHT.  WELL, IN TERMS OF THE

12  LOGISTICS, YOU CAN'T RESERVE THE DATE, BUT, YOU KNOW, YOU

13  CAN -- IF YOU CAN GET IT ON FILE IN TIME THAT THAT DATE IS

14  STILL OPEN, YOU CAN PUT IT ON THAT DAY.  IF YOU WANT TO SEEK A

15  SHORTENED TIME HEARING, YOU CAN ALWAYS DO THAT, TOO, AND YOU

16  CAN HAVE THE DISCUSSION AS TO WHETHER YOU'D STIPULATE TO THAT,

17  AND I'LL FIGURE OUT A DATE.

18      SO -- BUT I DON'T RESERVE DATES IN ADVANCE.

19      MS. RING, WHAT'S YOUR PERSPECTIVE IN TERMS OF THE

20  TIMING QUESTION?

21      **MS. RING:**  WELL, YOUR HONOR, THIS PRELIMINARY

22  INJUNCTION MOTION HAS ALREADY BEEN BROUGHT AND DENIED IN NEW

23  YORK, THE EXACT SAME MOTION.  SO, OBVIOUSLY, WE DON'T THINK

24  IT'S THAT IMPORTANT TO HAVING THESE DISCUSSIONS.

25      AND, IN FACT, I DON'T KNOW IF YOUR HONOR HAD READ THE

1    INITIAL CASE MANAGEMENT CONFERENCE THAT WE FILED AND SAW THE

2    VERY, VERY LONG HISTORY BETWEEN THESE PARTIES, BUT,

3    ESSENTIALLY, WE ARE ALWAYS OPEN TO SETTLEMENT DISCUSSION, AND

4    WE ATTEMPTED TO DO THAT.

5            MR. PAPADAS HAS THE VIEW THAT SINCE THE NAME OF HIS

6    COMPANY IS VERSACE 1969 ABBIGLIAMENTO SPORTIVO, THAT HE CAN USE

7    THAT NAME AS HE LIKES.  AND, IN PARTICULAR, UNDER THIS

8    CONCILIATION AGREEMENT, HIS POSITION IS THAT THE CONCILIATION

9    AGREEMENT SAYS THAT HE CAN USE THE NAME AS REQUIRED BY LAW AND

10   ON PRODUCT LABELING, DESPITE THE FACT THAT EVERY COURT IN ITALY

11   BEFORE WHICH THIS AGREEMENT WAS ENTERED HAS DISAGREED WITH HIM

12   AND DENIED THE SAME CLAIM FOR DECLARATORY RELIEF THAT HE'S

13   SEEKING HERE.  SO HIS ONLY RESPONSE TO THAT IS THE ITALIAN

14   COURTS ARE WRONG.  SO IT'S BEEN VERY HARD TO MAKE PROGRESS ON

15   THAT AND TRY TO CONVINCE HIM OTHERWISE.

16           I THOUGHT, YOU KNOW, IN OUR DISCUSSION WITH

17   MR. HERMAN, IT WAS SUGGESTED THAT MAYBE IT WOULD HELP TO HAVE

18   THE INPUT AND VIEW OF A MAGISTRATE JUDGE TO HELP, YOU KNOW,

19   EXPLAIN THE U.S. SYSTEM AND THAT THESE ARE BINDING ORDERS

20   ENTERED BY THE ITALIAN COURT.

21           RIGHT NOW MR. PAPADAS AND VERSACE 1969 ABBIGLIAMENTO

22   SPORTIVO ARE SUBJECT TO AN INJUNCTION THROUGHOUT THE EU

23   PROHIBITING THEM FROM USING THE VERSACE NAME.  SO THAT SEEMS

24   LIKE IT OUGHT TO BE PRETTY COMPELLING, BUT IT'S NOT, FOR

25   WHATEVER REASON.

```
 1            SO I ACTUALLY THOUGHT MR. HERMAN'S POINT WAS A GOOD

 2   ONE AND WE WOULD BE WILLING TO PARTICIPATE IN A MEDIATION

 3   SESSION WITH A MAGISTRATE JUDGE WHO MIGHT BE ABLE TO HELP US

 4   EXPLAIN WHAT THAT MEANS.

 5            THE COURT:  YEAH.  I MEAN, THAT WAS A QUESTION I HAD,

 6   IS WHAT'S THE COLLATERAL ESTOPPEL EFFECT OF THESE ORDERS?  IT

 7   DOES SEEM LIKE THIS EXACT SAME ISSUE --

 8            MS. RING:  RIGHT.

 9            THE COURT:  -- HAS BEEN ADDRESSED MULTIPLE TIMES.

10            MS. WOPSCHALL:  AND I CAN COMMENT ON THAT, YOUR

11   HONOR.  WE DISAGREE WITH THAT, OBVIOUSLY.

12            THE COURT:  WITH WHAT?

13            MS. WOPSCHALL:  WITH HER CHARACTERIZATIONS OF THE

14   PREVIOUS ITALIAN COURT DECISIONS.  THERE HAVE BEEN --

15            THE COURT:  UNDERSTOOD.  AT SOME POINT I'LL TO HAVE

16   READ THEM.  I SKIMMED IT.  BUT IF -- ONCE I DECIDE WHAT WAS

17   FOUND, WHY DOES THAT NOT HAVE COLLATERAL ESTOPPEL EFFECT HERE?

18            MS. WOPSCHALL:  UNDERSTOOD, YOUR HONOR.  AND I THINK

19   MS. RING HAS NOT SEEN OUR MOTION, AND IT'S GOING TO BE

20   DIFFERENT FROM THE NEW YORK PRELIMINARY INJUNCTION MOTION.

21   AGAIN, MY --

22            THE COURT:  JUST A SIMPLE QUESTION.

23            MS. WOPSCHALL:  YES.

24            THE COURT:  ONCE I INTERPRET WHAT THESE ITALIAN

25   ORDERS SAY, WHATEVER IT IS, DO YOU AGREE THAT THEY HAVE
```

1    COLLATERAL ESTOPPEL EFFECT IN THIS MATTER?

2              **MS. WOPSCHALL:**  WHAT THE PREVIOUS ITALIAN COURTS'

3    DECISIONS SAY?

4              **THE COURT:**  YEAH.

5              **MS. WOPSCHALL:**  NOT NECESSARILY, YOUR HONOR, BECAUSE

6    I THINK IT DEPENDS ON YOUR -- THE AGREEMENT IS WHAT IS CRITICAL

7    HERE, NOT THE ITALIAN COURTS' INTERPRETATION OF THAT.  I THINK

8    YOU HAVE THE RIGHT AND THE DUTY TO INTERPRET THAT AGREEMENT --

9              **THE COURT:**  REALLY?

10             **MS. WOPSCHALL:**  -- RIGHT NOW.  THE TEXT OF THE

11   AGREEMENT, YEAH.

12             **THE COURT:**  SO IN YOUR VIEW, THERE'S NO -- THERE'S NO

13   EFFECT WHATSOEVER BY THE FACT THAT ITALIAN COURTS HAVE

14   CONSIDERED PRECISELY THE ARGUMENT THAT YOU'RE PRESENTING TO ME?

15             **MS. WOPSCHALL:**  WELL, I'D SAY, YOUR HONOR, WE'RE NOT

16   MAKING PRECISELY THE SAME ARGUMENT.  OUR PRELIMINARY INJUNCTION

17   MOTION IS GOING TO BE VERY NARROWLY TAILORED.

18             YOU KNOW, WE REALIZE THERE'S A HIGH BURDEN ON US TO

19   PREVAIL ON A MOTION LIKE THAT.  AND WE'RE FOCUSING SPECIFICALLY

20   ON THE LANGUAGE IN THE AGREEMENT THAT SAYS VERY SPECIFICALLY WE

21   CAN USE OUR COMPANY NAME AS REQUIRED BY LAW AND ON PRODUCT

22   LABELING.

23             **THE COURT:**  SO HOW WOULD THAT MAKE ANY SENSE?  I

24   MEAN, THE MOCKUP IN THE COMPLAINT SHOWS THAT THE STORE YOUR

25   PLANNING SAYS VERSACE IN HUGE LETTERS.  HOW WOULD THAT BE

1 POSSIBLY BE RIGHT?

2       **MS. WOPSCHALL:**  RIGHT.  I'M NOT TALKING ABOUT THE

3 STORE OR THE LICENSEES.  I GUESS IT'S IMPORTANT TO REALIZE IN

4 THIS CASE THERE'S MR. PAPADAS AND THE VAS DEFENDANTS, AND THEN

5 THERE IS THE LICENSEES.  THOSE ARE THE ONES THAT OPENED THE

6 STORE.  THOSE ARE SEPARATE FROM US.  WE DIDN'T HAVE ANYTHING TO

7 DO WITH THAT.  WE BELIEVE THE LICENSEES WOULDN'T BE ON THE

8 LICENSING AGREEMENT IN OPERATING -- OR ATTEMPTING TO OPEN THOSE

9 STORES.

10       SO WE'RE FOCUSED JUST ON PRODUCT LABELING AND WHAT WE

11 ARE AUTHORIZED TO DO UNDER THE VOLUNTARY CONCILIATION AGREEMENT

12 THAT VERSACE ENTERED INTO.

13       I THINK WHAT'S IMPORTANT TO NOTE IS THAT WAS A

14 VOLUNTARY SETTLEMENT AGREEMENT.  MR. PAPADAS WOULD NOT HAVE

15 ENTERED INTO THAT AGREEMENT IF HE WAS GIVING UP ALL RIGHTS.

16 VERSACE'S INTERPRETATION OF THAT AGREEMENT IS THAT HE'S NOT

17 ALLOWED TO USE HIS COMPANY NAME AT ALL.  IT DOESN'T MAKE SENSE

18 THAT HE WOULD AGREE TO THAT VOLUNTARILY IN A SETTLEMENT

19 CONTEXT.  HE'S GETTING SOMETHING IN THAT AGREEMENT.  VERSACE IS

20 NOW ARGUING THAT HE GAVE UP ALL RIGHTS BY VIRTUE OF THIS

21 AGREEMENT.  THAT'S NOT OUR INTERPRETATION.  AND, OF COURSE, THE

22 COURT NEEDS TO RULE ON THAT.

23       THERE ARE SOME ITALIAN COURT DECISIONS THAT MS. RING

24 WILL ARGUE GO AGAINST US, BUT THERE ARE OTHER ITALIAN COURT

25 DECISIONS THAT WE'LL BRING TO THE COURT'S ATTENTION THAT ARE

1   FOR US.  SO THE AUTHORITY IS REALLY SPLIT ON THIS, YOUR HONOR.

2   I DON'T THINK IT'S AS BLACK AND WHITE AS VERSACE WOULD LIKE IT

3   TO BE.

4            AGAIN, THIS MOTION WILL BE VERY NARROWLY TAILORED.

5   WE'LL HAVE SPECIFIC EVIDENCE EXPLAINING WHY WE INTERPRET THE

6   AGREEMENT THE WAY WE DO.  I'M SURE VERSACE WILL HAVE THEIR OWN

7   EVIDENCE.  AND THEN ONCE I THINK THAT ISSUE'S RESOLVED, THE

8   CASE CAN PROBABLY PROCEED PRETTY QUICKLY.

9            **MS. RING:**  YOUR HONOR, I'M SORRY, BUT I KNOW --

10  SORRY.

11           **THE COURT:**  YOU DON'T HAVE TO MAKE THE RECORD.  I

12  KNOW YOU DISAGREE WITH EVERYTHING THAT WAS SAID.  I'M NOT

13  TAKING ON BOARD THAT ANY OF THAT'S TRUE.

14           **MS. RING:**  I UNDERSTAND.  I JUST WANTED TO ADDRESS

15  ONE ADDITIONAL UNTIL POINT ABOUT THE LICENSEES AND THE STORES.

16           **THE COURT:**  OKAY.

17           **MS. RING:**  AND THEIR COUNSEL, I THINK, IS ON THE

18  PHONE.

19           BUT I JUST -- IT MADE ME -- I THINK THAT WE SHOULD

20  ADDRESS WE WERE GOING TO FILE A PRELIMINARY INJUNCTION MOTION

21  OURSELVES, AND WE DIDN'T.  THEY HAD ASKED US TO HOLD OFF SO

22  THAT WE COULD ENGAGE IN SETTLEMENT DISCUSSIONS, WHICH WE DID.

23           WE SENT CEASE AND DESIST LETTERS, WHICH ARE THE

24  SUBJECT OF THEIR COUNTERCLAIMS.  IN RESPONSE TO THOSE CEASE AND

25  DESIST LETTERS, THE LICENSEES AND MANY RETAILERS CONTACTED US

1  AND TOLD US THAT THEY HAD BEEN TOLD ALL KINDS OF THINGS ABOUT

2  THE VERSACE 1969 ABBIGLIAMENTO SPORTIVO, THAT IT WAS FOUNDED BY

3  GIANNI VERSACE'S COUSIN, THAT HE WORKED AT VERSACE, THAT HE WAS

4  PART OF BUILDING THE HOUSE OF VERSACE.  ALL LIES.

5          AND THEN ON THAT BASIS, INCLUDING THE LICENSEE

6  DEFENDANTS IN THIS CASE, FILED CLAIMS FOR FRAUD AGAINST THESE

7  DEFENDANTS IN L.A. SUPERIOR COURT.

8          SO BASED ON DISCUSSIONS WITH THEM WHERE THEY INFORMED

9  US OF THIS AND SAID THAT ON THAT BASES THEY FELT THEY'D BEEN

10  INDUCED INTO THESE LICENSE AGREEMENTS AND THEY WEREN'T GOING TO

11  BE DOING BUSINESS ANYMORE WITH THE LICENSOR.  AS THE LICENSOR

12  NOW SAYS IN ITS COUNTERCLAIMS THAT ITS BUSINESS IS EFFECTIVELY

13  OVER IN THE U.S., WE DIDN'T SEE A NEED TO MOVE FOR A

14  PRELIMINARY INJUNCTION AT THIS POINT.

15          WE HEARD SIMILAR THINGS FROM RETAILERS WHO HAVE

16  RESPONDED TO US WHO THOUGHT THIS WAS A DIFFUSION LINE OF

17  VERSACE, BECAUSE IT WAS REPRESENTED, AGAIN, AS BEING RELATED TO

18  IN GIANNI VERSACE, AND I THINK JUST AS ANY REASONABLE PERSON

19  WOULD ASSUME GIVEN THE NAME.

20          **THE COURT:**  ALL RIGHT.  AGAIN, I DON'T DISPUTE THAT

21  YOU TWO HAVE DIAMETRICALLY OPPOSED POSITIONS ON THE FACTS.  BUT

22  HERE'S -- FOR MY PURPOSES -- SO, ONE, YOU'LL MEET AND CONFER

23  ABOUT A SHORTER SCHEDULE.  TWO, IT SEEMS TO ME YOU OUGHT TO

24  FILE YOUR MOTION ASAP, AND IF YOU WANT IT TO BE HEARD ON A

25  NORMAL CALENDAR, NOTICE IT FOR AN AVAILABLE DATE.  IF YOU

1    WANT -- IF YOU THINK THERE'S A BASIS FOR SHORTENING TIME THAT

2    IS COMPELLING, MEET AND CONFER WITH THE PLAINTIFFS, AND IF YOU

3    AGREE TO SEEK A HEARING ON SHORTENED TIME, THAT'S SOMETHING I'D

4    CONSIDER, BUT -- WELL, IF YOU WANT IT ON SHORTENED TIME, YOU

5    SHOULD PRESENT SOME COMPELLING BASIS FOR DOING THAT.

6            AND THEN, THREE, I THINK I OUGHT TO REFER YOU AT THIS

7    POINT FOR THE SETTLEMENT DISCUSSION WITH A MAGISTRATE JUDGE,

8    AND I CAN EXPLAIN THE LANDSCAPE.  I THINK I'LL MAKE THE

9    REFERRAL NOW, BUT, YOU KNOW, I SUPPOSE IT COULD MAKE SOME SENSE

10   TO HAVE THAT DISCUSSION TAKE PLACE AFTER THE PRELIMINARY

11   INJUNCTION ISSUE IS JOINED.  I THINK AT THAT POINT YOU'LL HAVE

12   A PRETTY GOOD SENSE OF AT LEAST A PRELIMINARY DIRECTION OF THE

13   CASE.

14           **MS. RING:**  YOUR HONOR, IF I MIGHT, ON THAT TOPIC?

15   SORRY.  I DIGRESSED BEFORE.  BUT ON THAT TOPIC, I DON'T THINK

16   THIS PRELIMINARY INJUNCTION MOTION HAS ANY IMPACT ON ANY

17   MEDIATION DISCUSSION WE WOULD HAVE.  EVEN IF IT'S GRANTED, IT

18   JUST MEANS WE'RE NOT GOING TO SEND ANY MORE CEASE AND DESIST

19   LETTERS.  OUR CLAIMS, OUR TRADEMARK INFRINGEMENT CLAIMS, REMAIN

20   EXACTLY THE SAME.

21           **THE COURT:**  YEAH.

22           **MS. RING:**  THAT IS THE CORE OF THE DISPUTE.  SO I

23   ACTUALLY --

24           **THE COURT:**  I GATHER THERE'S A LOT OF HEADBUTTING ON

25   THERE, RIGHT?  I GOT TO REFER IT AT SOME POINT.

1          **MS. RING:**  YEAH.

2          **THE COURT:**  IF YOU TWO ARE GOING TO COME IN AND SAY

3    YOU AGREE THAT IT SHOULD BE SOONER THAN THAT, TERRIFIC, I'LL DO

4    IT.  OTHERWISE, I GOT TO MAKE A DECISION ABOUT WHAT MAKES SOME

5    LOGICAL SENSE.  I'M NOT ASSIGNING ANY IMPORT TO IT ONE WAY OR

6    THE OTHER IN TERMS OF THE OVERALL VIEW OF THE CASE.  I DON'T

7    KNOW.  I'VE JUST GOTTEN --

8          **MS. RING:**  MY ONLY POINT IS, YOUR HONOR --

9          **THE COURT:**  -- INTO THE CASE.

10          BUT THE POINT IS IF YOU AGREE -- IF YOU TWO AGREE

11    THAT THAT TIMING MAKES SENSE, GREAT, COME BACK AND LET ME KNOW

12    THAT.  OTHERWISE, I'VE JUST GOT TO MAKE A JUDGMENT, AND IT

13    SEEMS TO ME THAT'S PROBABLY AROUND THE RIGHT TIME.

14          **MR. ROSSMAN:**  YOUR HONOR, IF I COULD?  THIS IS ADAM

15    ROSSMAN?

16          **THE COURT:**  SURE.

17          **MR. ROSSMAN:**  RECENTLY MY CLIENTS RECEIVED

18    TERMINATION LETTERS FROM THE VAS DEFENDANTS, PAPADAS' COMPANY.

19    SO, YOU KNOW, FROM OUR POINT OF VIEW, THE SOONER THE BETTER ON

20    THE MEDIATION, BECAUSE IT SEEMS THE CASE MORE OR LESS KIND OF

21    BOILS DOWN TO WHETHER OR NOT VAS DEFENDANTS HAVE THE RIGHT TO

22    USE THE NAME VERSACE, HOWEVER THIS IS SET FORTH IN THIS ITALIAN

23    AGREEMENT AND HOW IT WAS INTERPRETED BY THE COURT.  AND IF THAT

24    CAN BE DETERMINED SOONER THAN LATER, THAT WOULD CERTAINLY SPEED

25    UP THE CASE A LOT.

1          **THE COURT:**  THAT'S THE ENTIRE ISSUE TO BE DETERMINED.

2    SO YES --

3          **MR. ROSSMAN:**  YEAH.

4          **THE COURT:**  -- I AGREE.  BUT HOW WOULD YOU PROPOSE TO

5    RESOLVE THAT IMMEDIATELY?

6          **MR. ROSSMAN:**  WELL, IT SEEMS -- I DON'T KNOW IF THE

7    DISCOVERY THAT NEEDS TO BE DONE IS IN ORDER TO DETERMINE

8    DAMAGES, BECAUSE THIS ITEM DOESN'T SEEM TO NEED DISCOVERY.  IT

9    JUST SEEMS TO NEED THE INTERPRETATION OF THE COURT.  IF THE

10   COURT IS GOING TO INDULGE VAS DEFENDANTS IN BRINGING A NEW

11   INTERPRETATION TO WHAT THE ITALIAN COURTS HAVE ALREADY

12   DONE (INDISCERNIBLE) ISSUES TO BE BIFURCATED AND THEN --

13         **THE COURT:**  RIGHT.  THAT'S CALLED A MOTION FOR

14   SUMMARY JUDGMENT, RIGHT?  THAT'S HOW IT WORKS.

15         **MR. ROSSMAN:**  RIGHT.

16         **THE COURT:**  IF YOU ALL WANT TO STIPULATE TO A

17   DISCOVERY SCHEDULE IN A MONTH AND WE PROCEED RIGHT TO SUMMARY

18   JUDGMENT, THAT'S GREAT.  THE POINT IS I GET IT.  I GET WHAT THE

19   ISSUES ARE IN THE CASE.

20         **MR. ROSSMAN:**  RIGHT.

21         **THE COURT:**  YOU KNOW, IT DOES SEEM TO ME THAT THERE'S

22   A FAIR AMOUNT OF TURN AND FRICTION IN THE CASE, AND I GET IT.

23   IT'S A HARD-FOUGHT CASE.

24         BUT MY OBJECTIVE IS TO MOVE THE CASE FORWARD, YOU

25   KNOW, IN A REASONABLE MANNER, HAVE IT RESOLVED EITHER WAY BY A

1    YEAR FROM NOW, AND, IN THE MEANTIME, GET YOU AT WHAT SEEMS TO

2    BE THE RIGHT TIME TO A MAGISTRATE JUDGE TO HAVE THAT

3    DISCUSSION.  SO THOSE ARE THE THINGS THAT I WILL PUT IN PLACE.

4         SOME WHAT I'M WAITING FOR FROM YOU ALL IS A PROPOSED

5    REVISED SCHEDULE, AND THEN I'LL BE ON THE LOOKOUT FOR THE

6    PRELIMINARY INJUNCTION MOTION.  AND IN THE MEANTIME, I'LL

7    NEIGHBORING SETTLEMENT REFERRAL AND DISCUSS WITH THE MAGISTRATE

8    JUDGE WHAT I THINK IS THE RIGHT TIMING FOR THAT, AND WE'LL GO

9    FROM THERE.

10        **MS. WOPSCHALL:**  NO OBJECTION, YOUR HONOR.  THAT

11   SOUNDS GOOD TO US.

12        **MS. RING:**  THANK YOU, YOUR HONOR.

13        **THE COURT:**  ALL RIGHT.  YOU'RE WELCOME.

14        **MR. ROSSMAN:**  THANK YOU, YOUR HONOR.

15        (PROCEEDINGS ADJOURNED AT 2:38 P.M.)

16

17

18

19

20

21

22

23

24

25

1
## CERTIFICATE OF TRANSCRIBER

2

3      I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4  TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5  THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6  U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7  PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8  ABOVE MATTER.

9      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10 RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11 WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12 FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13 ACTION.

14

15                          *jmcolumbini*

16                    JOAN MARIE COLUMBINI

17                      MARCH 9, 2017

18

19

20

21

22

23

24

25