NICHOLAS G. KARAMBELAS (*pro hac vice*)
nick@ngklaw.com
SFIKAS & KARAMBELAS LLP
1101 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 669-0187
Facsimile: (240) 465-0400

GERARD F. DUNNE (*pro hac vice*)
Jerry.Dunne@dunnelaw.net
LAW OFFICES OF GERARD F. DUNNE
41 Union Square West
New York, New York 10003
Telephone: (212) 645-2410
Facsimile: (212) 645-2435

SUIZI LIN (CA SBN 245710)
SuiziLaw@gmail.com
LAW OFFICE OF SUIZI LIN
5920 Newpark Mall Road
Newark, CA 94560
Telephone: (510) 689-1988
Facsimile: (510) 588-5580

WILLIAM DUNNEGAN (*pro hac vice*)
wd@dunnegan.com
DUNNEGAN & SCILEPPI LLC
350 Fifth Avenue, Suite 4908
New York, New York 10118
Telephone: (212) 332-8300
Facsimile: (212) 332-8301

Attorneys for Defendants
VERSACE 19.69 ABBIGLIAMENTO
SPORTIVO S.R.L. and THEOFANIS
PAPADAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| GIANNI VERSACE, S.P.A. and VERSACE USA, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>VERSACE 19.69 ABBIGLIAMENTO SPORTIVO S.R.L., THEOFANIS PAPADAS, VALERO ENTERPRISES, INC; SUSAN VALERO; V1969 BH LLC; BRILLIANCE NEW YORK LLC; V1969 VERSACE SMO LLC; V1969 VERSACE HG LLC; AND V1969 USA LLC,<br><br>Defendants. | Case No. 3:16-cv-03617-HSG<br><br>**NOTICE OF MOTION AND MEMORANDUM OF THE VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 8, 2018<br>Time: 2:00 p.m.<br>Courtroom: Rm. 2, Fl. 4<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Trial Date: May 28, 2018<br>Action Filed: June 27, 2016 |

TO COUNSEL OF RECORD:

Defendants Versace 19.69 Abbigliamento Sportivo S.R.L. and Theofanis Papadas

(collectively, "VAS") will move on March 8, 2018, at 2:00 p.m., for an order pursuant to Rule 56

of the Federal Rules of Civil Procedure.

VAS seeks an order granting partial summary judgment dismissing as a matter of law the following claims:

(i)      Plaintiffs' trademark infringement claims – false designation of origin under 15 U.S.C. § 1125(a) (Count I); trademark infringement under 15 U.S.C. § 1114 (Count II); trademark infringement under California common law (Count IV), and unfair competition under Cal. Bus. & Prof. Code § 17200 (Count VII) – insofar as they seek a monetary recovery because any confusion related to any products VAS licensed did not result in plaintiffs sustaining any damage or VAS, or its licensees, receiving any revenue;

(ii)      Plaintiffs' federal trademark claims – false designation of origin under 15 U.S.C. § 1125(a) (Count I); trademark infringement under 15 U.S.C. § 1114 (Count II); trademark dilution under 15 U.S.C. § 1125(c) (Count III) – insofar as they seek a monetary recovery for acts that occurred before the filing of this action on June 27, 2016, because (a) plaintiffs failed to mark their products bearing the VERSACE trademark in compliance with 15 U.S.C. § 1111, and (b) VAS did not have "actual notice" of the registration of the VERSACE trademark with the United States Patent & Trademark Office ("USPTO") until after the filing of the complaint in this action;

(iii)      Plaintiffs' California infringement claims – trademark infringement under California common law (Count IV) and unfair competition under Cal. Bus. & Prof. Code § 17200 (Count VII) – to the extent that they seek a monetary recovery resulting from infringing sales that did not occur within, into, or from California;

(iv)      Plaintiffs' trademark dilution claims – 15 U.S.C. § 1125(c) (Count III) and Cal. Bus. & Prof. Code § 14330 (Count VI) – because VAS (a) did not directly dilute the VERSACE trademark, and (b) neither federal nor state law impose liability and/or damages for contributory dilution; and

(v)      Versace USA, Inc.'s claims in their entirety because it does not own any trademark

asserted in this action.

Dated: February 1, 2018

LAW OFFICES OF GERARD F. DUNNE

By_____
        Gerard F. Dunne

DUNNEGAN & SCILEPPI LLC

By_____
        William Dunnegan

1

# Table of Contents

2

Table of Authorities ................................................................................................. 6

3

Questions Presented ................................................................................................. 9

4

Argument .................................................................................................................. 9

5

6
7
8

    I.    THE COURT SHOULD DISMISS PLAINTIFFS' INFRINGEMENT CLAIMS TO THE EXTENT THEY SEEK A MONETARY RECOVERY BECAUSE PLAINTIFFS DID NOT SUSTAIN ANY DAMAGES, AND NEITHER VAS NOR ITS LICENSEES OBTAINED ANY REVENUE AS A RESULT OF ANY ACTUAL CONFUSION ............................................. 10

9
10

        A    Plaintiffs Lost No Sales, And Therefore Lost No Revenue, From Any Act Of VAS ...................................................................................... 10

11
12

        B.    No One In The Distribution Chain For The Products VAS Licensed Made Any Revenue From Any Alleged Infringement ............. 11

13

               1.    No One In The Distribution Chain Made Any Revenue As A Result Of Actual Confusion ............................. 12

14

               2.    VAS Made No Revenue From Any Actual Confusion .................... 14

15
16
17

    II.    THE COURT SHOULD DISMISS PLAINTIFFS' FEDERAL CLAIMS TO THE EXTENT THAT THEY SEEK DAMAGES OR PROFITS THAT AROSE BEFORE THE FILING OF THIS ACTION ............................. 14

18
19

        A.    The Failure To Mark Products To Comply With 15 U.S.C. § 1111 Prevents A Trademark Owner From Obtaining A Monetary Recovery On Any Federal Trademark Claim That Arose Before The Accused Infringer Had Actual Notice Of The Infringement ............ 15

20
21

        B.    Plaintiffs Failed To Comply With 15 U.S.C. § 1111 ............................... 15

22

        C.    VAS Did Not Have "Actual Notice" Of The Trademark Registrations Until The Filing Of This Action ....................... 16

23
24
25

    III.    THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS TO THE EXTENT THAT THEY SEEK MONETARY RELIEF OTHER THAN FROM SALES WITHIN, INTO, OR FROM CALIFORNIA ................. 17

26
27

    IV.    THE COURT SHOULD DISMISS PLAINTIFFS' DILUTION CLAIMS IN THEIR ENTIRETY OR AT LEAST TO THE EXTENT THAT THEY SEEK A MONETARY RECOVERY ........................... 19

28

NOTICE OF MOTION AND MEMORANDUM OF VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

A.  The Federal Dilution Act Does Not Create A Claim For Contributory Dilution ..................................................................... 20

B.  The Federal Dilution Act Does Not Create A Monetary Claim For Contributory Dilution, Especially If The Accused Contributory Dilutor Has Not Received Any Revenue As A Result Of The Dilution ............................................................................................ 22

C.  Plaintiffs Have No Greater Rights Under California Law Than Federal Dilution Law ............................................................... 22

V.  THE COURT SHOULD DISMISS THE CLAIMS OF VERSACE USA, INC. BECAUSE THAT COMPANY DOES NOT OWN ANY TRADEMARK RIGHTS ............................................. 23

Conclusion ..................................................................................................................... 23

NOTICE OF MOTION AND MEMORANDUM OF VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

Table of Authorities

Cases

Am. Auto. Ass'n, Inc. v. AAA Auto Body & Repair, Inc.,
2015 WL 1089746 (N.D. Cal. Feb. 27, 2015)............................................................................23

Anhing Corp. v. Thuan Phong Co. Ltd.,
2014 WL 11456533 (C.D. Cal. Oct. 24, 2014) ........................................................................13

Applied Info. Scis. Corp. v. eBAY, Inc.,
511 F.3d 966 (9th Cir. 2007)....................................................................................................11

Aurora World, Inc. v. Ty Inc.,
719 F. Supp.2d 1115 (C.D. Cal. 2009)..............................................................................18, 19

Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,
174 F.3d 1036 (9th Cir. 1999) ..................................................................................................13

Celebrity Chefs Tour, LLC v. Macy's, Inc.,
2015 WL 11237460 (S.D. Cal. Aug. 10, 2015) .......................................................................21

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ....................................................................................................................9

Churchill Vill., L.L.C. v. Gen. Elec. Co.,
169 F. Supp.2d 1119 (N.D. Cal. 2000),
aff'd,
361 F.3d 566 (9th Cir. 2004) ....................................................................................................18

Coach, Inc. v. Hubert Keller, Inc.,
911 F. Supp.2d 1303 (S.D. Ga. 2012) ......................................................................................14

Coach, Inc. v. Master of Handbags,
2011 WL 13220295 (C.D. Cal. Sept. 20, 2011) .......................................................................12

Dreamwerks Prod. Group v. SKG Studio,
142 F.3d 1127 (9th Cir.1998)....................................................................................................12

Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.,
458 F.3d 931 (9th Cir. 2006) ....................................................................................................21

Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,
778 F.3d 1059 (9th Cir. 2015).............................................................................................10, 11

Gibson Brands, Inc. v. John Hornby Skewes & Co.,
2016 WL 7479317 (C.D. Cal. Dec. 29, 2016) .........................................................................22

NOTICE OF MOTION AND MEMORANDUM OF VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

<u>Gladstone v. U.S. Bancorp,</u>
811 F.3d 1133 (9th Cir. 2016)................................................................................. 20

<u>Grupo Gigante S.A. de C.V. v. Dallo & Co.,</u>
391 F.3d 1088 (9th Cir. 2004)................................................................................. 22

<u>Icon Enterprises Int'l, Inc. v. Am. Prod. Co.,</u>
2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) .......................................................... 11

<u>Internet Specialties W., Inc. v. ISPWest,</u>
2006 WL 4568053 (C.D. Cal. Aug. 2, 2006) .......................................................... 12

<u>Interstellar Starship Servs., Ltd. v. Epix Inc.,</u>
184 F.3d 1107 (9th Cir. 1999)................................................................................. 13

<u>Inwood Laboratories v. Ives Laboratories,</u>
456 U.S. 844 (1982) ................................................................................................ 21

<u>Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.,</u>
285 F.3d 848 (9th Cir. 2002)................................................................................... 12

<u>Kingdomware Techs., Inc. v. United States,</u>
136 S. Ct. 1969, 195 L.Ed. 2d 334  (2016) ............................................................ 20

<u>Kransco Mfg., Inc. v. Hayes Specialties Corp.,</u>
77 F.3d 503, 37 U.S.P.Q.2d 1722, 1996 WL 30787 (Fed. Cir. 1996) ................... 17

<u>Lockheed Martin Corp. v. Network Sols., Inc.,</u>
194 F.3d 980 (9th Cir. 1999)................................................................................... 21

<u>Mintz v. Subaru of Am., Inc.,</u>
2017 WL 6331141 (9th Cir. Dec. 12, 2017) ........................................................... 22

<u>Multi Time Mach., Inc. v. Amazon.com, Inc.,</u>
804 F.3d 930 (9th Cir. 2015),
<u>cert. denied,</u>
136 S. Ct. 1231 (2016) ......................................................................................11-12

<u>Moseley v. V Secret Catalogue, Inc.,</u>
537 U.S. 418 (2003) ................................................................................................ 21

<u>Naigan v. Nana Servs., LLC,</u>
2013 WL 5278641 (S.D. Cal. Sept. 18, 2013) ....................................................17-18

<u>Nissan Motor Co. v. Nissan Computer Corp.,</u>
246 F.3d 675 (9th Cir. 2000)................................................................................... 13

<u>Nissan Motor Co. v. Nissan Computer Corp.,</u>
378 F.3d 1002 (9th Cir. 2004) ................................................................................ 21

NOTICE OF MOTION AND MEMORANDUM OF VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................. 18

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
425 F.3d 708 (9th Cir. 2005) ............................................................................... 21

*Stop StaringA Designs v. Tatyana, LLC*,
625 F. App'x 328 (9th Cir. 2015) ........................................................................ 11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985) ............................................................................. 10

*YKK Corp. v. Jungwoo Zipper Co.*,
213 F. Supp.2d 1195 (C.D. Cal. 2002) ................................................................ 11

**Statutes**

15 U.S.C. § 1111 ............................................................................................*passim*

15 U.S.C. § 1114 .......................................................................................... 2, 10

15 U.S.C. § 1117 ......................................................................................... 10, 15

15 U.S.C. § 1125 ................................................................................ 2, 15, 19, 20

35 U.S.C. § 271 .................................................................................................. 20

Cal. Bus. & Prof. Code § 14245 ......................................................................... 22

Cal. Bus. & Prof. Code § 14247 ......................................................................... 22

Cal. Bus. & Prof. Code § 14330 .................................................................... 2, 22

Cal. Bus. & Prof. Code § 17200 ............................................................... 2, 18, 22

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 1, 9

**Other**

H.R.Rep. No. 104–374, p. 2 (1995) .................................................................... 21

U.S.Code Cong. & Admin. News (1995) ............................................................ 21

NOTICE OF MOTION AND MEMORANDUM OF VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

Defendants Versace 19.69 Abbigliamento Sportivo S.R.L. and Theofanis Papadas (collectively, "VAS") respectfully submit this memorandum in support of their motion for partial summary judgment on the claims of plaintiffs Gianni Versace S.p.A. ("Versace") and Versace USA, Inc.

## Questions Presented

I.      Should the Court dismiss plaintiffs' trademark infringement claims to the extent that they seek a monetary recovery because plaintiffs did not sustain any damages, and neither VAS nor its licensees obtained any revenue as a result of any actual confusion?

II.      Should the Court dismiss plaintiffs' federal claims to the extent that they seek damages or profits that arose before the filing of this action?

III.      Should the Court dismiss plaintiffs' state law claims to the extent that they seek monetary relief other than from sales within, into, or from California?

IV.      Should the Court dismiss plaintiffs' trademark dilution claims in their entirety, or at least to the extent that they seek a monetary recovery?

V.      Should the Court dismiss the claims of Versace USA, Inc. in their entirety because that company does not own any trademark rights?

The material facts that VAS submits are not subject to reasonable dispute are set forth at the beginning of each point.

## Argument

If the non-movant has the burden of proof on an issue, the movant may fully support its summary judgment motion by asserting that there is no genuine issue of material fact on that issue and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This assertion shifts to the non-movant the burden of offering admissible evidence to create a genuine issue of material fact, or arguing that the law does not entitle the movant to judgment. Fed. R. Civ. P. 56(c).

Plaintiffs have the burden of proof on the elements of their claims.  In Points I through V below, VAS seeks partial summary judgment because plaintiffs cannot meet their burden of providing admissible evidence to create a genuine issue of material fact.

1

**I.    THE COURT SHOULD DISMISS PLAINTIFFS' INFRINGEMENT
CLAIMS TO THE EXTENT THEY SEEK A MONETARY RECOVERY
BECAUSE PLAINTIFFS DID NOT SUSTAIN ANY DAMAGES, AND
NEITHER VAS NOR ITS LICENSEES OBTAINED ANY REVENUE
AS A RESULT OF ANY ACTUAL CONFUSION.**

2

3

4        The following facts are not subject to reasonable dispute: (i) VAS does not sell products,

5   but licenses others to sell products using VAS's trademarks and company name (Papadas Dec.

6   ¶¶ 2-4); (ii) plaintiffs did not sustain any monetary damages as a result of any products VAS

7   licensed (Dunnegan Dec. Ex. A at 155:3-19 and Ex. F at 141:19-142:2); and (iii) neither VAS nor

8   its licensees received any revenue as a result of any confusion as to the source or sponsorship of

9   the products VAS licensed, because: (a) any appreciable amount of confusion was no more than

10  initial interest confusion, and did not result in any increased revenue from the sale of products

11  VAS licensed (Dunnegan Dec. Ex. F at 142:4-143:5); and (b) except for two licensees, VAS

12  obtained all its revenue from minimum royalty payments under license agreements and not from

13  sales of products VAS licensed. (Papadas Dec. ¶¶ 7-9)   Based upon these facts, plaintiffs'

14  infringement claims should fail to the extent that they seek a monetary recovery.

15        Infringement claims, under certain conditions, allow a trademark owner to recover its

16  damages, or the infringer's profits, resulting from the infringement. <u>Fifty-Six Hope Rd. Music,</u>

17  <u>Ltd. v. A.V.E.L.A., Inc.</u>, 778 F.3d 1059, 1073 (9th Cir. 2015)("15 U.S.C. § 1117(a) provides: …

18  the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and

19  subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by

20  the plaintiff, and (3) the costs of the action."); <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768

21  F.2d 1001, 1024 (9th Cir. 1985)("As discussed earlier, California law allows the recovery for lost

22  profits as well as actual damages for successful copyright infringement and unfair competition

23  claimants.").

24  **A.    <u>Plaintiffs Lost No Sales, And Therefore Lost No Revenue, From Any Act Of VAS.</u>**

25        Plaintiffs did not lose any sales as a result of any conduct of VAS, and have not sustained

26  any other quantifiable damage. (Dunnegan Dec. Ex. A at 155:3-19)   Accordingly, plaintiffs

27  cannot recover any actual damages resulting from any alleged infringement.

28

**B.      No One In The Distribution Chain For The Products VAS**
**Licensed Made Any Revenue From Any Alleged Infringement.**

While a claim for trademark infringement exists if there is a "likelihood of confusion," a trademark owner may recover an infringer's profits only if actual confusion increased the infringer's revenue. Stop StaringA Designs v. Tatyana, LLC, 625 F. App'x 328, 330 (9th Cir. 2015)("To obtain damages for lost profits or unjust enrichment, Stop Staring had to demonstrate Bettie Page's allegedly infringing trade dress caused a rise in Bettie Page's sales or a decline in Stop Staring's sales. See Fifty–Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1076 (9th Cir. 2015)('The trademark holder has the burden to prove the defendant infringer's gross revenue *from* the infringement.' (emphasis added)).  The district court dismissed Stop Staring's claim for unjust enrichment and lost profits because Stop Staring failed to show Bettie Page's alleged trade dress infringement caused an effect on either company's bottom line. On de novo review, we find no error in the district court's conclusion.").

Actual confusion must involve an incorrect conclusion as to the source or sponsorship of the products, not simply uncertainty as to the source or sponsorship of the products. YKK Corp. v. Jungwoo Zipper Co., 213 F. Supp. 2d 1195, 1204 n.4 (C.D. Cal. 2002)("'Actual confusion' consists of consumers who mistakenly thought that the products of one company, e.g. YPP, were affiliated with another company, e.g. YKK. The 34.25% 'uncertain' group did not make an actual mistake regarding affiliation, they merely professed their uncertainty."). See Icon Enterprises Int'l, Inc. v. Am. Prod. Co., 04 Civ. 1240 (SVW), 2004 WL 5644805, at *13 (C.D. Cal. Oct. 7, 2004) ("Moreover, it is important to keep in mind that actual confusion evidence must show *actual* confusion.").

In each instance, the confusion must result from the markings on the products, not information from another source. Applied Info. Scis. Corp. v. eBAY, Inc., 511 F.3d 966, 971 (9th Cir. 2007)("Thus a trademark owner may seek redress if another's use of the mark on different goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered goods…"). See Multi Time Mach., Inc. v. Amazon.com, Inc., 804 F.3d 930, 935 (9th Cir. 2015), cert. denied, 136 S. Ct. 1231 (2016)("'The test for likelihood of confusion is whether a

'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.' <u>Dreamwerks Prod. Group v. SKG Studio</u>,142 F.3d 1127, 1129 (9th Cir. 1998).").  As explained below, neither VAS, nor anyone in the distribution chain of the products VAS licensed, made any revenue as a result of any confusion as to the source or sponsorship of those products.

### 1.   No One In The Distribution Chain Made Any Revenue As A Result Of Actual Confusion.

Claims for infringement and unfair competition can involve three types of confusion: (a) post-sale confusion, (b) point-of-sale confusion, and (c) initial interest confusion. <u>Internet Specialties W., Inc. v. ISPWest</u>, 2006 WL 4568053, at *3 (C.D. Cal. Aug. 2, 2006)("Courts have recognized various types of actionable confusion, including point-of-sale confusion (purchaser confusion of source at the time of purchase), post-sale confusion, and initial interest confusion.").

Post-sale confusion involves a non-purchaser seeing the accused product in use and being confused as to the source or sponsorship of that product. <u>Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.</u>, 285 F.3d 848, 854 (9th Cir. 2002).  Post-sale confusion is not relevant to a monetary recovery based upon the infringer's profits because that type of confusion does not result in any revenue to the infringer.  In any event, plaintiffs have no evidence of any post-sale confusion. (Dunnegan Dec. Ex. F at 24:12-25)

Point-of-sale confusion involves a person who purchases the accused product thinking that the trademark owner sold or sponsored that product. <u>Coach, Inc. v. Master of Handbags</u>, 2011 WL 13220295, at *7 (C.D. Cal. Sept. 20, 2011)("Point-of-sale confusion exists when a relevant class of customers or potential customers of the allegedly infringing product would be likely to suffer confusion because of the marks.").

Plaintiffs have no more than *de minimis* evidence of point-of-sale confusion.  Plaintiffs have no witness to testify that the markings on the VAS licensed products deceived him or her into purchasing VAS licensed products believing that plaintiffs were the source or sponsor of those products.  Plaintiffs have *de minimis* admissible hearsay evidence of point-of-sale confusion.  A consumer writing a letter stating that they were previously confused at the time of the purchase is

1    inadmissible hearsay. <u>Anhing Corp. v. Thuan Phong Co. Ltd.</u>, 2014 WL 11456533, at *5 (C.D.

2    Cal. Oct. 24, 2014)   Plaintiffs' survey did not collect evidence of point-of-sale confusion

3    (Dunnegan Dec. Ex. F at 27:10-28:5) because the survey did not tell respondents the price of the

4    product or the venue at which it was offered for sale.

5         Initial interest confusion involves a person's initial misunderstanding as to the source or

6    sponsorship of a product upon seeing the product, which is eliminated by the time a consumer

7    decides to purchase the product. <u>Interstellar Starship Servs., Ltd. v. Epix Inc.</u>, 184 F.3d 1107, 1110

8    (9th Cir. 1999)("We recognize a brand of confusion called 'initial interest' confusion, which

9    permits a finding of a likelihood of confusion although the consumer quickly becomes aware of

10   the source's actual identity and no purchase is made as a result of the confusion.").

11        To the extent that plaintiffs have evidence of any confusion, plaintiffs have evidence of no

12   more than initial interest confusion.  Plaintiffs' survey simply asked respondents to identify the

13   source or sponsorship of VAS licensed products after seeing a photograph that, very prominently,

14   displayed VAS's full company name on the computer screen. (Dunnegan Dec. Ex. E at 14-16 and

15   Ex. G)   Because plaintiffs' survey did not tell the respondents either (i) the price of the products

16   VAS licensed, or (ii) the place (either a store or website) where the products VAS licensed were

17   offered for sale (Dunnegan Dec. Ex. E), plaintiffs' survey tested for no more than initial interest

18   confusion.  In fact, plaintiffs' survey expert, Dr. Van Liere, has no opinion as to whether any of

19   the confusion that he identified in his report resulted in any revenue to VAS or its licensees.

20   (Dunnegan Dec. Ex. F at 142:4-143:5)

21        Moreover, because initial interest confusion does not result in the purchaser buying the

22   product while confused as to its source or sponsorship, it is highly unlikely that the accused

23   infringer would receive any revenue as a result of the initial interest confusion.  While there is a

24   theoretical possibility that the initial interest confusion resulted in a sale that did not result from

25   actual confusion, plaintiffs have no evidence that this ever occurred.  We know of no court that

26   has awarded damages as a result of only initial interest confusion. <u>Compare</u> <u>Nissan Motor Co. v.</u>

27   <u>Nissan Computer Corp.</u>, 246 F.3d 675 (9th Cir. 2000); <u>Brookfield Commc'ns, Inc. v. W. Coast</u>

28   <u>Entm't Corp.</u>, 174 F.3d 1036, 1066–67 (9th Cir. 1999).

1    **2.      VAS Made No Revenue From Any Actual Confusion.**

2          Putting aside the issue of whether any actual confusion resulted in any sales of any

3    products by any entity, VAS did not make any revenue as a result of any actual confusion.  VAS

4    did not sell products in the United States, to consumers or otherwise. (Papadas Dec. ¶¶ 2-3)   VAS

5    instead licensed other companies to use its trademarks and trade name on products that they sold.

6    (Papadas Dec. ¶ 4)

7          VAS's license agreements, with two exceptions, conclusively demonstrate that VAS did

8    not receive any revenue as a result of any confusion.  The license agreements that VAS entered

9    into with United States licensees required the licensees to pay VAS minimum royalties. (Papadas

10   Dec. ¶ 6)   The licensees paid the majority of these minimum royalties to VAS upon the signing of

11   the license agreement. (Papadas Dec. ¶ 6)   Only two licensees ever made enough sales to owe

12   VAS more than the minimum royalties. (Papadas Dec. ¶ 7)   VAS therefore received revenue as a

13   result of the license agreements, not from licensed products that were manufactured and sold

14   pursuant to those license agreements.  Thus, with the possible exception of the sales of two

15   licensees, the existence or non-existence of actual consumer confusion resulting from the

16   markings on VAS licensed products therefore had no impact on the revenue VAS received.

17   (Papadas Dec. ¶ 8)

18         The revenue that VAS received as minimum royalties under its license agreements is not a

19   measure of revenue resulting from an infringement. See Coach, Inc. v. Hubert Keller, Inc., 911 F.

20   Supp.2d 1303, 1309 (S.D. Ga. 2012)("Here Coach pursues HKI only as a *contributory* infringer.

21   Doc. 22. But what method will Coach use to collect non-statutory (sales-based profits) damages

22   from HKI? It fails to say.").

23         Accordingly, the Court should dismiss Plaintiff's infringement claims to the extent that

24   they seek a monetary recovery.

25   **II.    THE COURT SHOULD DISMISS PLAINTIFFS' FEDERAL CLAIMS**
          **TO THE EXTENT THAT THEY SEEK DAMAGES OR PROFITS**
26        **THAT AROSE BEFORE THE FILING OF THIS ACTION.**

27         The following facts are not subject to reasonable dispute: (i) the products plaintiffs have

28   sold in the United States bearing the trademark VERSACE did not contain – at any time – any of

the following markings (1) "Registered in U.S. Patent and Trademark Office," (2) "Reg. U.S. Pat. & Tm. Off." or (3) "®" (Dunnegan Dec. Ex. B at 45:6-46:7), (ii) the only marking plaintiffs used on products bearing the VERSACE trademark that referred to a trademark registration was a paper tag that provided in applicable part: "VERSACE is a registered trademark of Gianni Versace S.p.A." (the "Tag") (Dunnegan Dec. Ex. B at 46:19-47:7 and Ex. C), (iii) plaintiffs have no evidence that they began using the Tag until after the filing of this action. (Dunnegan Dec. Ex. B at 49:14-50:14 and Ex. D at 108:4-109:2), and (iv) until the filing of this lawsuit on June 27, 2016, VAS did not have "actual notice" that any of the trademarks asserted in this action were registered with the USPTO. (Papadas Dec. ¶ 10)   Based upon these facts, plaintiffs' federal trademark claims should be dismissed to the extent that they seek a monetary recovery based upon acts that occurred before the filing of this action on June 27, 2016.

**A.    The Failure To Mark Products To Comply With 15 U.S.C. § 1111 Prevents A Trademark Owner From Obtaining A Monetary Recovery On Any Federal Trademark Claim That Arose Before The Accused Infringer Had Actual Notice Of The Infringement.**

15 U.S.C. § 1111 provides that unless the owner of a registered trademark marked its products with notice of the trademark registration in one of three specific ways, the trademark owner cannot obtain a monetary recovery for acts that occurred before the accused infringer had "actual notice" of the trademark registration.  That section provides:

> "Notwithstanding the provisions of section 1072 of this title, a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words **[1]** 'Registered in U.S. Patent and Trademark Office' or **[2]** 'Reg. U.S. Pat. & Tm. Off.' or **[3]** the letter R enclosed within a circle, thus ®; and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration." (Emphasis added.)

This section applies to damages under each of plaintiffs' three federal trademark claims. See 15 U.S.C. § 1117(a) (infringement and unfair competition) and 15 U.S.C. § 1125(c)(5) (dilution).

**B.    Plaintiffs Failed To Comply With 15 U.S.C. § 1111.**

Plaintiffs did not mark their products in any of the three ways that 15 U.S.C.  § 1111 requires.  Rather, the only notice that Versace placed on any of its products – at any time – was a

Tag that stated "VERSACE is a registered trademark of Gianni Versace S.p.A." (Dunnegan Dec. Ex. B at 46:19-47:7 and 59:3-7; Ex. C)   Specifically, the Tag did not provide "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or "the letter R enclosed within a circle, thus ®." (Dunnegan Dec. Ex. B at 70:23-71:3 and Ex. C)   Plaintiffs used (and apparently continue to use) the same Tag in all countries in which they sell products. (Dunnegan Dec. Ex. B at 47:5-48:2)   The Tag therefore did not comply with any of the three forms of markings that § 1111 requires.

In addition to the deficient content of the Tag, the Tag did not appear with every use of the VERSACE mark on plaintiffs' products.  In fact, the mark VERSACE regularly appeared on plaintiffs' products, without any marking that § 1111 requires. (Dunnegan Dec. Ex. B at 59:8-23 and 65:9-24)   Accordingly, after the consumer removes the Tag to use the product, the VERSACE mark appears on the product without any notice that it is a registered trademark in the United States.

Plaintiffs did not use this Tag prior to the filing of this lawsuit.  Indeed, plaintiffs have not provided a single document evidencing the first use of the Tag. (Dunnegan Dec. Ex. B at 49:14-50:14 and 53:13-54:4)   Plaintiffs' Rule 30(b)(6) witness could not testify as to when plaintiffs began using the Tag.   (Dunnegan Dec. Ex. B at 49:14-17)   Santo Versace, the President of the Board of Directors and a founder of Versace, could not even testify as to whether or not plaintiffs had used the Tag in the month before his deposition on October 20, 2017. (Dunnegan Dec. Ex. D at 110:7-112:5)   Given these admissions, plaintiffs cannot prove that they marked their products to comply with 15 U.S.C. § 1111.

**C.    VAS Did Not Have "Actual Notice" Of The**
**Trademark Registrations Until The Filing Of This Action.**

While VAS had notice of the VERSACE trademark at all material times, VAS had no "actual notice" of the registration of the VERSACE trademark with the USPTO until after plaintiffs filed this action on June 27, 2016. (Papadas Dec. ¶ 10)   Plaintiffs have not produced any document in this case that demonstrates that anyone notified VAS that VERSACE was a registered trademark with the USPTO.  Moreover, plaintiffs do not have a single witness – party

or non-party – to testify that VAS had "actual notice" of the registration of the VERSACE trademark with the USPTO.

Generalized proof about the nature of a trademark does not provide sufficient evidence of "actual notice" of the trademark registration to create a genuine issue of material fact.  In <u>Kransco Mfg., Inc. v. Hayes Specialties Corp.</u>, 77 F.3d 503, 37 U.S.P.Q.2d 1722, 1996 WL 30787 (Fed. Cir. 1996), the Court of Appeals held:

> "Because Hayes ordered a large number of footbags upon its entry into the market, the court found that Hayes must have had reason to believe that there was an established market for footbags in the United States. From this the district court inferred that Hayes knew of the registered mark at the time the original order was placed or willfully avoided learning about it.  The evidence establishes at most that Hayes was aware of the Kransco's HACKY SACK footbags before it placed its original order. Section 1111, however, requires that Hayes have 'actual notice of the registration.' The record is devoid of evidence that Hayes had any such notice of the '095 registration or Kransco's claims to protection of the sinuous seam before it received the cease and desist letter in 1992."

<u>Kransco Mfg., Inc.</u>, 1996 WL 30787 at *3.

Because Versace failed to mark its products in compliance with 15 U.S.C. § 1111, and because VAS did not have "actual notice" of the registration of any of the trademarks with the USPTO until after the filing of this action, the Court should dismiss plaintiffs' federal claims insofar as they seek a monetary recovery for acts before the filing of this action on June 27, 2016.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS TO THE EXTENT THAT THEY SEEK MONETARY RELIEF OTHER THAN FROM SALES WITHIN, INTO, OR FROM CALIFORNIA.

The following facts are not subject to reasonable dispute: (i) plaintiffs did not sustain any damage as a result of any confusion resulting from sales in the State of California of products VAS licensed (Dunnegan Dec. Ex. A at 155:3-19); and (ii) neither VAS, nor its licensees, made any revenue from any sales of products VAS licensed that occurred in the State of California. (Dunnegan Dec. Ex. A at 92:24-93:17; Dunnegan Dec. Ex. I)  Based upon these facts, plaintiffs' California law claims should be dismissed as a matter of law.

Plaintiffs' claims under California law are limited to sales that California can, and does, regulate. <u>Naigan v. Nana Servs., LLC</u>, 2013 WL 5278641, at *2 (S.D. Cal. Sept. 18,

2013)("California law itself also 'embodies a presumption against the extraterritorial application of its statutes.'");  Churchill Vill., L.L.C. v. Gen. Elec. Co., 169 F. Supp.2d 1119, 1126 (N.D. Cal. 2000), aff'd, 361 F.3d 566 (9th Cir. 2004)("With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California.'").

If California attempted to regulate commerce beyond its borders, that attempt would raise Constitutional concerns. Churchill Vill., L.L.C., 169 F. Supp.2d at 1126–27 ("Indeed, beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California 'raises significant due process problems.' Id. at 225, 85 Cal.Rptr.2d 18 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810–11, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985)).").

Plaintiffs' California law claims do not extend to wholesale sales where no party to the transaction – whether licensor, licensee, distributor or retailer – was confused as to the source or sponsorship of the products involved in the transaction. Aurora World, Inc. v. Ty Inc., 719 F. Supp. 2d 1115, 1161 n.101 (C.D. Cal. 2009)("In the present case, Aurora has provided no detail regarding the circumstances under which the retailers came into contact with Ty's toys…To the extent they saw the toys on a sales sheet, this does not appear probative, as consumers likely encounter Ty's products in person at a store, not via a visual depiction on a sales sheet.").

Applying this standard, plaintiffs are not entitled to any monetary recovery on their California law claims because they cannot prove that they sustained any damages, or that VAS received any revenue, as a result of any sales of products to consumers within, into, or from California.  Even putting aside sales within, into, or from California, plaintiffs have not attempted to quantify any damages that they allegedly sustained as a result of the California law claims alleged in this action. (Dunnegan Dec. Ex. I)   Moreover, as set forth in point I.B. above, VAS did not obtain any revenue as a result of any sales of products VAS licensed, except from two licensees, since VAS obtained revenue from minimum royalty payments due under its license agreements.

1    Based upon these facts, the Court should dismiss plaintiffs' claims under California

2    common law trademark infringement and Cal. Bus. & Prof. Code § 17200 et seq., except to the

3    extent that they seek monetary relief for sales within, into, or from California. Because plaintiffs

4    have not presented any expert testimony on the extent of those California sales, VAS submits that

5    plaintiffs cannot prove any such California sales.

6    **IV.   THE COURT SHOULD DISMISS PLAINTIFFS' DILUTION**
     **CLAIMS IN THEIR ENTIRETY OR AT LEAST TO THE**
7    **EXTENT THAT THEY SEEK A MONETAERY RECOVERY.**

8    There is no reasonable dispute as to the following facts: (i) VAS did not use any mark or

9    trade name in commerce in a manner that allowed an appreciable number of consumers to see it

10   (Papadas Dec. ¶¶ 2-5), and (ii) the Conciliation Agreement allowed VAS to use its full company

11   name at least when required by law. (Dunnegan Dec. Ex. A at 109:11-110:3 and Ex. H at 2)

12   Based upon these facts, VAS is not liable under 15 U.S.C. § 1125(c) for directly diluting the

13   VERSACE trademark.

14   15 U.S.C. § 1125(c) provides in part:

15   "Subject to the principles of equity, the owner of a famous mark that is distinctive,
     inherently or through acquired distinctiveness, shall be entitled to an injunction against
16   another person who, at any time after the owner's mark has become famous, commences
     use of a mark or trade name in commerce that is likely to cause dilution by blurring or
17   dilution by tarnishment of the famous mark, regardless of the presence or absence of actual
     or likely confusion, of competition, or of actual economic injury."
18

19   Dilution therefore requires the use of a trademark or trade name so that the general

20   consuming public would perceive it. See Aurora World, Inc., 719 F. Supp.2d at 1161 n.101 ("In

21   the present case, Aurora has provided no detail regarding the circumstances under which the

22   retailers came into contact with Ty's toys…. To the extent they saw the toys on a sales sheet, this

23   does not appear probative, as consumers likely encounter Ty's products in person at a store, not

24   via a visual depiction on a sales sheet.").

25   VAS did not use any trademark or a trade name in a manner that the general consuming

26   public would perceive it. VAS never sold any products in the United States. (Papadas Dec. ¶ 2)

27   Rather, VAS entered into license agreements with United States companies for the trademarks and

28   company name of VAS. (Papadas Dec. ¶ 4)  These license agreements could not, and did not,

1    dilute the VERSACE trademark because the general public would never see those license

2    agreements.  The same is true for any trade communications VAS made using its full company

3    name.  If any dilution occurred, it occurred when licensees and/or retailers sold the products VAS

4    licensed to the general public.

5          In any event, the Conciliation Agreement authorized VAS to use its full trade name in the

6    license agreements.  Even plaintiffs' expert on Italian law admits that the Conciliation Agreement

7    authorized VAS to use its full company name when required by law. (Dunnegan Dec. Ex. H at 2)

8    Plainly, a contract would therefore require VAS to use its full company name.  VAS therefore did

9    not directly dilute the VERSACE trademark in violation of 15 U.S.C. § 1125(c).

10         Once the Court recognizes that plaintiffs have no claim against VAS for directly diluting

11   the VERSACE trademark, two questions remain: (i) whether plaintiffs have a claim against VAS

12   for contributory dilution, and (ii) whether that contributory dilution claim includes a right to a

13   monetary recovery against VAS.

14   **A.      The Federal Dilution Act Does Not Create A Claim For Contributory Dilution.**

15         The first step in interpreting a statute is to read the language of the statute and, if the

16   language is clear, that is the end of the analysis. Kingdomware Techs., Inc. v. United States, 136

17   S. Ct. 1969, 1976, 195 L.Ed. 2d 334 (2016)("In statutory construction, we begin 'with the

18   language of the statute.'  If the statutory language is unambiguous and 'the statutory scheme is

19   coherent and consistent'—as is the case here—'[t]he inquiry ceases.'")(Citation omitted.);

20   Gladstone v. U.S. Bancorp, 811 F.3d 1133, 1138 (9th Cir. 2016)("We look first at the plain

21   language, examining 'not only the specific provision at issue, but also the structure of the statute

22   as a whole, including its object and policy.'").

23         The language of 15 U.S.C. § 1125(c) contains no claim for contributory dilution.   The

24   language of 15 U.S.C. § 1125(c) requires a "use…that is likely to cause dilution…."  The statute

25   therefore creates no claim for causing someone else to engage in a "use" that would cause dilution.

26   Compare 35 U.S.C. § 271.

27         The Court of Appeals for the Ninth Circuit has held, in affirming the denial of a motion to

28   amend a complaint to assert a claim for contributory dilution, that the statute creates no such

1   claim.  In <u>Lockheed Martin Corp. v. Network Sols., Inc.</u>, 194 F.3d 980, 986 (9th Cir. 1999), the

2   Court of Appeals held that the district court did not abuse its discretion in denying a motion to

3   amend a complaint to add a claim for contributory dilution stating "Although courts have

4   discussed contributory dilution, no appellate court or statute has yet established the cause of

5   action." <u>See</u> <u>Celebrity Chefs Tour, LLC v. Macy's, Inc.</u>, 2015 WL 11237460, at *17 (S.D. Cal.

6   Aug. 10, 2015).

7          Although a claim for contributory trademark infringement under the Lanham Act can

8   extend to a manufacturer, <u>Inwood Laboratories v. Ives Laboratories</u>, 456 U.S. 844 (1982), the

9   purpose of the Lanham Act is different than the purpose of the Dilution Act.  Trademark

10  infringement claims under the Lanham Act exist not simply to protect the trademark owner, but to

11  protect the public from confusion. <u>Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.</u>, 458

12  F.3d 931, 941 (9th Cir. 2006)("If trademark protection were stripped the minute a company runs

13  into financial trouble or decides to liquidate, the two cornerstone interests in trademark would be

14  defeated—protection of the public through source identification of goods and protection of the

15  registrant's investment in the trademark."); <u>State of Idaho Potato Comm'n v. G & T Terminal</u>

16  <u>Packaging, Inc.</u>, 425 F.3d 708, 715 (9th Cir. 2005)("Trademarks protect the public from confusion

17  by accurately indicating the source of a product.").  Trademark dilution claims, however, exist

18  only to protect the owner of a famous trademark. <u>Nissan Motor Co. v. Nissan Computer Corp.</u>,

19  378 F.3d 1002, 1011 (9th Cir. 2004)("As the Supreme Court explained, the purpose of the FTDA

20  'is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or

21  tarnish or disparage it, even in the absence of a likelihood of confusion.' <u>Moseley v. V Secret</u>

22  <u>Catalogue, Inc.</u>, 537 U.S. at 431, 123 S.Ct. 1115 (quoting H.R.Rep. No. 104–374, p. 2 (1995),

23  U.S. Code Cong. & Admin. News (1995), pp. 1029, 1030).").  Accordingly, the policy of

24  protecting the public from confusion is not available to stretch the language of the Dilution Act to

25  include conduct to which its plain language does not extend.

26

27

28

**B.      The Federal Dilution Act Does Not Create A Monetary Claim
For Contributory Dilution, Especially If The Accused Contributory
<u>Dilutor Has Not Received Any Revenue As A Result Of The Dilution.</u>**

We know of no case, in any jurisdiction, that has provided monetary relief as a remedy for contributory dilution.

Even if the law would provide a monetary recovery for a claim of contributory dilution, this is not a case that should allow a monetary recovery.  Plaintiffs cannot prove any damages resulting from any dilution and cannot prove that VAS profited as a result of any contributory dilution.  Any uncertainty as to the source or sponsorship of the products VAS licensed – if any appreciable amount existed – did not result in any benefit to anyone distributing products VAS licensed.  As explained in Point I above, any initial interest confusion was eliminated before any purchase occurred.  VAS's licensees therefore did not make any additional sales as a result of any dilution.  In any event, except with respect to two licensees, VAS received its revenue as a result of minimum royalties paid under license agreements, not the sales of products.  Existing law therefore does not support a monetary recovery for contributory dilution in this case.

**C.      <u>Plaintiffs Have No Greater Rights Under California Law Than Federal Dilution Law.</u>**

Plaintiffs assert claims under (i) Cal. Bus. & Prof. Code § 14330, (ii) Cal. Bus. & Prof. Code § 14247, and (iii) California common law. (Dkt. 123 at 28/190)

Plaintiffs have no claim under § 14330 because it was repealed. <u>Gibson Brands, Inc. v. John Hornby Skewes & Co.</u>, 2016 WL 7479317, at *7 (C.D. Cal. Dec. 29, 2016).

Plaintiffs have no claim under § 14247 because it is coterminous with federal dilution law. <u>Mintz v. Subaru of Am., Inc.</u>, 2017 WL 6331141, at *2 (9th Cir. Dec. 12, 2017)("As Mintz also acknowledges, her claims for California trademark infringement and dilution under Cal. Bus. & Prof. Code §§ 14245 and 14247 and for California unfair competition under Cal. Bus. & Prof. Code § 17200 are 'substantially congruent' with her claims for trademark infringement, dilution, and unfair competition under federal law. <u>Grupo Gigante S.A. de C.V. v. Dallo & Co.</u>, 391 F.3d 1088, 1100 (9th Cir. 2004) (citation omitted).  Thus, because Mintz does not plausibly allege these claims under federal law, she also does not plausibly allege her claims under California state law.").

1    Plaintiffs have no claim under California common law because it is also coterminous with

2 federal law.  Am. Auto. Ass'n, Inc. v. AAA Auto Body & Repair, Inc., 2015 WL 1089746, at *5

3 (N.D. Cal. Feb. 27, 2015)("In its seventh claim, AAA alleges that Defendants engaged in

4 trademark dilution under California common law. (Compl. ¶¶ 71–74.)  The common law dilution

5 claim is based on the same factual allegations as the statutory claim, and is 'substantially

6 congruent' to claims made under the Lanham Act.").

7    Accordingly, the Court should dismiss plaintiffs' dilution claims.

8 **V.    THE COURT SHOULD DISMISS THE CLAIMS OF VERSACE USA, INC. BECAUSE THAT COMPANY DOES NOT OWN ANY TRADEMARK RIGHTS.**

9

10    There is no dispute that Versace USA, Inc. does not own any trademark asserted in this

11 case.  Indeed, the amended complaint does not allege Versace USA, Inc., as opposed to Gianni

12 Versace, S.p.A., owns any trademark. See Dkt. 123 at ¶ 22; 5-6/190.

13    For each of the seven claims plaintiffs asserted, the claims require ownership of a

14 trademark. (Dkt. 123)

15    Accordingly, the Court should grant summary judgment dismissing the claims of Versace

16 USA, Inc. in their entirety.

17                                    <u>**Conclusion**</u>

18    VAS respectfully requests that the Court grant its motion for partial summary judgment.

19 Dated: February 1, 2018

20                              Respectfully submitted,

21                              LAW OFFICES OF GERARD F. DUNNE

22

23

24 By_____
                              Gerard F. Dunne

25                              DUNNEGAN & SCILEPPI LLC

26

27 By_____
                              William Dunnegan

28

NOTICE OF MOTION AND MEMORANDUM OF VAS DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT