PAGES 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE HAYWOOD S. GILLIAM JR., JUDGE**

| | | |
|---|---|---|
| GIANNI VERSACE, S.P.A., | ) | |
| ET AL., | ) | |
| | ) | |
| PLAINTIFFS, | ) | NO. C-16-3617 HSG |
| | ) | |
| VS. | ) | THURSDAY, MARCH 29, 2018 |
| | ) | |
| VERSACE 19.69 ABBIGLIAMENTO | ) | OAKLAND, CALIFORNIA |
| SPORTIVO SRL, ET AL., | ) | |
| | ) | |
| | ) | MOTION FOR PARTIAL SUMMARY |
| | ) | JUDGMENT |
| DEFENDANTS. | ) | MOTION FOR SUMMARY JUDGMENT |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

**FOR PLAINTIFFS:**          MUNGER, TOLLES & OLSON LLP
                            560 MISSION STREET, 27TH FLOOR
                            SAN FRANCISCO, CALIFORNIA 94105
                    BY:  ROSEMARIE T. RING, ESQUIRE
                            CAROLYN H. LUEDTKE, ESQUIRE
                            AARON D. PENNEKAMP, ESQUIRE
                            ZACHARY M. BRIERS, ESQUIRE


**FOR DEFENDANTS:**          DUNNEGAN & SCILEPPI LLC
                            350 FIFTH AVENUE
                            NEW YORK, NEW YORK 10118
                    BY:  WILLIAM DUNNEGAN, ESQUIRE

                            SUIZI LIN, ESQUIRE
                            5920 NEWPARK MALL ROAD
                            NEWARK, CALIFORNIA 94560


**REPORTED BY:**          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                            OFFICIAL COURT REPORTER

        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

<u>THURSDAY, MARCH 29, 2018</u>                                    2:39 P.M.

P R O C E E D I N G S

**THE CLERK:**  CALLING C-16-3617 GIANNI VERSACE SPA, ET AL. VERSUS VERSACE 19.69, ET AL.

PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR THE RECORD, PLEASE.

**MS. RING:**  GOOD AFTERNOON, YOUR HONOR.  ROSE RING FROM MUNGER, TOLLES & OLSON ON BEHALF OF GIANNI VERSACE S.P.A. AND VERSACE U.S.A.

**THE COURT:**  GOOD AFTERNOON, MS. RING.

**MS. LUEDTKE:**  GOOD AFTERNOON, YOUR HONOR.  CAROLYN LUEDTKE ALSO FROM MUNGER, TOLLES ON BEHALF OF THE PLAINTIFFS GIANNI VERSACE AND VERSACE U.S.A.

**THE COURT:**  GOOD AFTERNOON.

**MS. LIN:**  GOOD AFTERNOON, YOUR HONOR.  SUIZI LIN ON BEHALF OF DEFENDANTS.

**THE COURT:**  GOOD AFTERNOON.

**MR. DUNNEGAN:**  YOUR HONOR, I'M BILL DUNNEGAN ON BEHALF OF DEFENDANTS VERSACE 19.69, ABBIGLIAMENTO SPORTIVO SRL AND MR. PAPADAS, NOT REPRESENTING THE OTHER DEFENDANTS.

**THE COURT:**  GOOD AFTERNOON TO YOU BOTH.

ALL RIGHT.  SO WE ARE HERE FOR A HEARING ON TWO MOTIONS, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

I'VE REVIEWED THE PAPERS CAREFULLY.  OBVIOUSLY, AGAIN, THE

1    RECORD HERE IS SOMEWHAT VOLUMINOUS SO I'VE GOT SOME TARGETED

2    QUESTIONS FOR YOU BOTH.  AND I THINK THAT'S THE MOST EFFICIENT

3    WAY TO USE OUR TIME.

4        SO I'LL PREFACE THINGS WITH THIS OBSERVATION:  OBVIOUSLY

5    EVERYONE AGREES THAT IN THE TRADEMARK INFRINGEMENT CONTEXT,

6    THE NINTH CIRCUIT TELLS ME THAT A GRANT OF SUMMARY JUDGMENT IS

7    A RARE CIRCUMSTANCE, AND I DON'T THINK THERE'S ANY DISPUTE AS

8    TO THAT.

9        THAT SAID, I WILL SAY THAT THIS IS, BASED ON THE RECORD

10    I'VE SEEN, A CASE THAT MAY BE THAT RARE CASE.  THIS IS A

11    STRONG RECORD THAT THE PLAINTIFFS HAVE PRESENTED HERE.

12        REALLY THE QUESTION THAT I PROPOSE TO START WITH MS. RING

13    IS, UNDERSTANDING THAT GENERAL PRINCIPLE, I SAW IN YOUR BRIEF

14    YOU CITED A NUMBER OF DISTRICT COURT CASES WHERE SUMMARY

15    JUDGMENT HAS BEEN GRANTED.  THERE ARE AT LEAST A HANDFUL OF

16    NINTH CIRCUIT AFFIRMANCES OF GRANTS OF SUMMARY JUDGMENT OF

17    INFRINGEMENT.  WHAT DO YOU THINK IS YOUR MOST ANALOGOUS CASE

18    THAT WOULD GIVE ME COMFORT IF I WERE GOING TO PROCEED AS

19    YOU'RE ASKING THAT I WOULDN'T BE GOING TOO FAR IN LIGHT OF THE

20    GENERAL PRINCIPLE?

21        **MS. RING:**  YES.  YOUR HONOR, WE THINK THAT WOULD BE

22    THE *GALLO* CASE, *GALLO VERSUS GRENADE BEVERAGE* 2014 WESTLAW

23    4073241.

24        AND I'LL SAY MORE GENERALLY, YOUR HONOR, WE CITED EIGHT

25    CASES WHERE THE DISTRICT COURTS HEEDED THE NINTH CIRCUIT'S

1    DIRECTION ACTUALLY.  IN *AU-TOMOTIVE GOLD* THAT WHERE THE

2    EVIDENCE IS CLEAR AND TILTS HEAVILY TOWARD A LIKELIHOOD OF

3    CONFUSION, DISTRICT COURTS SHOULD GRANT SUMMARY JUDGMENT.

4    AND, INDEED, IN THAT CASE THE NINTH CIRCUIT REVERSED THE

5    DISTRICT COURT WHEN IT DENIED SUMMARY JUDGMENT UNDER THOSE

6    CIRCUMSTANCES.  SO --

7              **THE COURT:**  IN *AU-TOMOTIVE GOLD* YOU MEAN?

8              **MS. RING:**  YES, REVERSED THE DISTRICT COURT.

9        AND WE CITED THOSE EIGHT CASES, AND FOUR OF THEM DEFENDANT

10   SUGGESTS THAT IN ALL OF THOSE CASES THE MARKS AT ISSUE WERE

11   IDENTICAL.  NO.  IN FOUR OF THE CASES, THE MARKS WERE NOT

12   IDENTICAL AND THEY INVOLVED EXACTLY THE SITUATION HERE WHERE

13   BOTH OF THE MARKS, THE DOMINANT WORD IN BOTH OF THE MARKS WAS

14   COMMON.

15       AND SO, FOR EXAMPLE, IN THE *GALLO* CASE THAT I JUST CITED,

16   IT WAS GALLO, AND THE INFRINGING MARK WAS L. GALLO.  SO IN

17   THAT CASE THE DISTRICT COURT GRANTED SUMMARY JUDGMENT.

18       SO OF THE EIGHT CASES, FOUR INVOLVED A SITUATION WAS NOT

19   AN IDENTICAL MARK, IT WAS A MARK WHERE THE DOMINANT ELEMENT

20   WAS THE SAME, JUST AS IN THIS CASE, AND THE -- ONLY TWO OF

21   THOSE CASES WERE -- TWO OF THE EIGHT CASES WERE APPEALED, AND

22   BOTH WERE AFFIRMED.

23             **THE COURT:**  SO OF THE CASES YOU CITED IN FOOTNOTE 6,

24   WERE THERE ANY IN WHICH THE GRANT OF SUMMARY JUDGMENT WAS

25   REVERSED?

1          **MS. RING:**  NO.

2          **THE COURT:**  WHICH WERE THE TWO THAT WERE AFFIRMED?

3          **MS. RING:**  IT WAS *L. GALLO* AND *MINE O'MINE VERSUS*

4    *CALMESE*.  THERE, AGAIN, THE MARK WAS SHAQ AND THE INFRINGING

5    MARK WAS SHAQTUS.  SO THEY WERE NOT IDENTICAL.  SO I CAN CITE

6    ALSO TO THE COURT THE FOUR THAT WE WOULD SAY ARE MOST

7    ANALOGOUS HERE IF THAT WOULD BE HELPFUL.

8          **THE COURT:**  SURE.

9          **MS. RING:**  SO IN ADDITION TO THE *GALLO* CASE AND THE

10   *MINE O'MINE* CASE, IT WAS... THE NEXT ONE IS *EXPERIENCE*

11   *HENDRIX*, 2008 WESTLAW 3243896, AND *CONVERSIVE, INC. VERSUS*

12   *CONVERSAGENT, INC*. 433 F.SUPP. 2D, 1079.

13         **THE COURT:**  IN THE *HENDRIX* CASE, WAS THERE SIMILAR

14   ANALYSIS OF THE DOMINANT ELEMENT BEING THE HENDRIX NAME EVEN

15   THOUGH THEY WEREN'T IDENTICAL MARKS?

16         **MS. RING:**  EXACTLY, YOUR HONOR.  AND THERE WERE

17   SEVERAL MARKS, AND NONE OF THEM WERE IDENTICAL BUT THEY ALL

18   SHARED HENDRIX OR JIMI HENDRIX, OR SOME RELATIONSHIP TO JIMI

19   HENDRIX, AND THE HENDRIX EXPERIENCE.

20       AND SAME IN *CONVERSAGENT*, YOUR HONOR.  THERE THE MARKS

21   WERE CONVERSIVE, AND THE INFRINGING MARK CONVERSIVE AGENT AND

22   CONVERSAGENT.  AND THERE IT WAS VERY SIGNIFICANT TO THE COURT

23   ACTUALLY THAT BOTH MARKS, THE FIRST PART OF THEM WAS THE SAME.

24   SO CONVERSE WAS THE SAME IN ALL OF THE MARKS EVEN THOUGH THEY

25   WERE DIFFERENT, AND THAT'S THE SAME, AS YOUR HONOR KNOWS, THE

1  SAME HERE.  SO IT'S VERSACE AND VERSACE 19.69 ABBIGLIAMENTO

2  SPORTIVO.

3        **THE COURT:**  ALL RIGHT.  AND IN EACH OF THOSE CASES,

4  AND I'LL LOOK AT THEM AGAIN, BUT IS YOUR TAKE THAT THE

5  CONCLUSION WAS THAT BASED ON THE *SLEEKCRAFT* FACTORS THERE

6  SIMPLY WAS NO MATERIAL ISSUE OF FACT AS TO WHETHER THERE WAS A

7  LIKELIHOOD OF CONFUSION?

8        **MS. RING:**  EXACTLY.  IN ALL OF THOSE CASES, THE COURT

9  LOOKED AT EACH OF THE *SLEEKCRAFT* FACTORS, AND MINDFUL OF THE

10 NINTH CIRCUIT'S DIRECTION THAT SUMMARY JUDGMENT IS NOT FAVORED

11 BECAUSE THE *SLEEKCRAFT* FACTORS AND IT CAN BE A FACT-INTENSIVE

12 ANALYSIS SAID HERE, THE FACTS ARE CLEAR, THEY ARE UNDISPUTED,

13 AND THE FACTORS WHICH, BY THE WAY, ALL OF THEM, NOT EVEN ALL

14 OF THEM WEIGHED IN FAVOR OF THE TRADEMARK HOLDER.  THEY SAID

15 THE FACTS HERE ARE SO CLEAR AND WEIGH IN THE FAVOR OF THE

16 TRADEMARK HOLDER ON THE MOST IMPORTANT ONES, WHICH THEY DO

17 HERE AS WELL, THE COURT GRANTED SUMMARY JUDGMENT IN THOSE

18 CASES.  AND IN THOSE FOUR, TWO WERE APPEALED AND BOTH WERE

19 AFFIRMED.

20       **THE COURT:**  ALL RIGHT.  THEN JUST ONE QUESTION WITH

21 REGARD TO ONE OF THE *SLEEKCRAFT* FACTORS.

22    IT'S THE QUESTION OF DEGREE OF CONSUMER CARE WHICH I WANT

23 TO MAKE SURE I UNDERSTAND.  IT DOESN'T SOUND AS THOUGH IT'S

24 DISPUTED THAT THE DEFENDANTS' LICENSED PRODUCTS ARE RELATIVELY

25 LOW PRICED, AND VERSACE PRODUCTS ARE HIGHER PRICED.

1    WHICH OF THOSE IS THE RELEVANT PRICING STRUCTURE TO LOOK

2    AT FOR PURPOSES OF THE DEGREE OF CARE?  IS THE IDEA THAT,

3    WELL, SOMEONE WHO IS BUYING A 30-DOLLAR ABBIGLIAMENTO BAG THAT

4    THEY ARE NOT LIKELY TO EXERCISE A HIGH DEGREE OF CARE OR IS

5    THE QUESTION WHAT THE BUYER OF YOUR PRODUCTS, WHICH COSTS

6    SIGNIFICANTLY MORE, WOULD DO?

7        **MS. RING:**  YEAH.  SO YOU LOOK AT -- WE WOULD LOOK AT

8    THE CONSUMERS WHO WOULD BE BUYING VERSACE 19.69'S PRODUCTS.

9    AND TO ANSWER YOUR FIRST QUESTION, YOUR HONOR, NO, THERE IS NO

10   DISPUTE THAT THE VERSACE 19.69 PRODUCTS WERE SOLD AT, TO QUOTE

11   DEFENSE COUNSEL'S OPPOSITION, "AT DRAMATICALLY LOWER PRICES

12   THAN THE VERSACE PRODUCTS".

13       **THE COURT:**  ALL RIGHT.  SO YOUR ARGUMENT IS THAT THAT

14   LOWER PRICE POINT CARRIES WITH IT SOME LOWER DEGREE OF LIKELY

15   CONSUMER CARE.

16       **MS. RING:**  BECAUSE CONSUMERS ARE NOT AS LIKELY IF

17   THEY ARE SPENDING A LOT OF MONEY ON SOMETHING, THE LOGIC GOES

18   THAT THEY WOULD EXERCISE A GREATER LEVEL OF CARE.

19    SO THAT'S WHY THE CASE LAW, WHEN IT'S LOWER-PRICED ITEMS,

20   WHICH ARE AT ISSUE HERE, THERE'S A LOWER ATTENTION TO DETAIL

21   AND, THEREFORE, A GREATER LIKELIHOOD THAT THEY WOULD BE

22   CONFUSED.

23    I ALSO NOTE, THOUGH, YOUR HONOR, VERSACE HAS DIFFUSION

24   LINES ITSELF WHICH ARE PRICED LOWER.  AND IN THE RECORD -- I

25   HAVE HERE IF IT WOULD BE HELPFUL TO THE COURT, SOME OF THE

1    EXHIBITS TO THE RECORD THAT I CAN HAND UP AND OBVIOUSLY SHARE

2    WITH DEFENSE COUNSEL AS WELL.

3        BUT ON THIS POINT, VERSACE, IN ADDITION TO THE FIRST LINE

4    PRODUCTS, HAS VERSACE COLLECTION, VERSACE JEANS WHICH ARE

5    PRICED LOWER THAN THE FIRST LINE ITEMS AND, IN FACT, ARE SOLD

6    OR HAVE BEEN SOLD SIDE BY SIDE WITH THE VERSACE 19.69 PRODUCTS

7    ALL FOR LESS THAN A HUNDRED DOLLARS.

8        **THE COURT:**  ALL RIGHT.  SO ARE THE EXHIBITS YOU ARE

9    TALKING ABOUT A SUBSET OF WHAT'S ALREADY IN THE SUMMARY

10   JUDGMENT RECORD?

11       **MS. RING:**  YES.

12       **THE COURT:**  THAT'S FINE.  HAVE YOU SHARED IT WITH

13   OPPOSING COUNSEL?

14       **MS. RING:**  OF COURSE.

15            (SLIDE DECK DISTRIBUTED.)

16       **THE COURT:**  AND THEN A QUESTION FOR MR. DUNNEGAN:

17   REALLY THERE SEEMS TO BE A REPEATED ARGUMENT IN YOUR PAPERS

18   THAT YOUR CLIENTS' STATUS AS A LICENSOR IS SOMEHOW RELEVANT TO

19   THE INFRINGEMENT QUESTION.  AND TAKEN, NOT EVEN TO ITS

20   EXTREME, BUT TAKEN ON ITS FACE THAT SEEMS TO SUGGEST A RULE

21   THAT WOULD SANCTION FORM OVER SUBSTANCE AND IMMUNIZE THE

22   QUOTE/UNQUOTE "LICENSOR" FROM LIABILITY FOR INFRINGEMENT WHICH

23   STRIKES ME AS UNLIKELY TO BE THE RULE.

24       WHAT IS YOUR BEST CASE FOR THAT PREMISE?  IT DID SEEM TO

25   ME THAT A NUMBER OF THE CASES THAT THE PLAINTIFFS WERE CITING

1    DID INVOLVE LICENSORS, AND SO WHAT IS THE BASIS FOR CONCLUDING

2    THAT THE ANALYSIS OUGHT TO BE DIFFERENT BECAUSE YOUR CLIENT IS

3    A LICENSOR?

4         **MR. DUNNEGAN:**  THE BASIS OF THE ANALYSIS WOULD BE THE

5    LANGUAGE OF THE STATUTE.  AND IF WE ARE LOOKING AT BOTH 1114

6    AND 1125(A), WHAT WE ARE DEALING WITH IS THERE HAS TO BE TWO

7    ELEMENTS THERE.  ONE IS THE USE OF THE MARK AND THE SECOND

8    ELEMENT IS THE MANNER IN WHICH THAT WOULD CAUSE LIKELIHOOD OF

9    CONFUSION AS TO THE SOURCE OF THAT PRODUCT OR SERVICE.

10        NOW, IF A PRODUCT IS BEING SOLD BY A MANUFACTURER, A

11   DISTRIBUTOR, OR A LICENSEE, YOU HAVE A FAIRLY SOLID ARGUMENT

12   THAT THE MARK COULD BE CONFUSING AND THE USE OF THAT MARK IS

13   IN CONNECTION WITH THE SALE OF THE GOODS.

14        HOWEVER, IF YOU ARE DEALING WITH A COMPANY WHICH IS SIMPLY

15   A LICENSEE, YOU ARE NOT MEETING THE USE ELEMENT IN A MANNER

16   WHICH WOULD CAUSE CONFUSION AT LEAST AT THE CONSUMER LEVEL.

17        **THE COURT:**  LET ME... UNDERSTANDING THAT'S YOUR

18   STATUTORY ARGUMENT, I DON'T SEE THIS DISTINCTION DRAWN IN THE

19   CASES.  WHAT CASE DRAWS THAT DISTINCTION?

20        **MR. DUNNEGAN:**  I THINK IF YOU LOOK AT *INWOOD LABS*,

21   YOU'RE GOING TO SEE THE STANDARD FOR INDUCING -- IT'S A

22   SUPREME COURT CASE, 456 U.S. 844, 1982.

23        IT'S THE DISTINCTION BETWEEN THE MANUFACTURER IN THAT

24   CASE, NOT A LICENSOR, BUT A MANUFACTURER IN THAT CASE DOING

25   SOMETHING, AND THEN THE RETAILER, THE PHARMACIST, DOING

1    SOMETHING IN ADDITION TO IT WHICH CAUSES THE PRODUCT TO BE --

2    THE DRUG IN A CASE TO BECOME INFRINGING.

3        SO IF THE MANUFACTURER OR THE LICENSOR DID NOT DO ANYTHING

4    WHICH CAUSED THE CONFUSION, THEN YOU DO NOT HAVE A DIRECT

5    INFRINGEMENT CASE, YOU HAVE AN INDUCING INFRINGEMENT CASE.

6        **THE COURT:**  ALL RIGHT.  BUT... AND I CAN DIG INTO THE

7    WEEDS ON THIS, BUT IT DOES SEEM THAT THE RECORD IS PRETTY

8    CLEAR THAT THERE WAS A SIGNIFICANT AMOUNT OF CONTROL EXERCISED

9    BY YOUR CLIENT AS THE LICENSOR.  THE LICENSE AGREEMENT SAYS

10   YOU'VE GOT TO DO THIS, YOU CAN'T DO THAT, WHY IS THAT NOT

11   DIFFERENT THAN THE *INWOOD* SITUATION?

12       **MR. DUNNEGAN:**  BECAUSE THE THINGS THAT WE WERE

13   INDUCING THEM TO DO WE DO NOT BELIEVE WOULD HAVE BEEN, A,

14   LIKELY TO CAUSE CONFUSION OR, B, INCONSISTENT WITH THE

15   CONCILIATION AGREEMENT.

16       **THE COURT:**  ALL RIGHT.  SO WE CAN GET TO THE

17   AGREEMENT.  WHY DON'T WE START WITH THAT FIRST PRINCIPLE

18   THOUGH.

19       **MR. DUNNEGAN:**  OKAY.  IF WE READ... IF WE READ THE

20   STATUTE, IT IS WRITTEN IN TERMS OF ANYONE WHO USES IT IN A

21   MANNER TO CAUSE LIKELIHOOD OF CONFUSION.  AND IF WHAT THE

22   DEFENDANT IS DOING IS LICENSING SOMEONE TO FURTHER SELL IT, OR

23   TO MAKE IT AND SELL IT, AND THEN THEIR USE OF THAT IS A USE

24   WHICH COULD CAUSE CONFUSION, THAT COULD BE A DIRECT

25   INFRINGEMENT.

1    THE DIRECT INFRINGERS HERE WOULD BE THE RETAIL STORES, THE

2    INTERNET STORES, POSSIBLY THE DISTRIBUTORS IF THERE WAS ANY

3    DIRECT SALE TO CONSUMERS, BUT WE ARE A LEVEL REMOVED FROM THAT

4    WHEN WE'RE DEALING WITH A LICENSEE.

5    NOW, THE CASE I BELIEVE THAT YOU REFERRED TO WAS THE

6    OPINION BY JUDGE BERMAN FROM THE SOUTHERN DISTRICT OF NEW

7    YORK.

8    **THE COURT:**  WELL, THAT WAS ONE.  I THOUGHT THAT --

9    WAS IT *FIFTY-SIX HOPE ROAD*?  THERE WAS ANOTHER CITE, I

10   THOUGHT, TO A NINTH CIRCUIT CASE THAT INVOLVED A LICENSOR.

11   MAYBE, MS. RING, CAN TELL ME IF I AM REMEMBERING THAT

12   RIGHT.

13   **MS. RING:**  YES, YOUR HONOR.  *FIFTY-SIX HOPE* 778 F. 3D

14   1059.

15   **THE COURT:**  YES, THAT IS WHAT I WAS THINKING OF.

16   **MS. RING:**  THERE'S ANOTHER, YOUR HONOR, WHICH WE CITE

17   IN THE BRIEFS ALSO.  *MONSTER CABLE* FROM THE NORTHERN DISTRICT

18   OF CALIFORNIA.

19   **THE COURT:**  ALL RIGHT.  SO MAYBE, MR. DUNNEGAN, FOCUS

20   ON *HOPE ROAD* BECAUSE THAT'S A NINTH CIRCUIT CASE AND IT'S

21   BINDING AUTHORITY.

22   DOES -- IS THERE ANYTHING IN IT THAT GIVES SUPPORT TO THIS

23   DISTINCTION BETWEEN LICENSORS AND SELLERS?

24   **MR. DUNNEGAN:**  I COULD BE WRONG, BUT I DON'T SEE THAT

25   SPECIFIC ISSUE HAVING BEEN RAISED IN THE CASE.  THERE WAS

1    LICENSING GOING ON, BUT IF NOBODY RAISES THE ISSUE, THE COURT

2    DIDN'T DECIDE IT.

3         **THE COURT:**  WELL, OKAY, BUT THEY CERTAINLY DIDN'T SAY

4    GET OUT OF HERE WITH THIS CASE BECAUSE IT'S A LICENSOR.

5         **MR. DUNNEGAN:**  BUT, SEE, THEY WOULDN'T HAVE DONE THAT

6    BECAUSE IT IS STILL AN INDUCING CASE.  THE THEORY THAT THE

7    PLAINTIFF HAS IS THAT THERE'S AN INDUCEMENT OF INFRINGEMENT

8    GOING ON HERE.  AND WE'RE NOT SAYING THAT THAT'S SOMETHING

9    THAT WE SHOULD GET SUMMARY JUDGMENT ON.

10        WE ARE SAYING THERE'S A QUESTION -- THERE'S, IN THE FIRST

11   INSTANCE, A QUESTION OF FACT AS TO WHETHER THERE'S A

12   LIKELIHOOD OF CONFUSION AS TO WHETHER ANYONE SELLING THESE

13   GOODS WOULD BE INFRINGING.  AND THE SECOND ISSUE IS, DOES THAT

14   LIABILITY EXTEND TO US BECAUSE WE WEREN'T SELLING THE GOODS,

15   WE WEREN'T VICARIOUSLY LIABLE FOR THE AGENT VALERO.  AND,

16   THREE, IF YOU GET TO THE ISSUE OF INDUCEMENT, UNDER THE *INWOOD*

17   CASE, YOU HAVE TO HAVE A CERTAIN STATE OF MIND IN ORDER TO BE

18   LIABLE FOR THAT, AND THAT STATE OF MIND IS GOING TO CREATE A

19   QUESTION OF FACT.

20        **THE COURT:**  ALL RIGHT.  SO TAKING *GUCCI AMERICA*,

21   OBVIOUSLY IT'S NOT BINDING, BUT IT DOES SEEM TO ME THAT IT'S

22   COMPARABLE, IT'S AFTER A BENCH TRIAL, BUT IN TERMS OF THE

23   THEORY, YOU CAN GET WHY A COURT MIGHT BE CONCERNED WITH A

24   CLEVER DEVICE, WHICH THIS LOOKS LIKE.  WE ARE GOING TO LICENSE

25   AND WE -- YOU DO WHAT YOU WILL WITH IT, WE'RE INSULATED

1    WHEN -- I JUST THINK IT'S BEYOND DEBATE THAT THE WHOLE POINT

2    AND THE WHOLE VALUE OF THIS LICENSED MARK IS THAT IT LOOKS

3    LIKE THE VERSACE MARK THAT PEOPLE KNOW.

4             **MR. DUNNEGAN:**  YOU MAY BE RIGHT, BUT WE'LL COME BACK

5    TO WHETHER OR NOT IF YOU ARE RIGHT THERE SHOULD BE MORE

6    EVIDENCE OF ACTUAL CONFUSION IN THE RECORD.

7             **THE COURT:**  OKAY.  I DON'T HAVE ANY QUESTIONS ABOUT

8    THAT TRUTHFULLY.

9             **MR. DUNNEGAN:**  WELL, YOUR HONOR, IF WE LOOK AT THE

10   RATIO OF HOW MANY OF THESE ARE SOLD TO THE INSTANCES OF REAL

11   ACTUAL CONFUSION THEY CAN IDENTIFY, WHICH I THINK YOU CAN

12   COUNT ON ONE HAND ONCE YOU ELIMINATE THE ONES THAT ARE NOT

13   EVIDENCE OF ACTUAL CONFUSION, THEN YOU'RE LOOKING AT A

14   RELATIONSHIP WHICH IS ABOUT 1 OUT OF 10,000, IF MY MEMORY IS

15   CORRECT AS TO WHAT THE ARITHMETIC WOULD BE.

16            **THE COURT:**  CLEARLY AS A MATTER OF LAW THEY DON'T

17   HAVE TO SHOW ACTUAL CONFUSION.  IT'S A BONUS.  THE QUESTION IS

18   LIKELIHOOD OF CONFUSION.

19            **MR. DUNNEGAN:**  WELL, I WOULD TAKE ISSUE WITH THAT,

20   YOUR HONOR.  HERE'S WHY.

21       YOUR TYPICAL INFRINGEMENT CASE IN WHICH YOU SEE THAT

22   LANGUAGE ABOUT PLAINTIFF DOESN'T HAVE TO SHOW ACTUAL CONFUSION

23   BECAUSE THE TEST IS LIKELIHOOD OF CONFUSION ARISES IN A FACT

24   PATTERN WHERE THE PLAINTIFF CATCHES THE DEFENDANT, BRINGS THE

25   LAWSUIT, THIS IS FOR PRELIMINARY INJUNCTION, VERY EARLY ON,

1   AND THERE HAVEN'T BEEN ANY MATERIAL AMOUNT OF SALES FROM WHICH

2   ACTUAL CONFUSION EVIDENCE COULD BE OBTAINED.

3          THE COURT:  THAT MIGHT BE A PRINCIPLE THAT YOU'RE

4   ARGUING.  DO ANY OF THE CASES MAKE THAT DISTINCTION?  DO THEY

5   SAY THIS PRINCIPLE THAT ACTUAL CONFUSION NOT BE SHOWN SHOULD

6   BE TREATED DIFFERENTLY?

7          MR. DUNNEGAN:  YES.

8          THE COURT:  IT SEEMS TO ME A POINT OF BLACK LETTER

9   LAW.

10         MR. DUNNEGAN:  NO, YOUR HONOR.  THE *COHN* CASE FROM

11  THE NINTH CIRCUIT *VERSUS PETSMART*, AND FROM THE SECOND CIRCUIT

12  THE *NABISCO* CASE.  AND BOTH OF THOSE CASES SAY IF THERE HAS

13  BEEN A SUBSTANTIAL PERIOD IN WHICH THE MARK -- WHICH THE MARKS

14  HAVE BOTH BEEN IN USE AND THERE'S NO EVIDENCE OF ACTUAL

15  CONFUSION OR DE MINIMIS EVIDENCE OF ACTUAL CONFUSION, THEN

16  THAT'S STRONG EVIDENCE THAT THERE IS NO LIKELIHOOD OF

17  CONFUSION.

18      SEE, THE BLACK LETTER RULE DOESN'T WORK IF WE HAVE A

19  SITUATION WHERE THE REAL WORLD HAS BECOME THE MARKETPLACE TO

20  DETERMINE WHETHER OR NOT THERE WILL BE ACTUAL -- WHETHER THERE

21  WILL BE CONFUSION.

22         THE COURT:  ALL RIGHT.  IN THOSE CASES WAS THERE ANY

23  EVIDENCE OF ACTUAL CONFUSION?

24         MR. DUNNEGAN:  IN THE *PETSMART* CASE THERE WAS ZERO

25  ACCORDING TO THE NINTH CIRCUIT.  I BELIEVE IN THE *NABISCO*

1    CASE, I THINK THERE WAS SOME BUT IT WAS CONSIDERED DE MINIMIS

2    BECAUSE THE SALES OF THE GOLDFISH PRODUCT BY THE COMPANIES

3    WERE -- WAS OVERWHELMING.

4        **THE COURT:**  ALL RIGHT.  LET ME ASK MS. RING ON THIS

5    POINT.  SAME QUESTION.

6    ESSENTIALLY I THINK YOU CAN GATHER MY INTUITIVE READ ON

7    THE IDEA THAT BEING A LICENSOR GIVES YOU A

8    GET-OUT-OF-JAIL-FREE CARD FOR THIS SORT OF CONDUCT, BUT WHAT

9    IS YOUR MOST ON-POINT AUTHORITY ON THIS QUESTION OF WHETHER A

10   LICENSOR CAN BE LIABLE FOR DIRECT INFRINGEMENT?

11       **MS. RING:**  YOUR HONOR, I THINK THE *GUCCI* CASE, WHICH

12   YOUR HONOR REFERRED TO, AS WELL AS THE *FIFTY-SIX HOPE* CASE.

13   I WOULD GO BACK AND JUST TAKE ONE BY ONE THE POINTS

14   DEFENSE COUNSEL MADE.  FIRST, IN THE STATUTE, IT'S USE OF THE

15   MARK IN COMMERCE -- AND I'M PARAPHRASING -- IN A WAY THAT WILL

16   CAUSE CONFUSION.

17   SO TO SAY THAT LICENSING THE RIGHT TO USE AN INFRINGING

18   MARK IS NOT A USE -- WHEN THAT INFRINGING MARK WHEN USED AS

19   LICENSED CAUSES CONFUSION, TO SAY THAT THAT'S NOT A USE IN

20   COMMERCE, THAT IS NOT CONSISTENT WITH THE STATUTE AT ALL AND

21   WOULD DO EXACTLY WHAT YOU SAY, WHICH IS CREATE AN OUT FOR A

22   CLEARLY INFRINGING PARTY.

23   THE *INWOOD* CASE IS NOT AT ALL ON POINT HERE.  CERTAINLY,

24   IT'S ALMOST LIKE A, IT'S LIKE AN INTERVENING CIRCUMSTANCE IN A

25   CASE LIKE THAT WHERE IF I'M A LICENSOR AND I LICENSE TO A

1    THIRD PARTY, AND THEN THAT THIRD PARTY DOES SOMETHING WHICH I

2    DID NOT LICENSE THEM TO DO, LIKE MISLABEL DRUGS, YES, THAT'S A

3    SITUATION WHERE I CAN SEE THAT THIS CONCEPT MIGHT COME INTO

4    PLAY.

5        BUT HERE, YOUR HONOR, THIS COMPANY LICENSED THE RIGHT TO

6    USE THEIR COMPANY NAME ON PRODUCTS, ON POINT OF SERVICE

7    MATERIALS, ON ADVERTISING.  THEY -- MR. PAPADAS HAS SAID IN

8    HIS DECLARATION, HAS TESTIFIED IN HIS DEPOSITION THAT HE

9    APPROVED ALL OF THESE PRODUCTS THAT WE SAY INFRINGE THE

10   VERSACE MARK.  SO TO NOW SAY THAT THOSE LICENSEES SHOULD BE

11   BLAMED FOR USING THE MARK EXACTLY IN THE WAY THAT THEY WERE

12   TOLD AND WHICH WAS APPROVED BY THE LICENSOR, THAT IS NOT AT

13   ALL LIKE *INWOOD*.

14       YOUR HONOR, IN THE HAND-UP I JUST SENT UP, ON PAGE 21,

15   THAT'S WHERE WE HAVE MR. PAPADAS SAYING, YES, I APPROVED ALL

16   OF THESE PRODUCTS.  AND WE'LL START, YOUR HONOR, I'M SORRY, ON

17   PAGE 16.

18       DOES EVERYONE HAVE A COPY OF THIS THAT NEEDS IT?

19           **THE COURT:**  I THINK SO.

20           **MS. RING:**  I MEAN THESE ARE THE PRODUCTS.

21       PAGE 17, THESE BAGS.  PAGE 18, ALSO HANDBAGS.  19, SHOES.

22   AND 20, THE JEANS.  THESE ARE THE PRODUCTS WHICH VERSACE 19.69

23   IN ITS DISCOVERY RESPONSES SAID WERE THEIR BEST SELLING

24   PRODUCTS.  AND THEN ON PAGE 21, WE HAVE MR. PAPADAS SAYING,

25   YEAH, I APPROVED THESE.

1      SO TO SAY THAT THIS IS AN *INWOOD*-TYPE SITUATION IS JUST --

2    IT IS -- IT IS EXACTLY AS THE COURT DESCRIBES, JUST TRYING TO

3    SIDESTEP RESPONSIBILITY.

4      ON THIS DE MINIMIS POINT, IF THE COURT WOULD LIKE ME TO

5    ADDRESS THAT?

6              **THE COURT:**  YOU CAN.  I --

7          **MS. RING:**  I DON'T THINK --

8          **THE COURT:**  -- WASN'T PERSUADED.

9          **MS. RING:**  -- I NEED TO GIVEN WHAT I HEARD YOU SAY.

10      I WOULD JUST SAY THE *NABISCO* CASE -- SO JUST AS A GENERAL

11    MATTER, THEY CITED NO CASE THAT HAS AS MUCH EVIDENCE OF ACTUAL

12    CONFUSION AS IS CITED HERE AND NO CASE IN WHICH THERE WAS A

13    SURVEY PRESENTED.

14      AND IN THE *NABISCO* CASE, I'M SORRY, YOUR HONOR, I BELIEVE

15    THIS IS THE CASE, BUT THE *NABISCO* CASE FROM THE SECOND CIRCUIT

16    IS CERTAINLY WHERE THIS DI MINIMUS CONCEPT ORIGINATED.  THAT'S

17    WHAT *COHN* CITES.  *COHN* IS THE NINTH CIRCUIT CASE AND THAT'S

18    WHAT *COHN* CITES.

19      BUT IN THE *NABISCO* CASE, I DON'T BELIEVE THEY APPLIED THE

20    PRINCIPLE, BUT THEY DID DISCUSS IT.  AND THEY SAID, IF

21    CONSUMERS HAVE BEEN EXPOSED TO TWO ALLEGEDLY SIMILAR

22    TRADEMARKS IN THE MARKETPLACE FOR AN ADEQUATE PERIOD OF TIME

23    AND NO ACTUAL CONFUSION IS DETECTED, EITHER BY SURVEY OR AN

24    ACTUAL REPORTED INSTANCES OF CONFUSION, THEN THAT IS SOMETHING

25    THE COURT SHOULD CONSIDER.

1    THEY HAVE CITED NO CASE WHERE THERE IS -- WE HAVE DOZENS

2    AND DOZENS OF EXAMPLES WHERE CONSUMERS WERE OBVIOUSLY

3    CONFUSED, IN ADDITION TO A SURVEY, IN ADDITION TO OTHER

4    CLEARLY RELEVANT EVIDENCE UNDER *REARDEN*, WHICH IS A BINDING

5    NINTH CIRCUIT CASE.  YOU CAN LOOK AT WHERE JOURNALISTS WERE

6    CONFUSED, VERSACE EMPLOYEES WERE CONFUSED.  THERE WERE OVER

7    2,000 SEARCHES ON VERSACE'S WEBSITES LOOKING FOR VERSACE

8    19.69.  CONSUMERS ARE CONFUSED.  THERE'S NO QUESTION ABOUT IT.

9    THE DI MINIMUS PRINCIPLE HAS NO APPLICATION IN THIS CASE.

10    YOUR HONOR, IN *COHN*, JUST TO CLOSE OUT, THERE WERE ZERO

11    INSTANCES OF ACTUAL CONFUSION IN THAT CASE, AND THE COURT

12    OBSERVED THAT THERE, THE PARTIES HAD BEEN EXISTING IN THE SAME

13    CITY OFFERING VETERINARY SERVICES FOR SIX YEARS.

14        **THE COURT:**  ALL RIGHT.

15        **MR. DUNNEGAN:**  YOUR HONOR, HERE WE HAVE A SITUATION

16    INVOLVING AN ENTIRE COUNTRY FOR A LITTLE UNDER TWO YEARS, MORE

17    THAN A YEAR AND A HALF, AND ROUGHLY $30 MILLION OF SALES AT

18    THE RETAIL LEVEL, AND THEY CAN IDENTIFY A HANDFUL OF INSTANCES

19    OF ACTUAL CONFUSION.

20    NOW, THOSE ARE HEARSAY EXAMPLES.  WE DO NOT HAVE A SINGLE

21    CONSUMER TO COME IN AND TESTIFY THAT THEY WERE ACTUALLY

22    CONFUSED AS TO WHAT THEY WERE BUYING WHEN THEY BOUGHT IT.

23    THAT IS STRIKING.

24        **THE COURT:**  THIS IS NOT A WINNER.  YOU'VE MADE YOUR

25    POINT IN YOUR PAPERS, BUT I JUST DON'T THINK THERE COULD BE

1   CLEARER EVIDENCE OF CONFUSION, AND THAT'S THE WHOLE POINT.

2   THE POINT IS THAT THEY THINK THIS IS A VERSACE BAG.  WHO ARE

3   WE FOOLING HERE?

4            **MR. DUNNEGAN:**  WELL, IF I MAY PUSH BACK, YOUR HONOR.

5   IF WE CAN TAKE -- LET ME PULL UP MY NOTES ON THAT CONFUSION

6   ISSUE.

7            **THE COURT:**  WHAT ELSE WOULD BE THE POINT OF THE

8   MATERIALS FROM YOUR CLIENT THAT ARE IN THE RECORD SAYING THAT

9   THIS IS A GREAT OPPORTUNITY BECAUSE IT'S ASSOCIATED WITH THE

10  WORLDWIDE VERSACE BRAND?

11           **MR. DUNNEGAN:**  BUT, A, THOSE WERE STATEMENTS WHICH

12  WERE DIRECTED TO THE TRADE NOT TO CONSUMERS.  AND, B, THOSE

13  WERE STATEMENTS THAT WERE MADE IN LIGHT OF THE CONCILIATION

14  AGREEMENT WHERE EVERYONE THOUGHT, BASED UPON THE LANGUAGE OF

15  IT, THAT THEY HAD THE RIGHT TO USE THE VERSACE FULL COMPANY

16  NAME FOR PURPOSES OF LABELING.

17           **THE COURT:**  ALL RIGHT.

18     SO GETTING TO THE CONCILIATION AGREEMENT, WHY SHOULDN'T I

19  DEFER TO ALL OF THE ITALIAN COURTS THAT HAVE INTERPRETED THAT

20  AGREEMENT IN ITALIAN UNDER ITALIAN LAW AND FOUND AGAINST YOUR

21  CLIENT REPEATEDLY UNDER A PRINCIPLE OF COMITY?

22     IT JUST STRIKES ME AS A FOOL'S ERRAND TO TRY TO HAVE THIS

23  COURT REVISIT THAT FROM SCRATCH BASED ON TRANSLATIONS.  WHY IS

24  THIS NOT SQUARELY IN THE COMITY WHEELHOUSE?

25           **MR. DUNNEGAN:**  COMITY IS A MATTER OF DISCRETION.

1      **THE COURT:**  UNDERSTOOD.

2      **MR. DUNNEGAN:**  IT ARISES WHEN THERE'S AN ISSUE WHICH

3  HAS BEEN PREVIOUSLY DECIDED BY A FOREIGN COURT.  HERE WE HAVE

4  THE ISSUE OF WAIVER WHICH HAS NEVER BEEN DECIDED BY A FOREIGN

5  COURT.  IT IS CLEARLY A DEFENSE TO A LANHAM ACT CLAIM.  THE

6  OTHER SIDE DOES NOT DISPUTE EITHER OF THOSE PROPOSITIONS.  IT

7  SHOULD BE DECIDED AS A MATTER OF FEDERAL LAW.

8      NOW, THE ESSENCE OF THE WAIVER CLAIM IS, THE AGREEMENT --

9  THE CONCILIATION AGREEMENT CONTAINS THE LANGUAGE THAT THE FULL

10  COMPANY NAME CAN BE USED QUOTE "ALSO FOR PURPOSES OF LABELING"

11  END QUOTE.

12      **THE COURT:**  ISN'T THAT THE TRANSLATION THAT RAISES

13  THIS SUPPOSED ISSUE?

14      **MR. DUNNEGAN:**  WE CAN'T HAVE A -- THAT IS A

15  TRANSLATION OF OUR EXPERT.  THEY DO NOT HAVE A COMPETING

16  TRANSLATION EXPERT.

17      **THE COURT:**  SO WHY WOULDN'T I SKIP DEALING WITH THE

18  TRANSLATION ALTOGETHER WHEN THE ITALIAN COURTS WHO WORK EVERY

19  DAY IN THE ITALIAN LANGUAGE INTERPRETED IT IN THE ORIGINAL

20  ITALIAN AND MADE THE FINDINGS THEY MADE?

21      **MR. DUNNEGAN:**  BECAUSE THE WAIVER ISSUE IS DIFFERENT

22  THAN THE CONTRACT INTERPRETATION ISSUE.  THE CONTRACT

23  INTERPRETATION ISSUE UNDER ITALIAN LAW, WHICH IS ALL THE

24  ITALIAN COURTS HAVE LOOKED AT, REQUIRES THE ITALIAN JUDGE TO

25  GO THROUGH A SERIES OF HIERARCHICAL RULES WHICH BEGIN WITH

1    WHAT'S THE INTENT OF THE PARTIES BASED UPON THE AGREEMENT, AND

2    INCLUDES THINGS LIKE WHAT'S THE PURPOSE OF THE AGREEMENT AS WE

3    UNDERSTAND IT.  THAT REQUIRES A LOT OF FACTS TO BE READ IN TO

4    THE INTERPRETATION OF THE AGREEMENT.

5        AND WHAT THESE ITALIAN COURTS ARE DOING IS LITERALLY

6    IGNORING THE LANGUAGE THAT WE ARE RELYING UPON AND SAYING THAT

7    THE LANGUAGE "ANCHE AI LINI" TRANSLATED ALSO FOR PURPOSES OF

8    LABELING DOES NOT HAVE ANY MEANING.

9        NOW, I DON'T SEE WHY IT'S APPROPRIATE FOR THIS COURT TO

10   SUBCONTRACT OUT TO THE ITALIAN COURTS WHETHER OR NOT THERE'S A

11   SIMPLE WAIVER DEFENSE TO THEIR LANHAM ACT AND DILUTION CLAIMS.

12       THE PROOF THAT THIS WOULD INVOLVE IS ONE WITNESS, A COUPLE

13   OF DOCUMENTS WHICH COULD BE SEVERED AND DONE EXTREMELY

14   QUICKLY, THAT WOULD BE A SILVER BULLET.

15           **THE COURT:**  ALL RIGHT.  YOUR RESPONSE?

16           **MS. RING:**  YOUR HONOR, TO ARGUE THAT -- SO TO SHOW

17   WAIVER, THEY HAVE TO SHOW THAT VERSACE MADE A STATEMENT THAT

18   WAS CLEAR, DECISIVE, UNEQUIVOCAL THAT THEY WERE GIVING UP

19   THEIR RIGHTS IN THIS -- IN THESE TRADEMARKS.

20       AND TO SAY THAT THAT INQUIRY IS SEPARATE AND ONE THAT THE

21   ITALIAN COURT DID NOT CONSIDER IN ITS DECISIONS, I'M NOT EVEN

22   SURE WHAT TO SAY.  IT MAKES NO SENSE.

23       IN INTERPRETING THE CONCILIATION AGREEMENT, THE ITALIAN

24   COURT -- THAT AGREEMENT IS WRITTEN IN ITALIAN.  SO THERE WAS

25   NO TRANSLATION NEEDED.  THE ITALIAN COURT LOOKED AT THAT AND

1    SAID THIS MEANS VERSACE 19.69 CANNOT USE ITS COMPANY NAME

2    EXCEPT WHERE STRICTLY REQUIRED BY LAW.   PERIOD.

3        IT DIDN'T NEED TO TRANSLATE IT TO ENGLISH AND BACK.   IT

4    JUST LOOKED AT THE AGREEMENT AS IT WAS.   AND TO NOW SAY THAT

5    GIVEN THAT THAT'S WHAT THE AGREEMENT MEANS, THAT IF WE

6    TRANSLATE IT INTO ENGLISH AND BECAUSE TWO WORDS CAN BE, CAN BE

7    INTERPRETED INTO ENGLISH TO MEAN SOMETHING DIFFERENT, AND SO

8    THAT, THEREFORE, IN THE UNITED STATES NOW, IT CAN MEAN EXCEPT

9    AS REQUIRED BY LAW AND ALSO FOR PRODUCT LABELING AND,

10   THEREFORE, CONSTITUTES A WAIVER IN THE UNITED STATES WHEN IN

11   ITALY, THE ITALIAN COURTS HAVE SAID, NO, IT DOESN'T MEAN ALSO,

12   IT MEANS INCLUDING, AND IT PROHIBITS VERSACE 19.69 FROM DOING

13   EXACTLY WHAT THEY ARE ASKING THIS COURT TO SAY IS OKAY, IT

14   JUST MAKES NO SENSE.

15       THERE HAS BEEN NO WAIVER HERE.   THERE HAS BEEN NO ISSUE

16   FOR THE U.S. COURT TO DECIDE THAT WOULD BE DIFFERENT FROM WHAT

17   THE ITALIAN COURT HAS ALREADY DECIDED, WHICH IS THE

18   CONCILIATION AGREEMENT DOES NOT MEAN WHAT VERSACE 19.69 SAYS

19   IT MEANS.

20           **THE COURT:**  ALL RIGHT.   I THINK I UNDERSTAND THAT

21   POINT.   TWO MORE.

22       WITH REGARD TO THE REQUEST FOR INJUNCTIVE RELIEF, WHAT IS

23   THE STRONGEST BASIS FROM THE PLAINTIFFS' PERSPECTIVE FOR THE

24   PREMISE THAT MONETARY DAMAGES WOULD NOT BE SUFFICIENT TO GIVE

25   YOU A REMEDY AND DETER ANY WRONGFUL CONDUCT?

1        **MS. RING:**  YOUR HONOR, BECAUSE... AN INJUNCTION IS

2   REQUIRED HERE BECAUSE LOSS OF CONTROL OF THE BRAND, WHICH HAS

3   CLEARLY OCCURRED HERE.  IN ALL OF THESE PRODUCTS THAT HAVE

4   BEEN SOLD TO CONSUMERS WHO THOUGHT THEY WERE BUYING A VERSACE

5   PRODUCT ONLY TO BE BITTERLY DISAPPOINTED WHEN THEY GOT

6   SOMETHING THAT WAS LOWER QUALITY THAN THEY EXPECTED, THAT

7   HARMS VERSACE'S REPUTATION.  IT MEANS THAT VERSACE WHICH

8   FOCUSES SO MUCH ENERGY ON MAINTAINING THE QUALITY OF ITS

9   PRODUCT, IT CAN'T DO THAT ANYMORE.  SO THERE IS NO MONETARY

10  RELIEF THAT WOULD ADDRESS THAT.

11       MOREOVER, I THINK THAT THIS DEFENDANT HAS SHOWN ITSELF TO

12  BE -- IT'S NOT GOING TO STOP WHAT IT'S DOING UNTIL A COURT

13  ORDERS IT TO, WHICH IS WHY THE COURT IN MILAN HAS ENJOINED

14  EXACTLY WHAT THEY ARE ASKING THIS COURT TO LET THEM DO, HAS

15  ENJOINED IT NOT JUST IN ITALY, BUT THROUGHOUT THE EU.  SO THEY

16  ARE NOT ALLOWED TO DO WHAT THEY'RE ASKING THIS COURT TO SAY

17  THEY CAN DO ANYWHERE IN THE EU.

18       **THE COURT:**  YOU'RE SHAKING YOUR HEAD.  WHY IS THAT

19  NOT TRUE?

20       **MR. DUNNEGAN:**  BECAUSE UNDER THE DECEMBER 2017

21  OPINION OF THE APPELLATE -- THE INTERMEDIATE APPELLATE COURT

22  IN ITALY, THERE ARE CERTAIN EXAMPLES -- AND THESE ARE CITED IN

23  OUR PAPERS -- WHERE THE COURT SAID THAT WE HAVE TO PUT THE

24  FULL COMPANY NAME ON THE PRODUCT, COSMETICS, OPTICAL LENSES,

25  SUNGLASSES, AND THERE MAY BE ANOTHER ONE WHICH I DON'T

1    REMEMBER.  BUT THE IDEA THAT THERE HAS TO BE -- YOU KNOW, THAT

2    THE MILAN -- THAT THE COURT IN MILAN, ITALY HAS ENJOINED

3    EXACTLY WHAT THEY WANT HERE IS INCORRECT.

4            **MS. RING:**  YOUR HONOR, THE COURT IN MILAN HELD THAT

5    THE CONCILIATION AGREEMENTS PROHIBITS THE USE OF THE COMPANY

6    NAME EXCEPT WHERE STRICTLY REQUIRED BY LAW.

7        IN THE EU, THERE ARE SOME LIMITED LAWS THAT REQUIRE

8    PUTTING THE COMPANY NAME ON CERTAIN TYPES OF PRODUCTS LIKE

9    COSMETICS BUT IN A WAY THAT IS NOT CONSPICUOUS TO CONSUMERS

10   LIKE WHAT'S GOING ON HERE.

11       BUT REALLY THE RELEVANT POINT FOR THIS COURT'S

12   CONSIDERATION IS THE FACT THAT VERSACE 19.69 HAS SAID THERE IS

13   NO LAW REQUIRING USE OF THE COMPANY NAME IN THE UNITED STATES.

14   THEY HAVE SAID THAT.  THEY HAVE ADMITTED THAT THERE IS NO LAW

15   THAT REQUIRES USE OF THE COMPANY NAME IN THE UNITED STATES.

16       AND WE AGREE WITH THAT.  BUT THEY HAVE ADMITTED IT.  IT'S

17   IN THE RECORD.  THEY MAKE NO ISSUE OF THAT.

18           **THE COURT:**  IS THAT IN A REQUEST FOR ADMISSION?

19           **MS. RING:**  IT'S IN AN INTERROGATORY, YOUR HONOR.

20           **MR. DUNNEGAN:**  WE ARE NOT DISPUTING THE UNITED STATES

21   LAW REQUIREMENTS CONCERNING THE USE OF THE COMPANY NAME ON THE

22   PRODUCTS.  THE ISSUE WAS IN EUROPE WHERE SHE TRIED TO SAY THAT

23   YOU SHOULD DO EXACTLY WHAT MILAN HAS DONE, AND THAT WAS

24   INCORRECT.

25       BUT MAY I ADDRESS YOUR HONOR'S POINT?

1          **THE COURT:** YES.

2          **MR. DUNNEGAN:** YOU ASKED THE QUESTION WHY INJUNCTIVE

3     RELIEF WOULD NOT BE ENOUGH.  IN THIS SITUATION, THERE IS NO

4     EVIDENCE OF IRREPARABLE HARM OTHER THAN THEIR SPECULATION.

5     THEY CAN OFFER NO EVIDENCE WHATSOEVER THAT THEY HAVE SUSTAINED

6     ANY MONETARY DAMAGES WHICH WOULD BE COMPENSABLE.  THEY ADMIT

7     THAT IN THEIR REPLY BRIEF ON OUR MOTION IN A FOOTNOTE.  SO --

8          **THE COURT:** AREN'T THEY SAYING THAT WE WOULD HAVE TO

9     HAVE A BENCH TRIAL ON THAT POINT?

10          **MR. DUNNEGAN:** ON WHAT --

11          **THE COURT:** WHERE DID THEY ADMIT THAT THERE WERE NO

12    DAMAGES?

13          **MS. RING:** I CAN CLARIFY THIS QUICKLY.

14     WE NEVER ADMITTED THERE WERE NO DAMAGES, YOUR HONOR, BUT

15    WE DID SAY WE WERE NOT SEEKING ACTUAL DAMAGES IN THE CASE,

16    THOUGH WE ARE -- THOUGH WE ARE SEEKING INFRINGERS' PROFITS

17    WHICH IS AN EQUITABLE REMEDY WHICH WOULD BE TRIED TO THE

18    COURT.

19          **THE COURT:** ALL RIGHT.  I SEE.

20          **MR. DUNNEGAN:** THE ONLY EVIDENCE THEY HAVE OF ANY

21    SORT OF INTANGIBLE DAMAGE REALLY RESTS ON THE OPINION OF

22    DR. SERDARI WHO SUBMITS IN HER EXPERT REPORT THAT THERE WOULD

23    BE DAMAGE IF VERSACE 19.69 IS ALLOWED TO CONTINUE USING ITS

24    MARK.  THERE'S NO EMPIRICAL EVIDENCE WHICH IS RELIED UPON.

25    IT'S MERELY A NAKED CONCLUSION AS TO WHAT SHE THINKS.

1    THAT'S NOT THE TYPE OF INFORMATION THAT SHOULD GET YOU

2   IRREPARABLE HARM.

3        **MS. RING:**  YOUR HONOR, IF I MAY.

4    INCLUDED IN THE CONSUMER STATEMENTS ARE NUMEROUS EXAMPLES

5   WHERE CONSUMERS ARE DISAPPOINTED WITH THE QUALITY OF THE

6   PRODUCT THAT THEY BOUGHT FROM VERSACE 19.69 BECAUSE THEY

7   THOUGHT IT WAS VERSACE.  THAT IS... THAT IS -- EVEN AFTER HER

8   READ, THAT IS THE SINE QUA NON OF HARM WHERE YOU -- YOU -- YOU

9   HAVE A BRAND OWNER, THERE'S AN INFRINGER THAT'S SELLING A

10  PRODUCT THAT'S OF INFERIOR QUALITY AND IT'S HURTING THEIR

11  REPUTATION BECAUSE CONSUMERS NOW THINK THAT THE BRAND OWNERS'

12  PRODUCTS ARE INFERIOR QUALITY.

13       **THE COURT:**  WHAT'S YOUR MOST ANALOGOUS CASE THAT

14  WOULD SUPPORT THE IMPOSITION OF INJUNCTIVE RELIEF HERE?

15       **MS. RING:**  YOUR HONOR, I DON'T HAVE THIS WITH ME.

16  COULD WE SUBMIT -- WE WOULD BE HAPPY TO SUBMIT A SHORT LETTER

17  BRIEF LATER.

18   BUT TO SAY THAT THERE'S NO EVIDENCE OF HARM HERE IS AS

19  WOULD BE REQUIRED UNDER THE NINTH CIRCUIT STANDARD FOR ISSUING

20  INJUNCTIVE RELIEF IS JUST UNTRUE.  THERE'S THE CONSUMERS'

21  STATEMENTS THEMSELVES.

22   IN ADDITION, DR. SERDARI IS A BRANDING EXPERT.  HER

23  ACADEMIC BACKGROUND, HER FIELD OF STUDY, HER AREA OF EXPERTISE

24  IS IN UNDERSTANDING WHAT A LUXURY BRAND LIKE VERSACE HAS TO DO

25  TO MAINTAIN ITS LUXURY STATUS.  AND SHE GOES INTO GREAT DETAIL

1    IN HER REPORT EXPLAINING WHY HAVING A PARASITIC BRAND OUT

2    THERE LIKE THIS WOULD HARM AND MAKE IT IMPOSITION FOR VERSACE

3    TO MAINTAIN ITS STATUS AS A LUXURY BRAND.

4       THAT IS JUST THE QUINTESSENTIAL HARM THAT CRIES OUT FOR

5    INJUNCTIVE RELIEF IN A CASE LIKE THIS.  THERE IS NO MONEY

6    DAMAGES THAT COULD RESTORE VERSACE.

7             THE COURT:  OKAY.  WELL, I'LL ASSESS THAT.  IT SOUNDS

8    LIKE -- I UNDERSTAND YOUR PROSPECTIVE POSITIONS ON THAT.

9             MR. DUNNEGAN:  CAN I EMPHASIZE TWO POINTS?

10            THE COURT:  SURE.

11            MR. DUNNEGAN:  FIRST, AS TO THE HARM TO THE VERSACE

12   BRAND, THEY DID IN EARLY 2017 THIS STUDY WHICH MR. KRAMSHE

13   (PHONETIC) TALKED ABOUT IN HIS TESTIMONY WHERE THERE WAS SOME

14   INDEPENDENT CONSULTING FIRM TRYING TO IMPACT -- TRYING TO

15   ASSESS THE STRENGTH OF THE VERSACE BRAND.  THEY HAVE NOT PUT

16   THAT ON THE TABLE.  THEY HAVE NOT USED THAT IN THIS CASE.

17      THE ONLY INFERENCE FROM THAT IS THE VERSACE BRAND IS WHAT

18   IT IS.  IT HASN'T BEEN IMPACTED BY ANY INFRINGING ACTIVITIES,

19   AND ANY OF THESE INFRINGING ACTIVITIES DO NOT IMPACT THE

20   DIRECTION IN WHICH IT IS GOING.

21            THE COURT:  I JUST DON'T SEE THAT INFERENCE AS

22   REMOTELY BEING DRAWABLE FROM WHAT YOU JUST CITED.

23      WHAT'S YOUR SECOND POINT?

24            MR. DUNNEGAN:  MY SECOND POINT WOULD BE, IF YOU LOOK

25   AT THE AMOUNT OF RETURNS THAT VERSACE HAS FOR QUALITY, THEY

1    ARE IN THE ONE PERCENT NEIGHBORHOOD.  THAT'S THE TESTIMONY OF

2    MR. LACUSO -- LUSARIO (PHONETIC).  AND 1 PERCENT RETURNS FOR

3    PRODUCTION RATES IS HIGHER THAN ANY EVIDENCE IN THE RECORD

4    ABOUT WHAT THE RETURNS ARE FOR THE VERSACE 19.69 MERCHANDISE.

5        SO TO PICK OUT A COUPLE OF EXAMPLES FROM THE RECORD AND

6    SAY, OH, THIS CONSUMER WAS CONCERNED THAT THIS MERCHANDISE WAS

7    NOT OF SUFFICIENT QUALITY AND THAT HURTS THE VERSACE

8    REPUTATION, I DON'T THINK THAT CAN BE SQUARED WITH THE FACT

9    THAT THEY HAVE A 1 PERCENT RETURN RATE FOR PRODUCTION ISSUES.

10           **MS. RING:**  YOUR HONOR, IF I MAY --

11           **THE COURT:**  I DON'T NEED ANY MORE ARGUMENT ON THIS

12   POINT.

13           **MS. RING:**  OKAY.

14           **THE COURT:**  LAST POINT.

15       WITH REGARD TO THE VERSACE U.S.A. CLAIMS, THE DEFENDANT

16   ARGUES THAT THOSE SHOULD BE DISMISSED BECAUSE THAT ENTITY IS

17   NOT THE OWNER OF THE MARKS.  AS I READ IT, PLAINTIFF CAME BACK

18   AND SAID, WELL, SECTION 1125(A) CLAIM WOULDN'T BE IMPACTED,

19   BUT ARE YOU AGREEING THE OTHERS WOULD BE?

20       IF VERSACE U.S.A. IS NOT THE OWNER OF THE MARK AS TO THE

21   OTHER CLAIMS, WHAT'S THE BASIS FOR THOSE BEING MAINTAINED?

22           **MS. RING:**  MY COLLEAGUE, MS. LUEDTKE IS GOING TO

23   ADDRESS THIS.

24           **MS. LUEDTKE:**  WELL, CERTAINLY, YOUR HONOR, WITH

25   RESPECT TO THAT CLAIM IT REMAINS IN FOR VERSACE U.S.A.  WITH

```
 1   RESPECT TO THE OTHERS, I THINK... I THINK THAT IT'S NOT

 2   NECESSARILY THE CASE THAT IT NEEDS TO GO FORWARD AGAINST THEM.

 3   BUT I THINK VERSACE U.S.A. STAYS IN THE CASE BECAUSE IT HAS

 4   BEEN -- FOR AT LEAST THE 1125(A) CLAIM BECAUSE IT HAS BEEN

 5   ASSIGNED AND LICENSED THE RIGHTS TO THE TRADEMARK IN THE

 6   UNITED STATES.

 7        THE COURT:  OKAY.  SO WOULD YOU AGREE AS TO THE

 8   REMAINING CLAIMS THAT PLAINTIFF SHOULD BE DISMISSED?

 9        MS. LUEDTKE:  I DON'T KNOW, YOUR HONOR.  I WOULD NEED

10   TO LOOK INTO THAT AND ADDRESS THAT FURTHER.  BUT I KNOW IT

11   WOULD STAY IN THE CASE FOR PURPOSES OF THE 1125 CLAIM.

12        THE COURT:  OKAY.  ALTHOUGH THIS WAS -- YOUR REPLY

13   WAS YOUR OPPORTUNITY TO DO THAT AND ALL OF THE ARGUMENT YOU

14   GAVE ME WAS AS TO 1125(A).  SO I THINK IF YOU DIDN'T MAKE IT

15   BY NOW YOU MAY NOT GET TO MAKE IT.

16        MS. LUEDTKE:  THANK YOU, YOUR HONOR.

17        THE COURT:  ANYTHING ON THAT POINT?

18        MR. DUNNEGAN:  NO, SIR.

19        THE COURT:  ALL RIGHT.  OKAY.  THOSE ARE THE

20   QUESTIONS I HAVE.  I WILL TAKE IT UNDER SUBMISSION AND AIM TO

21   GET YOU A RULING AS SOON AS I CAN.

22        MS. RING:  THANK YOU, YOUR HONOR.

23      AND AT THE RISK OF BEING ANNOYING, ON THE INJUNCTION

24   CASES, I JUST WANTED TO REFER THE COURT TO PAGE 38 TO 40 OF

25   OUR BRIEF.  AND IN PARTICULAR, *NEUROVISION MED PRODUCTS* AND
```

1    THE *DECKERS OUTDOOR* CASE.  BOTH ARE CENTRAL DISTRICT OF

2    CALIFORNIA CASES.

3              **THE COURT:**  ALL RIGHT.  I DID SEE THOSE CASES.

4              **MS. RING:**  YOUR HONOR, I'M NOT SURE HOW TO RAISE

5    THIS, BUT GIVEN YOUR COMMENTS WHEN WE STARTED THE HEARING, WE

6    HAVE A TRIAL DATE IN LESS THAN TWO MONTHS NOW.  SO WE HAVE

7    SOME DEADLINES THAT ARE COMING UP VERY QUICKLY.  SO....

8              **THE COURT:**  I THINK YOU NEED TO PROCEED.

9              **MS. RING:**  ASSUME?

10             **THE COURT:**  PROCEED AS --

11             **MS. RING:**  IT WOULD NOT BE THE FIRST TIME.

12             **THE COURT:**  PROCEED AS THOUGH YOU ARE SET FOR TRIAL

13   UNTIL YOU HEAR OTHERWISE.  ALTHOUGH DO YOU HAVE A MEDIATION

14   COMING UP?

15             **MS. RING:**  WE DO, YOUR HONOR.  I BELIEVE IT'S

16   MAY 9TH.

17             **THE COURT:**  ALL RIGHT.

18      ALL RIGHT.  SUBMITTED?

19             **MR. DUNNEGAN:**  THANK YOU.

20             **MS. RING:**  THANK YOU, YOUR HONOR.

21             **THE COURT:**  YOU'RE WELCOME.

22                  (PROCEEDINGS CONCLUDED AT 3:25 P.M.)

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

5   UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

7   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9          *Diane E. Skillman*

10          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

11             WEDNESDAY, APRIL 18, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25