UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIANNI VERSACE, S.P.A., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VERSACE 19.69 ABBIGLIAMENTO SPORTIVO SRL, et al.,<br><br>Defendants. | Case No. 16-cv-03617-HSG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 221, 218 |

Plaintiffs Gianni Versace, S.p.A. and Versace USA, Inc. (collectively, "Versace") bring this trademark infringement action against Versace 19.69 Abbigliamento Sportivo SRL, Theofanis Papadas, Valero Enterprises, Inc., Susan Valero, V1969 BH LLC, Brilliance New York LLC, V1969 Versace SMO LLC, V1969 Versace HG LLC, and V1969 USA LLC. *See* Dkt. No. 1.[1] Plaintiffs' first amended complaint asserts the following seven claims: (1) false designation of origin, 15 U.S.C. § 1125(a); (2) federal trademark infringement, 15 U.S.C. §§ 1114 and 1125(a); (3) federal trademark dilution, 15 U.S.C. § 1125(c); (4) common law trademark infringement; (5) a declaration of trademark infringement, 28 U.S.C. § 2201(a)(9) and 15 U.S.C. § 1114(1); (6) state and common law dilution, Cal. Bus. & Prof. Code § 14330; and (7) unfair competition, Cal. Bus. & Prof. Code § 17200. Dkt. No. 123 ("FAC").

Versace moves for summary judgment on all claims stated in the FAC, as well as on all counterclaims and affirmative defenses asserted by Defendants Versace 19.69 Abbigliamento Sportivo S.R.L. and Theofanis Papadas (collectively, "VAS"). Dkt. No. 221 ("Pls. Mot."). VAS moves for partial summary judgment on Versace's federal and state law trademark infringement

---

[1] The two trademarks at issue are "Versace" and "Gianni Versace."

United States District Court<br>Northern District of California

claims, trademark dilution claims, and all claims asserted by Versace USA, Inc.  Dkt. No. 218

("Defs. Mot.") at 1-2.  Briefing on the motions is complete, and the Court held a hearing on March

29, 2018.  *See* Dkt. Nos. 238 ("Defs. Opp."), 248 ("Pls. Reply"), 240 ("Pls. Opp."), 246 ("Defs.

Reply").  After carefully considering the parties' arguments, the Court **GRANTS** Versace's

motion, and **GRANTS IN PART** and **DENIES IN PART** VAS's motion.

## I.     LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the

record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The

Court views the inferences reasonably drawn from the materials in the record in the light most

favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations,"

*Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*

*Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of

producing those portions of the pleadings, discovery, and affidavits that show the absence of a

genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the

moving party will not bear the burden of proof on an issue at trial, it "must either produce

evidence negating an essential element of the nonmoving party's claim or defense or show that the

nonmoving party does not have enough evidence of an essential element to carry its ultimate

burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

(9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must

also show that no reasonable trier of fact could not find in its favor.  *Celotex Corp.*, 477 U.S. at

325.  In either case, the movant "may not require the nonmoving party to produce evidence

supporting its claim or defense simply by saying that the nonmoving party has no such evidence."

*Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105.  "If a moving party fails to carry its initial

burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## II.     VERSACE'S MOTION FOR SUMMARY JUDGMENT

Versace moves for summary judgment on all of the claims asserted in the FAC. *See* Pls. Mot. at 10. The Court turns first to Versace's claims for federal and state law trademark infringement, false designation of origin, and unfair competition. The Court examines these claims concurrently because they are "substantially congruent." *See id.* at 10 n.4; *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 n.10 (9th Cir. 2004) ("Because California trademark law claims are substantially congruent, we do not examine them separately in this opinion, just as the district court did not.") (quotations omitted); *Denbicare U.S.A. Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996), *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013) ("State common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act.") (quotations and alterations omitted).

### A.     Trademark Infringement

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks*

& *Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).  It is a "well-established principle that because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (quotations and alterations omitted).  Nonetheless, "where the evidence is clear and tilts heavily in favor of a likelihood of confusion," the Ninth Circuit has "not hesitated to affirm summary judgment" on the issue of infringement.  *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075-76 (9th Cir. 2006) (reversing the district court's denial of summary judgment where, despite the absence of evidence of actual confusion, the plaintiffs' marks were strong, the defendants' marks incorporated exact copies of plaintiff's marks, and the products at issue were "destined for the same buyers"); *accord Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004) (affirming summary judgment upon finding "legally identical" marks, a relationship between the goods at issue, and overlapping marketing channels); *E. & J. Gallo Winery v. Grenade Beverage, LLC*, 670 F. App'x 634 (9th Cir. 2016) (affirming summary judgment where at least five of the eight *Sleekcraft* factors favored the plaintiff).[2]  Courts in this circuit have accordingly granted summary judgment where there is no genuine issue of material fact as to the likelihood of confusion.  *See Mine O'Mine, Inc. v. Calmese*, No. 2:10-CV-00043-KJD, 2011 WL 2728390, at \*8 (D. Nev. July 12, 2011), *aff'd*, 489 F. App'x 175 (9th Cir. 2012); *DC Comics v. Towle*, 989 F. Supp. 2d 948, 960 (C.D. Cal. 2013), *aff'd*, 802 F.3d 1012 (9th Cir. 2015); *Experience Hendrix, LLC. v. Elec. Hendrix, LLC.*, No. C07-0338 TSZ, 2008 WL 3243896, at \*14 (W.D. Wash. Aug. 7, 2008); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1093 (C.D. Cal. 2006); *W. Coast Corvettes, Inc. v. MV Mktg., Inc.*, No. SACV120269DOCRNBX, 2012 WL 12882014, at \*11 (C.D. Cal. Dec. 13, 2012); *GNLV, Corp. v. T. Warren Enterprises Inc.*, No. 2:13-CV-943 JCM CWH, 2014 WL 6473558, at \*8 (D. Nev. Nov. 18, 2014).

VAS does not dispute the first element of Versace's trademark infringement claim: that Gianni Versace, S.p.A. has a protectable ownership interest in the marks.  *See* Pls. Mot. at 10.

---

[2] Though they are not binding authority, the Court considers the Ninth Circuit's unpublished decisions, including *E. & J. Gallo Winery*, as persuasive authority.

Under 15 U.S.C. Section 1065, Gianni Versace, S.p.A.'s registered marks are incontestable. *See id.*; Dkt. No. 220-6 ("Briers Decl.") ¶¶ 3-4, Ex. 115 (presenting the six trademark registrations at issue, and the registration certificates). Accordingly, these registrations present "conclusive evidence" of the validity of the Versace marks, Gianni Versace, S.p.A.'s ownership of the marks, and Gianni Versace, S.p.A.'s exclusive right to use the registered marks in commerce. *See* 15 U.S.C. § 1115(b).

Turning to the second inquiry, whether VAS's use of the marks is likely to confuse consumers, the Court is guided by the following eight *Sleekcraft* factors:

> (1) [T]he similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

*Fortune Dynamic, Inc.*, 618 F.3d at 1030 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979)). These factors are "helpful guideposts. . . not a scorecard, a bean-counter, or a checklist." *Id.* at 1031. The Court discusses each factor in turn.

### i. *Sleekcraft* Factors

#### a. The Similarity of the Marks

In comparing the VAS and Versace marks, "[t]he key elements . . . are their sight, sound, and meaning, and similarities in these characteristics 'weigh more heavily than differences.'" *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (quoting *Alpha Industries v. Alpha Steel, Inc.,* 616 F.2d 440, 444 (9th Cir. 1980)). Versace argues that the VAS mark is similar because it incorporates an identical element—"Versace"—and that "Versace" is the dominant element of the marks. *See* Pls. Mot. at 11. In response, VAS emphasizes that it has never used the "Versace" name on its own, as the words "19.69 Abbigliamento Sportivo, S.R.L." follow "Versace" in its mark. Defs. Opp. at 20-21.

VAS's argument fails. First, there is no dispute that VAS's mark incorporates the "Versace" name. *See* Briers Decl. ¶¶ 9-10, Ex. 28 at 14. Second, VAS's expert, Michele L. McShane, admits that the "Versace" name is the dominant element of the VAS mark "by virtue of

the word positioning of the previously registered company name." Dkt. No. 238-07 ("McShane Decl."), Ex. D at 14. In virtually identical circumstances, including those involving the "Versace" marks, district courts have found that the marks at issue were similar. *See Versace v. Versace*, No. 01CIV.9645(PKL)(THK), 2003 WL 22023946, at *10 (S.D.N.Y. Aug. 27, 2003) ("There is no question that there is similarity between Gianni's marks and the alleged infringing mark. Both marks have the surname 'Versace' as the 'focal point' of the designation."); *Gucci Am., Inc. v. Gucci*, No. 07 CIV. 6820 RMB JCF, 2009 WL 8531026, at *15 (S.D.N.Y. Aug. 5, 2009) ("Consumers would be justified reasonably in believing that products bearing the names JENNIFER GUCCI and/or GEMMA GUCCI come from the same source as Plaintiff's products because of the presence of 'Gucci' in Defendants' licensed products, particularly where JENNIFER GUCCI and GEMMA GUCCI are used as the dominant part of the mark.") (quotation omitted). In addition, courts in and outside of this district have held that simply adding words to a mark is not sufficient to distinguish the marks for purposes of consumer confusion. *See Versace*, 2003 WL 22023946, at *10 ("While Alfredo's mark includes the phrase 'Designed by Alfredo' before the word 'Versace,' the dominant part of the mark is the surname. Because of the presence of the Versace name in Alfredo's mark, 'consumers would be reasonably justified in believing both products come from the same source.") (quotations and alteration omitted); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 464 (N.D. Cal. 1991) ("[B]ecause 'Gallo' is the single 'dominant' or 'substantive' term used by plaintiff on all its products. . . defendant's use of the term 'Gallo' even . . . in conjunction with other terms does not divert this Court from its conclusion that, as a matter of law, the two terms are significantly similar. . . ."). Though not binding on the Court, these cases are persuasive given the similarity of the circumstances presented. For its part, VAS fails to affirmatively set forth facts or law to support its position. Thus, this factor strongly favors Versace.

### b. The Proximity or Relatedness of the Goods or Services

With regard to this factor, "the focus is on whether the consuming public is likely somehow to associate" VAS's products with Versace's. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999). The Court considers whether "the goods are

complementary, the products are sold to the same class of purchasers, or the goods are similar in use and function." *Sleekcraft*, 599 F.2d at 350 (citations omitted).  Here, Versace sets forth undisputed evidence that both VAS and Versace: (1) sell merchandise that includes "ladies handbags," "shoes," "dresses," and "watches"; (2) are Italian fashion and lifestyle brands; and (3) trade on baroque aesthetic themes and packaging.  *See* Briers Decl.¶ 61, Ex. 35 (listing VAS's product types), Ex. 30 ("Serdari Report") at 28-58 (providing expert testimony regarding the likelihood of confusion given the style and characteristic design elements of the respective brands), Ex. 97 at 3 (presenting a VAS advertisement using similar coloring and style to Versace's branding); Dkt. No. 222 ("Conti Decl.") ¶ 5.  Again, VAS fails to seriously dispute any of this evidence.  *See* Defs. Opp. at 20-23.  There is accordingly no factual disagreement that the goods at issue are proximate.

### c.  The Strength of Versace's Marks

The strength of a trademark is assessed on a continuum of distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Versace argues that the Versace marks are "strong" because they are descriptive marks that have acquired secondary meaning.  *See* Pls. Mot. at 14-16.  Other district courts have agreed.  *See, e.g.*, *Gianni Versace SPA v. Awada*, No. CV 03-3254 GPS (RNBX), 2008 WL 11339656, at *3 (C.D. Cal. Mar. 25, 2008) (holding that the Versace mark is a "personal name that has acquired secondary meaning" and is therefore a "strong" mark).  There is no dispute that the Versace marks are incontestable, and are therefore "conclusively presumed to have acquired secondary meaning." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005).

Apart from its marks' incontestability, Versace presents additional evidence that its marks have acquired secondary meaning.  *See Brookfield Commc'ns, Inc.*, 174 F.3d at 1058 (holding that "advertising expenditures can transform a suggestive mark into a strong mark, where, for example, that mark has achieved actual marketplace recognition") (citation omitted).  That evidence establishes that Versace has used its marks for decades, undertaken extensive efforts to advertise and promote its branded products, is well-recognized by the general public, and has enjoyed

annual revenues of over $100 million.  *See* Conti Decl. ¶¶ 16-20 (advertising efforts and celebrity dressing), ¶¶ 28-38 (promotional efforts, including through media appearances, fashion shows, social media, fashion blogs, and events at Versace boutiques), ¶¶ 39-42 (journalistic coverage), ¶ 44 (annual revenue).  Furthermore, Versace submits statements from VAS licensees stating that they entered into agreements with VAS precisely because of the value of the Versace name and VAS's association with and use of the word "Versace."  Briers Decl. ¶¶ 72-80, Ex. 10 (agreeing that "the ability to use the Versace name in some capacity was a very important part of the value of the license" with Versace 19.69), Ex. 11 (stating that the licensee would not be interested "without the Versace name associated with V1969"); Ex. 12 (acknowledging that "part of the power that Versace 19.69 Abbigliamento Sportivo had, i[s] that it used Gianni Versace's name").  This evidence confirms that Versace's marks have acquired secondary meaning.

In response, VAS presents just one argument to show that Versace "is at the low end of strength for well-known marks."  Defs. Opp. at 19.  According to VAS, Versace paid a consulting company to conduct a survey assessing the strength of its marks, and Versace failed to produce that survey in this litigation.  *See id.*  VAS then queries "whether the Court can draw any conclusion—as a matter of law—about the strength of the VERSACE mark, or even about the likelihood of confusion in this case, without seeing that survey."  *Id.* at 20.  Considering Versace's substantial and uncontroverted evidence, the Court can, and concludes that the Versace marks are strong.

### d.  The Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion."  *Sleekcraft*, 599 F.2d at 353.  Versace admits that its products are primarily sold at high-end boutiques.  *See* Pls. Mot. at 16.  Nonetheless, Versace also presents evidence that many retailers sell both Versace and VAS products.  Conti Decl. ¶ 15 (listing department stores and other commercial retailers selling Versace products, including Bloomingdales/ Bloomingdales Outlet, Century 21, Dillards, Macy's/ Macy's Backstage, Marshalls, Neiman Marcus, Neiman Marcus Last Call, Nordstrom/ Nordstrom Rack, Ross, Saks Fifth Avenue/ Saks Off Fifth, and T.J. Maxx); *see* Briers Decl. ¶ 173, Ex. 32 at 10 (admitting that many of these same stores sell VAS products, including T.J. Maxx, Marshalls,

1   Century 21, Dillards, Nordstrom/Nordstrom Rack/Haute Look, Bloomingdales/Bloomingdales

2   Outlet, Macy's/Macy's Backstage, Lord & Taylor/Hudson Bay/Off Fifth/Saks, Amazon, Last

3   Call/Neiman Marcus, and others); Briers Decl., Ex. 21 ("Papadas Depo.") at 170:14-174:18

4   (acknowledging that this list of retailers selling VAS products is correct). There is also

5   uncontroverted evidence that the same online vendors sell both Versace and VAS products. *See*

6   Conti Decl. ¶ 15 (listing online retailers selling Versace products, including Amazon.com,

7   Bluefly.com, and Zulily.com); Briers Decl. ¶¶ 174-185, Exs. 131, 134–136 (presenting screen

8   shots of these same internet retailers selling VAS products listed under the Versace brand, and/or

9   VAS and Versace products sold side-by-side), Ex. 113.

10          In response, VAS highlights that its products have been sold at "off-price stores, such as

11  Ross Stores, Dillards, Century 21, and T.J. Maxx." Defs. Opp. at 21. But VAS fails to

12  acknowledge that Versace's products are also sold at many of these stores. VAS then stresses that

13  Versace fails to present figures comparing the number of Versace and VAS products sold by these

14  retailers. *See id.* VAS neither argues nor presents cases suggesting that relative sales metrics are

15  relevant to the Court's analysis of this factor. Finally, VAS contends that the VAS and Versace

16  product channels are distinct because VAS products are less expensive than Versace products. *See*

17  *id.* at 21-22. Again, VAS does not present case law or facts showing that this price differential

18  bears on whether the relevant marketing channels converge, *see id.* at 22, and binding and

19  persuasive authority suggests otherwise. *Cf. Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118,

20  1130 (9th Cir. 2014) ("Marketing channels can converge even when different submarkets are

21  involved so long as the general class of . . . purchasers exposed to the products overlap.")

22  (quotation omitted); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 248 (S.D.N.Y. 2012)

23  (finding that "in the post-sale context. . . the confusion that exists in the general viewing public is

24  what matters"). Even assuming that the lower price point of VAS products distinguishes them for

25  purposes of marketing channels, Versace presents undisputed evidence that consumers could be

26  confused with respect to Versace's two "diffusion lines," which include lower priced products.

27  *See* Briers Decl., Ex. 30 at 84-85. This evidence shows, moreover, that Versace tightly controls

28  the quality of its diffusion lines. *See id.* Thus, this factor too favors Versace.

### e. The Degree of Consumer Care

"[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Sleekcraft*, 599 F.2d at 353. The parties agree that VAS products sell at a lower price point than Versace products. *See* Pls. Mot. at 17, Defs. Opp. at 22. Versace argues that, as a result of that lower price, VAS consumers do not exercise a high degree of care and are therefore more likely to be confused. *See* Pls. Mot. at 17. In response, VAS presents testimony of a Versace representative, who stated that "consumers who purchase Versace products occasionally may be just as sophisticated as consumers [] who purchase" VAS products. *See* Defs. Opp. at 22-23 (citing Dkt. No. 238-22 ("Dunnegan Decl."), Ex. Q at 139:2-24).

VAS's argument fails. That some VAS consumers may sometimes be "sophisticated" is neither material nor disputed. VAS does not present evidence to show that a "sophisticated" consumer is unlikely to be confused; put differently, a consumer can have sophisticated taste, but still be confused by products that are similar in look or function. In addition, Versace presents evidence of actual confusion, as discussed below, supporting that VAS consumers "are in fact not exercising a high degree of care." *De Anda Enterprises, Inc. v. JL Deanda Enterprises LLC*, No. SACV162049DOCJCGX, 2017 WL 2960796, at *4 (C.D. Cal. Apr. 11, 2017). Again, this factor weighs in Versace's favor.

### f. Evidence of Actual Confusion

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 633 (9th Cir. 2005); *see also Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987) ("Evidence of actual confusion is 'persuasive proof that future confusion is likely.'" (quoting *Sleekcraft*, 599 F.2d at 352)). But "[b]ecause evidence of actual confusion can be difficult to obtain, its absence is generally unnoteworthy and is given little probative weight." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (quotation omitted). "In analyzing this factor, [the Court] may consider whether merchants and non-purchasing members of the public, as well as actual consumers, were confused." *Id.* "[L]itigants usually satisfy the 'likelihood of confusion' test by providing direct

evidence of consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012). Nonetheless, the Ninth Circuit has stated that "non-consumer confusion may also be relevant . . . in three specific and overlapping circumstances—namely where there is confusion on the part of: (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose confusion could influence consumers." *Id.*

Versace sets forth extensive evidence of consumer confusion and disappointment stemming from the conflation of VAS and Versace products. Negative remarks and product reviews by VAS purchasers show that many understand VAS products to be manufactured and/or sold by Versace. *See* Briers Decl. ¶ 159a-f, Ex. 91 at 4, 6-7 (customer reviews conflating VAS and Versace products), ¶¶ 228-259, Exs. 70, 106, 138 (customers confusing VAS and Versace products), ¶¶ 160-163, Exs. 120, 121 (customers criticizing Versace's product quality after buying VAS products).[3] Versace, moreover, presents testimony from store employees that purchasers have: (1) attempted to repair their VAS products at Versace stores; (2) asked whether their VAS products were "authentic" Versace products; and (3) inquired into the relationship between VAS and Versace. *See* Briers Decl. ¶¶ 261-264, Exs. 23 ("Smith Depo."), 18 ("Gonzales Depo.").

In addition to evidence of confusion on the part of actual purchasers, there is evidence of confusion on the part of potential customers. For instance, Versace presents evidence of online inquiries asking how Versace and VAS products are related. *See* Briers Decl. ¶¶ 265-266, Exs. 27 ("Wallace Depo.") (explaining that the Versace website logs questions regarding VAS products), 130 (providing the search report). Versace also offers an empirical study on confusion from its expert, Dr. Kent Van Liere, in which he examined whether consumers are confused as to: (1) the source of VAS and Versace products; (2) the association between the VAS and Versace brands; and (3) whether VAS requires Versace's permission to make VAS products. *See* Briers Decl. ¶¶

---

[3] While Defendants object to this evidence as hearsay, it is properly admissible as a present sense impression. See *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) ("Though the customers' statements were clearly offered for the truth of the matter, they are permissible under the 'state of mind' exception to the hearsay rule."); Fed. R. Evid. 803(3). And even if the Court were to exclude these customers' statements, there is still sufficient uncontroverted evidence to warrant summary judgment in Versace's favor.

11

United States District Court
Northern District of California

276-277, Ex. 29 ("Van Liere Report") ¶ 11.  Dr. Van Liere accordingly found that "84 percent of respondents in the test conditions were confused as to source, association, or permission."  Van Liere Report ¶ 12.  Dr. Van Liere opined that this was "strong evidence of confusion and strongly supports the conclusion" that VAS's use of the Versace name "on products and product labeling is likely to confuse consumers in the relevant population."  *Id.*

As to non-consumer confusion, Versace sets forth unrebutted evidence that retailers mistake the nature of VAS and Versace's relationship.  Briers Decl. ¶¶ 268–274.  With respect to media confusion, several news outlets reported that a Versace store was opening in the Mall of America; in fact, it was VAS that opened a store in that location.  *See* Briers Decl. ¶ 275, Ex. 119; *Rearden, LLC*, 683 F.3d at 1218 ("[C]onfusion of presumably knowledgeable and experienced trade journalists and trade show organizers could very well influence the purchasing decisions of consumers.").  Some of these articles were updated to reflect that the stories were "erroneous" as originally reported.  *See* Briers Decl. ¶ 275, Ex. 119 at 5.

Notably, VAS does not take specific issue with this evidence.  Instead, VAS asserts broadly that a genuine dispute of fact exists as to whether consumers are actually confused because "VAS's licensees sold over $16,000,000 of VAS licensed products."  *See* Defs. Opp. at 9; Dkt. No. 218-11 (providing an expert damages report that sales by U.S. licensees of VAS products "totaled $16,171,353").  VAS suggests that "the retail sales volume of those products would represent about twice that amount."  Defs. Opp. at 14.  Even if VAS is correct, VAS does not set forth evidence or apposite authority to meaningfully link these sales figures with an absence of consumer confusion.  *See id.*  Instead, VAS's authorities stand for the proposition that courts sometimes find for an alleged infringer in the absence of evidence of actual confusion.  *See id.*; *see, e.g.*, *Cohn*, 281 F.3d at 842-43 ("Here, however, the parties used the same trademark in the same city for six years to market closely-related goods and services.  Under these unusual circumstances, some evidence of actual confusion should have become available if Petsmart's coexisting use had created a genuine likelihood of confusion.").  But here, there *is* substantial, uncontroverted evidence that such confusion exists.  *See Au-Tomotive Gold, Inc.*, 457 F.3d at 1075.

VAS next asserts that confusion is unlikely because there is no evidence of "point-of-sale confusion." *See* Defs. Opp. at 9, 15 ("There is no dispute that plaintiffs have no witness to testify that he or she was confused at the time of a purchase as to the source or sponsorship of the products VAS licensed."). But VAS fails to cite a case indicating that Versace must present evidence of "point-of-sale" confusion, particularly in view of the above-discussed evidence of actual confusion. *See id.*; Pls. Reply at 8-9. VAS also asserts, without further evidence or argument, that Versace's evidence at best shows uncertainty, not confusion. *See* Defs. Opp. at 16. The Court disagrees. Finally, VAS argues that the Van Liere Report fails to show actual initial interest or point-of-sale confusion. Defs. Opp. at 17. But the survey includes proxy measurements for both. *See* Pls. Reply at 8; Van Liere Report ¶¶ 25-27; Dkt. No. 239-5 ("Luedtke Decl."), Ex. 167 ("Van Liere Questionnaire"). The confusion factor therefore weighs strongly in Versace's favor.

### g. VAS's Intent in Selecting the Mark

Even though an intent to confuse consumers is not required for a finding of trademark infringement, intent to deceive is strong evidence of a likelihood of confusion. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (internal quotations and citations omitted). "When the alleged infringer knowingly *adopts* a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354 (emphasis added).

Versace argues that intent can be inferred from (1) VAS's knowledge of the Versace marks; (2) VAS's agreement to indemnify licensees against any infringement lawsuit brought by Versace; and (3) VAS's branding and marketing materials, which Versace argues create a "false association" with its brand. *See* Pls. Mot. at 22-23; Briers Decl. ¶¶ 64, 206–216, Exs. 100–105. To the extent that VAS responds to this argument, it does so by raising the somewhat different proposition that VAS cannot be liable under a contributory theory of trademark liability. *See* Defs. Opp. 25-26. But that question is distinct from whether VAS *adopted* its mark knowing that it was similar to the Versace marks. *See Sleekcraft*, 599 F.2d at 354. VAS fails to present

evidence casting doubt on that finding.[4]  The Court agrees with Versace on this factor.

### h.  The Likelihood of Expansion Into Other Markets

Versace argues that the likelihood of expansion factor also supports summary judgment. According to Versace, VAS is planning to open additional luxury boutiques to mimic Versace's sales and branding strategies.  *See* Pls. Mot. at 25-26.  Versace offers a VAS corporate statement from May 27, 2016, indicating that the company seeks to invest "significant funds on opening flagship stores."  *See id.* at 25; Briers Decl., Ex. 82 at 1.  According to that announcement, VAS planned to open one store in San Francisco, two in Los Angeles, one store in Houston, and another in Minnesota.  VAS does not disagree that it intended to expand.  *See* Defs. Reply at 12.  Given VAS's concrete plans for expansion, and that it is in the same line of commerce of Versace, to the extent this factor is significant, it favors Versace.  *See Sleekcraft*, 599 F.2d at 353 ("[A] strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing.") (quotation omitted); *see also Brookfield*, 174 F.3d at 1060 (noting that likelihood of expansion is "relatively unimportant" when two companies already sell the same types of products).

### ii.  Direct, Vicarious, and Contributory Infringement Liability

Apart from the confusion inquiry, VAS argues that it entirely escapes infringement liability under direct, vicarious, and contributory infringement theories.  With respect to direct infringement, VAS argues that it cannot be liable because VAS operated entirely through licensees, and thus did not directly sell any infringing products or operate any stores.  *See* Defs. Opp. at 24 ("VAS merely entered into license agreements that permitted the licensees to use its trademarks and company name.").  The premise of VAS's vicarious liability theory is similar. VAS argues that Susan Valero and Valero Enterprises (collectively, "Valero"), with whom VAS worked to distribute VAS products to licensees, did not itself infringe.  *Id.* at 24-25.  Instead, VAS characterizes Valero's role as "identif[ying] potential licensees for VAS and work[ing] with those

---

[4] VAS argues that it lacked the requisite intent because it believed its use of the Versace marks conformed to a settlement agreement reached with Versace in Italy ("the Conciliation Agreement" or "the Agreement").  That argument is unavailing for the reasons set forth below.

licensees in dealing with VAS and with retailers." *Id.* To the extent that Valero did infringe, VAS claims that Valero acted beyond the scope of its agency authority, and that VAS was unaware of any unlawful representations by Valero. *Id.* Finally, VAS claims that it cannot be liable for inducing infringement under a contributory infringement theory because (1) there is no evidence of direct infringement; and (2) VAS lacked the necessary intent to infringe. *See id.* at 25-26.

VAS cannot escape liability based on its status as a licensor. VAS does not present any analogous authority, binding or otherwise, to support that proposition. *See id.* at 24. And while Versace presents limited case law on this question, Ninth Circuit authority favors its position. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1066, 1069-72 (9th Cir. 2015) (affirming a finding of infringement where the defendant licensed the use of certain photographs, and licensees then incorporated those photographs into products sold at retail outlets). Other district courts have adopted this view in comparable circumstances. *See Gucci Am., Inc.*, 2009 WL 8531026, at *15 (finding liability based on the defendants' "licensing products and/or selling [infringing] products").

In addition, the facts underlying a finding of direct infringement are uncontroverted. Namely, that VAS licensed the VAS mark, which includes the Versace name; Valero acted as VAS's contractual agent in working with licensees to promote VAS products; the VAS licensing agreements included a right to use the VAS name on the licensees' products; and VAS licensees were instructed by Valero, with VAS's knowledge, to conform to specific packaging and branding guidelines. *See* Briers Decl. ¶¶ 59-65, Exs. 35-48 (presenting a list of 31 licensing agreements, rights, and product scope), ¶¶ 66-71, Exs. 52-53 (describing a "style guide" distributed to licensees that set forth brand logo and packaging guidelines). As discussed, there is also undisputed evidence that VAS licensees agreed to VAS's terms in large part based on an ability to use the "Versace" name. *See also* Briers Decl. ¶¶ 72-80, Exs. 10-15, 17.

But even if VAS were not liable for direct infringement, VAS is liable under a theory of vicarious infringement liability. *See* Pls. Reply at 15 n.6. The above referenced evidence establishes that Valero's infringing acts were within the scope of its authority as VAS's agent, and were conducted with VAS's knowledge. VAS points to one contractual excerpt that VAS

represents as limiting "Valero's ability to prepare documentation on behalf of VAS." *See* Defs.

Opp. at 25; Papadas Decl. ¶ 22. But this excerpt does not support VAS's assertion; rather, it states

simply that VAS, as licensor, will provide Valero, its agent, with any documentation necessary to

carry out the scope of their agreement.[5] That agreement, in turn, required Valero to actively

promote the VAS brand and locate suitable licensees. *See* Dkt. No. 238-14 at 3. Both Papadas

and Susan Valero signed the agreement. *See id.* This is sufficient to establish VAS's liability for

infringement.[6]

## B. Trademark Dilution and Unfair Competition

Under both federal and California state dilution law, Versace must show that (1) its mark is

"famous and distinctive"; (2) VAS is "making use of the mark in commerce"; (3) VAS's use

"began after the mark became famous"; and (4) VAS's use of the Versace marks is "likely to

cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d

628, 634 (9th Cir. 2008).

### i. Versace's Marks are Famous, and VAS Began Using those Marks in Commerce After They Became Famous

"A mark is famous if it is widely recognized by the general consuming public of the

United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C.

§ 1125(c)(2)(A). In assessing whether a mark is famous, courts typically consider the following

non-exhaustive factors:

>     (i)     The duration, extent, and geographic reach of advertising
>             and publicity of the mark, whether advertised or publicized
>             by the owner or third parties.
>     (ii)    The amount, volume, and geographic extent of sales of
>             goods or services offered under the mark.
>     (iii)   The extent of actual recognition of the mark.
>     (iv)    Whether the mark was registered under the Act of March 3,
>             1881, or the Act of February 20, 1905, or on the principal
>             register.

---

[5] That excerpt states "c) The LICENSOR shall furnish the AGENT with any available artwork material and necessary documentation with regard to the Property free of charge. Should the material not suffice for the implementation of License Agreement under negotiation or existing License Agreements, the LICENSOR agrees to use its best efforts to provide such material as soon as possible, it being understood that the AGENT is not prepared to develop such material or have it developed on behalf of the LICENSOR." Defs. Opp. at 25.

[6] Because VAS is either directly or vicariously liable, the Court does not need to decide whether VAS may be liable under a contributory theory of infringement.

*Id.* To support that its marks are famous, Versace sets forth the same evidence that it offers to show that its marks are strong. That evidence is undisputed, and establishes that Versace has used its marks for decades, engages in extensive advertising and promotional efforts in furtherance of the Versace brand, is widely recognized by consumers for the Versace name, and enjoys a high volume of domestic sales. *See* Conti Decl. ¶¶ 16-20, 39-42; Briers Decl. ¶¶ 72-80. Even Papadas has testified, as VAS's corporate representative, that "the Versace name was made famous in the fashion industry by Gianni Versace SpA." Papadas Depo. at 534:21–535:21.

VAS does not expressly rebut Versace's evidence that it began using Versace's marks after those marks became famous. *See* Defs. Opp. at 31-34; Pls. Reply at 16. Versace's evidence shows that: (1) Versace has used its marks since 1978; (2) those marks have gained national recognition; and (3) the Versace marks' fame persists to the present day. *See* Pls. Mot. at 27-28; Conti Decl. ¶¶ 4, 16-20, 39-42. VAS addresses only the fourth and final element of the dilution analysis: whether its use of the Versace name is likely to cause dilution by blurring or tarnishment. *See id.* The court now turns to that question.

### ii. VAS's Use of Versace's Marks Causes Blurring and Tarnishment

"Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 n.7 (9th Cir. 1998). To assess dilution by way of blurring, courts look to (1) the "degree of similarity" between the marks; (2) the "degree of distinctiveness" of the famous mark; (3) "the extent to which the owner of the famous mark is engaging in substantially exclusively use of the mark"; (4) the famous mark's degree of recognition; (5) whether the user of the mark intended to create an association with the famous mark; and (6) any "actual association" between the two marks. 15 U.S.C. § 1125(c)(2)(B). These factors are "strikingly similar" to the likelihood of confusion test invoked under the infringement analysis. *See Airway Int'l Ltd. v. Vans, Inc.*, 2013 WL 3786309, *7 n.1 (N.D. Cal. July 17, 2013) (applying the likelihood of confusion analysis to assess dilution by blurring).

As to the first, second, and fourth factors, the undisputed evidence favors Versace. That

evidence, discussed with respect to infringement, shows that the VAS and Versace marks are similar, and VAS has attempted to evoke the Versace design and baroque aesthetic. *See Nike, Inc. v. Nikepal Int'l, Inc.*, No. 2:05-CV-1468-GEB-JFM, 2007 WL 2782030, at *6 (E.D. Cal. Sept. 18, 2007) (finding that the marks NIKEPAL and Nike were "nearly identical" based on their literal and stylistic similarities). Though VAS argues that the marks are not sufficiently alike, "the plain language of 15 U.S.C. § 1125(c) does not require that a plaintiff establish that the junior mark is identical, nearly identical or substantially similar to the senior mark in order to obtain injunctive relief." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1172 (9th Cir. 2011). Instead, Versace needs to show only that the VAS mark is "likely to impair the distinctiveness" of the Versace marks. There is no genuine dispute of fact on that point, given the marks' similarities and the Versace marks' distinctiveness.

The remaining blurring factors favor Versace. With respect to the third factor, Versace has acted defensively to protect its marks, and tightly controls its diffusion lines. *See* Defs. Opp. at 32-33; Pls. Reply at 17; Briers Decl. ¶¶ 7-8 (discussing Versace's precautionary infringement lawsuits). VAS does not dispute that there is only one other "Versace" mark owned by a third party: a gelato and frozen dessert company. *See* Briers Decl., Ex. 20 ("McShane Depo.") at 177:12-178:20.[7] There is no question that Versace is not a frozen dessert purveyor. *See Nike, Inc.*, 2007 WL 2782030, at *7 (holding that "a limited amount of third party use is insufficient to defeat a showing of substantially exclusive use"); *cf. Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 878 (9th Cir. 1999) (finding that the mark "Avery Dennison" was "not eligible for the dilution cause of action" where the words "Avery" and "Dennison" were "commonly used as trademarks. . . by other parties"). As to the fifth factor, remarks from purchasers and Versace's expert report show that consumers actually associate the VAS and Versace marks. Furthermore, as discussed in the infringement analysis, there is evidence that VAS used the Versace marks despite being aware of those marks and that its licensees were likely infringing them.

Dilution by tarnishment, in contrast, "aris[es] from the similarity between a mark or trade

---

[7] VAS's affirmative defense based on the Conciliation Agreement is discussed in further detail below. *See* Defs. Opp. at 33.

name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). "Tarnishment occurs when a famous mark is improperly associated with an inferior or offensive product or service." *Panavision Int'l, L.P.*, 141 F.3d at 1326 n.7. As to whether the marks are associated, the evidence underlying the Court's infringement analysis applies. VAS does not dispute that the marks are associated for purposes of tarnishment.

Versace contends that, as a factual matter, VAS's products are inferior to Versace's. To support that assertion, Versace relies on expert testimony and consumer complaints detailing the poor quality of VAS products and workmanship. *See* Briers Decl. ¶¶ 158-164, 226-264, Ex. 30 ("Serdari Rep.") at 21 n.61, 28; Briers Decl., Ex. 12 ("Bergman Depo.") at 190:11-19, 196:13-197:3. VAS specifically denies just one of these consumer complaints (pertaining to a moldy product); otherwise, VAS does not address Versace's evidence. VAS does broadly assert that Versace fails to "offer any comprehensive evidence as to the quality of the products VAS licensed." Defs. Opp. at 34. VAS is simply incorrect, and given the substantial evidence Versace sets forth, it is VAS that bears the burden to come forward with evidence that its products are not inferior. VAS has not done so.

Separately, VAS suggests that it may have licensed higher quality products because Versace has a "1 percent return rate from consumers." *See id.* But VAS fails to explain the relationship between Versace's return rate and VAS's product quality. VAS also does not present evidence of, or even assert, its own rate of product return. It is accordingly unclear why this fact is material, even if it is disputed. Summary judgment is appropriate on Versace's tarnishment theory.[8]

### C.   VAS's Counterclaims and Defenses

In addition to moving for summary judgment on its own claims, Versace also seeks summary judgment on: (1) VAS's counterclaims for breach of contract and declaratory judgment; and (2) VAS's affirmative defenses of waiver, collateral estoppel, laches, and fair use. *See* Pls.

---

[8] Here too, VAS asserts that it cannot be liable under direct, vicarious, or contributory dilution theories. *See* Defs. Opp. at 35-36. With the exception of contributory dilution, VAS does not present case law that supports that assertion. The Court addresses these arguments in its discussion of VAS's motion for partial summary judgment.

Mot. at 30 n.14, Dkt. No. 139 ("Answer") at 11 ¶¶ 6-29.[9] There is no dispute that VAS's counterclaims and its defenses of waiver and estoppel are predicated on VAS's interpretation of the Conciliation Agreement. The Agreement settled an Italian infringement lawsuit brought by Versace against VAS, and was entered by the Court of Milan in July 2012. *See* Pls. Mot. at 4; Defs. Opp. at 26.

The parties' dispute turns on the meaning and interpretation of the Conciliation Agreement. Versace argues that the Agreement prohibits VAS from using the Versace name for any purpose except where the law requires VAS to use its full name. *See, e.g.*, Pls. Mot. at 4. Versace presents a certified translation in support of its interpretation. *See* Dkt. No. 223 ("Pennekamp Decl."), Ex. H. at 2 ("Mr. Papadas. . . agrees to forego registration of the distinctive sign [VAS] . . . although he retains the right/duty to indicate the full name of the manufacturer and/or importer of the products in cases required by law including for purposes of the labeling, but the current font being used must be modified. . . ."). Versace acknowledges that, under the Agreement, it has waived "all rights and/or claims" against VAS in the event that VAS complies with the Agreement's terms. And yet, VAS admitted in this litigation that no U.S. law requires VAS to place its full name on products involved in the present lawsuit. *See* Briers Decl., Ex. 37 ("VAS states that it does not at this time contend, and does not need to contend, in this action that the applicable law requires the full company name to be placed on the subject labels that are involved in the present lawsuit."). Versace highlights that multiple Italian courts have agreed with its interpretation of the Agreement (which is written in Italian). Versace argues that principles of comity merit deference to those decisions, regardless of either party's English translation of the Agreement.

In response, VAS contends that the Agreement allows VAS to use the "Versace" marks for purposes of labeling irrespective of whether the law requires it. *See* Answer ¶¶ 8, 28(a); Defs. Mot. at 10. VAS sets forth its own corresponding translation of the Agreement. *See* Dkt. No.

---

[9] VAS does not respond to Versace's motion for summary judgment on VAS's laches defense. *See* Pls. Mot. at 37-38; Pls. Reply at 21 n.11. The Court agrees with the arguments set forth in Versace's motion, Pls. Mot. at 36-37, and concludes that there is no genuine dispute of fact underlying that defense.

139-1 at 1 ("It is therefore understood that [Papadas] has the right and the duty to indicate the complete company name of the producer and/or importer of the products in those cases stated by the law, also for the products labeling by modifying the eventual font used.").

The Court defers to the decisions of numerous Italian courts holding, respectively, that Versace's interpretation of the Agreement is correct and that VAS's reading is incorrect. *See* Pennekamp Decl., Ex. L at 3 ("Such use of the petitioner's name, whose identifying heart is clearly represented by the surname VERSACE, clearly exceeds the requirements to comply with European Union law and consumer protection law, the purpose of which is to allow the manufacturer to be identified, and represents a form of use strictly as a distinctive sign, in violation of the settlement agreements invoked."), Ex. M at 2 ("[T]he [settlement] agreement allows [Papadas] only to use the name Versace if it is a part/component of the company name of the manufacturer or importer and, therefore, always in the context of the entire company name, in cases where the indication of the company name is obligatory, including on labels, but with the requirement of possible modification of the font used."), Ex. N at 6 ("As to 'in cases where required by law', a correct interpretation of the clause in the context of the settlement agreement . . . . was intended by the parties to be strictly limited to cases where the use of the manufacturer, importer or exporter company's name is required by law. . . ."). Notably—in the most recent of these decisions—the Court of Appeal of Milan affirmed the lower court's rejection of VAS's interpretation of the Agreement. *See* Pennekamp Decl., Ex. R; *Papadas v. Gianni Versace, S.p.A.*, No. 1680/2016 at 11-12 (Ct. of App. of Milan Dec. 18, 2017). In reaching that holding, the appellate court reasoned,

> From the literal tenor of the [settlement] agreement, it is clear that its primary goal is to affirm that Papadas and its companies do not have the right to use the national and international fame of the 'Versace' brand in order to promote their own products. Gianni Versace Spa granting the use of its company name including the word 'Versace' only when the law requires it to identify the producer/importer is, as noted, an exception, which involves a strict and restrictive interpretation.

*Id.*

Principles of comity warrant deference to these judgments. *See Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895) (holding that matters should not be retried absent a showing of prejudice,

fraud, or some other extenuating circumstance "where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction"); *accord Asvesta v. Petroutsas*, 580 F.3d 1000, 1010, 1013 (9th Cir. 2009) (observing that "*Hilton*'s admonition to avoid a reexamination of the merits of a foreign court's judgment seems most relevant" "when a foreign court has entered a judgment after applying its own substantive and procedural laws"). These principles apply under the circumstances, as VAS does not specifically allege any particular procedural or substantive infirmities underlie the above cited decisions. *See id.*; *cf. Asvesta*, 580 F.3d at 1010 (holding that the district court erred in extending comity to a Greek court's analysis because that court misapplied principles of the Hague convention and made "unreasonable factual findings"). Rather, VAS argues that comity is inapplicable to its waiver defense because "no Italian court has addressed the issue of waiver under federal or California law." That argument fails. The Italian courts have repeatedly rejected the substantive position underlying VAS's waiver defense: that VAS can use its full name in labeling irrespective of whether the law requires it. *See* Pls. Reply at 19.

With respect to its collateral estoppel defense, VAS contends that comity principles are inapplicable because: (1) VAS is appealing the Milan appellate court's December 2017 decision; (2) the Italian courts' interpretations are erroneous because they nullify the words "also for the purpose of labeling" in the Agreement; and (3) specific principles of Italian trademark law influenced those courts' interpretations of the agreement. *See* Defs. Opp. at 28. Beginning with VAS's second point, comity principles apply despite an error "in law or in fact" in the absence of a procedural infirmity. *See Hilton*, 159 U.S. at 202-03; *Asvesta*, 580 F.3d at 1010. Here, VAS has not alleged any such procedural error. VAS's third point is also unpersuasive, as comity extends irrespective of whether there is a "true conflict" between the applicable domestic and foreign laws. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 603, 607 (9th Cir. 2014) ("Even when foreign practices may differ from American ones, we will respect those differences so long as the variance does not violate strongly-held state or federal public policy."). As to VAS's first point, VAS lacks case law suggesting that the possibility of further adjudication renders comity principles inapplicable. The Ninth Circuit and other appellate courts have deferred to foreign courts where there is a final

United States District Court
Northern District of California

judgment on the merits by at least one court. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994) (concluding that comity principles warranted deference to German proceedings "once a judgment on the merits is reached" because "failure to defer" would "raise the prospect of 'dueling courts,' conflicting judgments, and attempts to enforce conflicting judgments"); *see also Mujica*, 771 F.3d at 614 (finding that the adequacy of an alternative foreign forum merited abstention by American courts under comity principles). Thus, the Court concludes that deference is warranted, and that summary judgment against VAS is appropriate on those counterclaims that are contingent on VAS's reading of the Agreement.[10]

Apart from its interpretation of the Conciliation Agreement, VAS asserts that its fair use defense survives summary judgment. To invoke a "fair use" defense, VAS must show that (1) it is not using the Versace name "as a trademark"; (2) VAS's use is "descriptive of" VAS's goods; and (3) VAS is using the Versace marks in good faith. *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 935 (9th Cir. 2017). In addition, "the degree of customer confusion [is] a factor in evaluating fair use." *Id.* (internal quotations omitted).

VAS argues that it did not use the Versace name as a trademark because VAS acted as a licensor in distributing the infringing products. *See* Defs. Opp. at 29. VAS asserts that it "did not sell any products or advertise to consumers" or induce others to use the Versace name as a mark. *See id.* at 29-30. VAS also contends that it can establish fair use because, in addition to not using or inducing use of the mark, VAS is in privity with Alessandro Versace, who sold his ownership interest to Papadas. *See id.* (citing *Dolby v. Robertson*, 654 F. Supp. 815, 820 (N.D. Cal. 1986)). Finally, VAS claims that it does not need to show that it used the Versace marks in good faith because "Versace" is a name. VAS contends that if it must show good faith, it can do so based on its interpretation of the Conciliation Agreement. *Id.* at 30-31.

Once more, VAS's attempt to rely on its licensor status fails. VAS does not present any authority that licensing the use of an infringing mark is not itself "use" of a trademark for purposes of this defense. The undisputed evidence establishes that VAS, through and in coordination with

---

[10] Because the Court defers to the Italian courts' interpretation of the Conciliation Agreement, it does not need to independently interpret the agreement. *See* Pls. Reply at 20.

its agent Valero, encouraged licensees to display the Versace name prominently on their products. *See* Briers Decl. ¶¶ 46-47 (describing how Alessandro Versace, in creating VAS, "utiliz[ed] the legendary brand awareness of the name Versace"), ¶¶ 49-53, ¶¶ 55-56 (detailing efforts by Valero to encourage licensees to use and display "Versace" and evoke Versace's aesthetic); Briers Decl., Exs. 10 ("Azrak Dep."), 11 ("Babayan Dep."), 17, 25 ("Valero Dep."). VAS also independently used the Versace marks as part of its branding and promotional efforts. *See* Briers Decl., Exs. 116, 117 (screenshots of the VAS website). That evidence is sufficient to show that VAS attempted to use the Versace term "as a symbol to attract public attention." *Marketquest Grp.*, 862 F.3d at 936 (presenting the elements to establish use as a mark); *Fortune Dynamic, Inc.*, 618 F.3d at 1040. Even crediting VAS's claim that it "never induced anyone to use the word 'Versace,' standing alone, as a mark," Defs. Opp. at 30, VAS fails to present evidence that it took "precautionary measures" to limit the association of the "Versace" term *within* VAS's mark. *Cf. Fortune Dynamic, Inc.*, 618 F.3d at 1040 (defining precautionary measures to include "labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense"). On the question of "use," summary judgment in Versace's favor is appropriate.

As to intent, that inquiry "involves the same issue as the intent factor in the likelihood of confusion analysis: whether defendant in adopting its mark intended to capitalize on plaintiff's good will." *Fortune Dynamic, Inc.*, 618 F.3d at 1043 (quotation omitted). VAS does not present any binding authority supporting its claim that it does not need to show good faith because "Versace" is a surname. *See* Defs. Opp. at 30-31. Rather, the cases that VAS cites stand for the independent proposition that the alleged infringer must use the senior mark in a descriptive sense. *See, e.g.*, *Marketquest Grp.*, 862 F.3d at 936 ("To prevail on fair use, a defendant must show that it used the mark in its primary, descriptive sense.") (quotation omitted). But that element exists apart from the question of intent. *See id.* at 937 ("A defendant asserting fair use must also show that it used the mark in good faith.").

Turning to good faith, VAS contends that it "reasonably believed that Versace waived any confusion that resulted from VAS's compliance with the portion of the Conciliation Agreement that allowed VAS to use its company name for the purpose of labeling." Defs. Opp. at 31. VAS's

representation of good faith reliance on the Agreement fails in view of the numerous Italian court decisions rejecting its interpretation. Furthermore, these decisions were sufficient to put VAS on notice of its infringing use. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, No. CV-F-86-183 REC, 1989 WL 159628, at *27 (E.D. Cal. June 19, 1989) ("When the senior user's trademark is famous in the marketplace and where the junior user was aware of the trademark and of its fame, a presumption of bad faith arises from the choice of the same name because it is inferrable that the junior user adopted the mark for the purpose of profiting from the aura of goodwill surrounding the senior user's mark.") (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157 (9th Cir. 1963)). There is also undisputed evidence that Versace sent VAS multiple cease-and-desist letters beginning in 2012, at least suggesting that VAS may have been infringing Versace's marks. *See* Dkt. No. 240 ("Simone Decl."), Ex. A at 2; Luedtke Decl., Ex. 161 at 2. This undisputed evidence precludes VAS's fair use defense.[11]

### III.  VAS'S MOTION FOR PARTIAL SUMMARY JUDGMENT

VAS moves for partial summary judgment on five grounds. First, VAS argues summary judgment is proper on Versace's "infringement claims to the extent they seek a monetary recovery." Defs. Mot. at 10-14.[12] According to VAS, Versace "did not sustain any damages, and neither VAS nor its licensees obtained any revenue as a result of any actual confusion." *Id.* Second, VAS seeks summary judgment on all of Versace's federal claims "to the extent that they seek damages or profits that arose before the filing of this action." *Id.* at 14-16. Third, VAS requests summary judgment on Versace's state law claims, contending that VAS did not sell infringing products in California. Fourth, VAS argues that the Court should grant summary judgment on Versace's dilution claims because VAS is not liable under direct, vicarious, or contributory dilution theories. *Id.* at 19-22. Fifth, VAS argues that the Court should dismiss all of Versace USA, Inc.'s claim because Versace USA, Inc. does not own any trademark rights. *Id.* at

---

[11] Versace contends that an injunction should issue if the Court finds that VAS has infringed or diluted its marks. Part IV of this order addresses the propriety of injunctive relief.

[12] At oral argument, Versace clarified that it does not seek actual damages in this case, but rather seeks to recover infringer's profits as an equitable remedy, and attorneys' fees. *See* Hearing Transcript at 25:11-18; Pls. Mot. at 40 n.21; 15 U.S.C. § 1117(a).

23.

### i. Versace's Infringer's Profits Claim

Whether Versace lost sales and revenue as a result of VAS's infringing activity presents a question of fact. A trademark plaintiff seeking to recover an infringer's profits must show that the defendant gained "gross revenue from the infringement." *Fifty-Six Hope Rd. Music, Ltd.*, 778 F.3d at 1076. "Then the burden shifts to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits." *Id.*; *accord Stop Staring A Designs v. Tatyana, LLC*, 625 F. App'x 328, 330 (9th Cir. 2015) ("To obtain damages for lost profits or unjust enrichment, Stop Staring had to demonstrate Bettie Page's allegedly infringing trade dress caused a rise in Bettie Page's sales or a decline in Stop Staring's sales.").[13]

Summary judgment is inappropriate as to Versace's ability to obtain infringer's profits. There are disputed material facts regarding whether VAS's profits increased as a result of its thirty-one licensing agreements for the domestic use, manufacture, distribution, and sale of products bearing the VAS name. *See, e.g.*, Briers Decl. ¶¶ 59-65; Dkt. No. 218-1 ("Papadas Decl.") ¶¶ 4, 7-9 (admitting that VAS received approximately $416,000 in sales of its licensed products). Under the terms of these agreements, licensees were required to pay royalties for the right to use the VAS mark on their products. Briers Decl. ¶ 64, Ex. 40 at § 4(u). Licensees paid VAS more than three million dollars in advances and upfront royalty payments as well as ongoing royalty payments. *See* Briers Decl., Ex. 164; Dkt. No. 218-2, Ex. I at 3.

Contrary to VAS's claim, VAS's status as a licensor does not allow it to avoid potential payment of infringer's profits. *See Fifty-Six Hope Road Music*, 778 F.3d at 1076 (affirming an award of profits where the defendant licensed the infringing products to third parties); *Monster*

---

[13] Though VAS cites this case and others for the proposition that a showing of actual confusion is required to recover infringer's profits, *see* Defs. Mot. at 11, these cases do not support that assertion. Likewise, the district court cases VAS cites do not support that Versace must prove, at this stage, post-sale, point-of-sale, and initial interest confusion; these cases just define those concepts. *See* Defs. Mot. at 12-14. But even if VAS is correct as a matter of law, there is sufficient factual evidence to establish a triable issue as to whether confusion between the VAS and Versace brands allowed VAS to generate revenue it otherwise would not have.

*Cable Prod., Inc. v. Discovery Commc'ns, Inc.*, No. C 03-03250 WHA, 2004 WL 2445348, at \*2 (N.D. Cal. Nov. 1, 2004) (holding that a jury could award accounting of profits, treble damages, and attorney's fees where the defendant willfully licensed the infringing products). The Court also agrees with Versace that, at this stage, VAS has not shown that its expenses should be deducted from gross revenue. *See* Pls. Opp. at 5.

### ii. Versace's Ability to Recover Infringer's Profits Prior to Filing of this Action

VAS's second ground for summary judgment is similarly inappropriate. VAS contends that Versace cannot recover money for VAS's pre-litigation conduct because Versace did not correctly mark its products as registered under 15 U.S.C. Section 1111. Defs. Mot. at 14-17. According to VAS, it therefore lacked notice of the Versace marks prior to the filing of this lawsuit on June 27, 2016. *See id.* 15 U.S.C. Section 1111, in turn, reads:

> Notwithstanding the provisions of section 1072 of this title, a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words 'Registered in U.S. Patent and Trademark Office' or 'Reg. U.S. Pat. & Tm. Off.' or the letter R enclosed within a circle, thus ®; and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had *actual notice of the registration.*

(emphasis added).[14]

Even if VAS lacked statutory notice, VAS had actual notice of the Versace marks prior to this lawsuit. *See Mophie, Inc. v. Shah*, No. SACV1301321DMGJEMX, 2014 WL 10988347, at \*22 (C.D. Cal. Nov. 12, 2014) ("The existence of actual notice is a question of fact."); *Kransco Mfg., Inc. v. Hayes Specialties Corp.*, 77 F.3d 503 (Fed. Cir. 1996) ("Having failed to provide the notice specified by Section 1111, Kransco may not recover profits or damages unless Hayes had *actual* notice of the '095 registration.") (emphasis in original). For instance, Versace's Italian counsel sent VAS a cease-and-desist letter in 2012, long before the filing of this lawsuit. *See* Simone Decl., Ex. A at 2. Versace's counsel also sent letters to VAS in 2015 regarding VAS's alleged infringing activity in the United States. Luedtke Decl., Ex. 161 at 2. These letters show,

---

[14] Versace does not argue that it provided statutory notice. *See* Pls. Opp. at 10 n.6.

at this stage, that VAS was on notice regarding the marks as early as 2012.

A reasonable factfinder could likewise find that VAS had actual notice of its infringing activity based on the multiple adverse judgments of Italian courts. *See* Pls. Mot. at 5. As discussed, those courts unanimously rejected VAS's reading of the Conciliation Agreement. It is undisputed that a trial court in Milan issued the first such decision in July 2013. *See id.*; Pennekamp Decl., Ex. L. Evidence of actual notice also comes in the form of VAS's undisputed inclusion of, and communications regarding, an indemnity provision in its licensing agreements whereby VAS agreed to indemnify licensees if Versace initiated infringement proceedings against them. *See, e.g.*, Briers Decl. Exs. 40, 105 (acknowledging licensees' fears of being sued for infringing the Versace marks).

### iii.    Versace's State Law Claims

Summary judgment is not warranted on VAS's state law claims. VAS argues that there is no dispute that: (1) Versace did not sustain any damage as a result of confusion from sales of VAS products in California, and (2) neither VAS nor its licensees generated any revenue from product sales in California. *See* Defs. Mot. at 17. VAS is incorrect. To recover under its state law theories, Versace need only show that it was harmed "by wrongful conduct occurring in California." *Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 557 (1999). Versace accordingly presents evidence of California-based product sales and consumer complaints. *See* Luedtke Decl. ¶ 6, Ex. 163; Briers Decl. at ¶¶ 262-264. That evidence is sufficient for Versace's state law claims to survive at this stage.

### iv.    Versace's Dilution Claims

Here too, VAS's attempt to rely on its status as a licensor fails. VAS argues, without authority, that it cannot be liable for dilution because it simply licensed others to use its mark. In relevant part, 15 U.S.C. Section 1125(c) provides that liability attaches where one "commences use of a mark or trade name in commerce," with exceptions that are not applicable here. "Commercial use" within the meaning of the statute need not involve physical attachment of the disputed marks to a product. *See Panavision Int'l*, 141 F.3d at 1325. For instance, a commercial use can be an "attempt to sell the trademarks themselves." *Id.* The Court concludes that

Versace's evidence of VAS's licensing agreements, branding and promotional efforts, web presence, and opening of brick and mortar locations is sufficient at the summary judgment stage to show "use" for purposes of liability. *See Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1096 (N.D. Cal. 2014) (holding that use of famous mark on a website sufficient to establish a claim for dilution by blurring). To the extent that VAS claims it can escape dilution liability based on the Conciliation Agreement, that argument fails for the reasons discussed above. *See* Defs. Mot. 20.

### v. Versace's USA, Inc.'s Claims

Finally, VAS requests that the Court dismiss Versace USA, Inc.'s claims against it. VAS contends that Versace USA, Inc. "does not own any trademark asserted in this case," and therefore lacks standing. Defs. Mot. at 32. VAS is correct that only a mark's owner has standing under federal and state law to bring claims for trademark dilution and infringement. *Brown v. Green*, No. C 12-2113 DMR, 2012 WL 4120379, at *4 (N.D. Cal. Sept. 18, 2012) (noting that the federal dilution statute, Section 1125(c)(1), "restricts standing for the cause of action to the mark's 'owner,'" as does California law for an entity asserting "common law trademark infringement"); *accord Rearden LLC*, 683 F.3d at 1203 ("It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.") (quotations omitted).

In its opposition, Versace does not rebut that Versace USA, Inc. lacks an ownership interest in the Versace marks at issue. As VAS points out, the marks' owner, Gianni Versace, S.p.A., is a named party that is "present to pursue its rights." Defs. Reply at 15. In its briefing, Versace addresses only Versace USA, Inc.'s standing to bring a Section 1125(a) unfair competition claim; Versace does not reference Versace USA, Inc.'s ability to raise the other asserted claims. *See Brown*, 2012 WL 4120379, at *3 (establishing that a "user" of a mark can pursue a Section 1125(a) claim); Dkt. No. 240-12 ("Bosio Decl.") ¶ 7 (stating that Versace USA, Inc. is "an authorized distributor and reseller of Versace products in the United States."). At oral argument, Versace acknowledged that it did not defend Versace USA, Inc.'s standing to bring claims apart from its Section 1125(a) claim. *See* Hearing Transcript at 28:15-29:18. The Court

1 | accordingly finds that Versace USA, Inc. cannot assert claims other than its claim for unfair

2 | competition, and grants summary judgment in favor of VAS on all but that claim.[15]

## IV.   INJUNCTIVE RELIEF

Versace requests that the Court permanently enjoin VAS from using the Versace marks if it concludes that VAS is liable for the claims asserted in the FAC. *See* Pls. Mot. at 38. For a permanent injunction to issue, Versace must show that (1) it has suffered an irreparable injury; (2) monetary damages are inadequate; (3) the balance of hardships merits an equitable remedy; and (4) the public interest will not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court can grant an injunction in its equitable discretion, and examines the totality of the circumstances in deciding to do so. *See id.* VAS disputes the first three permanent injunction elements. *See* Defs. Opp. at 37-39; *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014).

The Court finds in its discretion that a permanent injunction is warranted. Though a strong case of trademark infringement is not alone sufficient to establish irreparable harm, Versace shows that it will suffer irreparable "loss of business, reputation, and goodwill" if VAS continues its infringing activity. *See Herb Reed Enterprises, LLC v. Fla. Entm't, Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (quoting *Rodeo Collection, Ltd. v. W. Seventh,* 812 F.2d 1215, 1220 (9th Cir.1987)); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 F. App'x 669, 672 (9th Cir. 2015) ("Loss of control over business reputation and damage to goodwill are cognizable irreparable harms in the trademark infringement context."); *Grupo Salinas Inc. v. J.R. Salinas Wheels & Tires Inc.*, 2016 WL 9277320, at *6-7 (C.D. Cal. Dec. 22, 2016). As discussed at length, Versace presents numerous instances of confusion by consumers, retailers, and journalists, involving VAS products that harmed the Versace brand. *See Grupo Salinas Inc.*, 2016 WL 9277320, at *6-7 (finding a "significant risk of irreparable harm" based on logs detailing vendor and customer confusion, the defendant's failure to correct that confusion, and negative Yelp

---

[15] VAS contends that Versace USA, Inc. cannot pursue its unfair competition claim because it cannot show that it sustained damages. VAS fails to set forth facts or authority to support that proposition. *See* Defs. Reply at 15. Because it is VAS's burden to do so, the Court declines to grant summary judgment as to Versace USA, Inc.'s unfair competition claim.

reviews). VAS not only failed to redress this confusion, but encouraged it by highlighting to potential licensees that they could use the Versace name as part of the VAS mark.

The consequent loss of goodwill incurred by Versace renders money damages inadequate. This is especially so considering that VAS has continued its infringing activity despite receiving multiple adverse judgments from foreign courts. *See Neurovision Med. Prod., Inc. v. NuVasive, Inc.*, No. CV096988DSFJEMX, 2014 WL 12554861, at *1-2 (C.D. Cal. Aug. 5, 2014) (granting the plaintiff's motion for a permanent injunction where the court found that the plaintiff's only remedy for continued infringing activity would be to sue the defendant repeatedly); *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL FFMX, 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) (finding that the plaintiff's "injury will not be fully remedied by a monetary award because its injury is hard to compute and Defendants will continue their infringing activity if not enjoined by the Court").

Contrary to VAS's suggestion, there is no factual dispute that underlies "whether the equities favor Plaintiff." Defs. Opp. at 38. VAS again relies for that proposition on its "good faith" interpretation of the Conciliation Agreement. *See id.* For the reasons discussed, VAS's good faith claim is not credible. VAS also fails to identify any hardship *it* would suffer as a result of a permanent injunction. *See* Defs. Opp. at 38-39; *Deckers Outdoor Corp.*, 2014 WL 4679001, at *13 ("There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law."). In view of the substantial and uncontroverted evidence of harm to Versace, the equities clearly weigh in Versace's favor. Versace argues, and VAS does not disagree, that the public interest favors entry of an injunction.

The Court accordingly finds that a permanent injunction of some sort is warranted based on the above discussed factors. Yet, the Court is required to consider all circumstances in determining whether the injunction issued constitutes "fair and equitable relief." *See La Quinta Worldwide LLC*, 762 F.3d at 880. The Court therefore intends to discuss with the parties Versace's proposed order and permanent injunction, particularly Versace's inclusion of provisions requiring VAS and third party licensees to destroy and provide "proof of destruction of all remaining inventory of all goods or services subject" to the Court's order and permanent

injunction. Dkt. No. 221-1 at 6.

## V.  CONCLUSION

For these reasons, the Court **GRANTS** Versace's motion, and **GRANTS IN PART** and **DENIES IN PART** VAS's motion. The Court **SETS** a case management conference for August 7, 2018 at 2:00 p.m. to discuss: (1) the particular provisions to be included in a permanent injunction; and (2) a schedule for a bench trial regarding the amount of money appropriately awarded in the form of infringer's profits. A joint case management statement, including a proposed schedule, is due on July 31, 2018.

**IT IS SO ORDERED.**

Dated:  7/24/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge