ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
AARON D. PENNEKAMP (State Bar No. 290550)
aaron.pennekamp@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

ZACHARY M. BRIERS (State Bar No. 287984)
zachary.briers@mto.com
WILLIAM LARSEN (State Bar No. 314091)
william.larsen@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Gianni Versace, S.p.A. and
Versace USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| GIANNI VERSACE, S.P.A. and VERSACE USA, Inc. | Case No. 4:16-cv-03617-HSG (LB) |
| Plaintiffs, | **PLAINTIFFS' OPENING BRIEF REGARDING PERMANENT INJUNCTION** |
| vs. | |
| VERSACE 19.69 ABBIGLIAMENTO SPORTIVO S.R.L., THEOFANIS PAPADAS, V1969 VERSACE SMO LLC, V1969 VERSACE HG LLC, and V1969 USA LLC. | Judge:    Hon. Haywood S. Gilliam, Jr.<br>Crtrm.:   6 |
| Defendants. | |

1

## TABLE OF CONTENTS

2
**Page**

3
I.    INTRODUCTION ...................................................................................................1

4
II.   ARGUMENT ........................................................................................................4

5

6
A.    This Court Has Made No Findings Concerning The Terms That Defendants Insist Be Excluded From The Definition Of "Infringing Marks." ............................4

7

8
B.    There Is No Basis For Defendants' Demand To Limit The Prohibition On Uses Of The Infringing Marks To Only Those Uses "Likely To Cause Confusion." ...............................................................................................6

9

10
C.    Defendants Must Be Enjoined From Using The Infringing Marks On Any United States Website. .........................................................................13

11
D.    Defendants Should Provide Notice Of The Injunction To Their Agents, Licensees, And Retailers. ....................................................................16

12

13
E.    Defendants Attempt To Create Confusion By Referring To And Mischaracterizing The Conciliation Agreement In This Injunction. .....................17

14
III.  CONCLUSION ...................................................................................................20

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPENING BRIEF REGARDING PERMANENT INJUNCTION

# <u>TABLE OF AUTHORITIES</u>

**Page**

**FEDERAL CASES**

*Adobe Sys., Inc. v. Tilley*,
  2010 WL 309249 (N.D. Cal. Jan. 19, 2010) ...........................................................7

*Am. Auto. Assoc., Inc. v. AAA Auto Body Repair, Inc.*,
  2015 WL 1089746 (N.D. Cal. Feb. 27, 2015) ..........................................................6

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ..............................................................................5, 6

*Bellevue Manor Assocs. v. United States*,
  165 F.3d 1249 (9th Cir. 1999) ...............................................................................19

*Bird Gard LLC v. SC Elite, Ltd.*,
  2013 WL 4828723 (E.D. Cal. Sept. 6, 2013) ..........................................................6

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  2013 WL 140039 (N.D. Cal. Jan. 10, 2013) ..........................................................17

*Chanel, Inc. v. Charles*,
  2016 WL 4491871 (N.D. Cal. June 9, 2016) ...........................................................6

*Coach, Inc. v. Daisy Accessories, Inc.*,
  2013 WL 12128819 (C.D. Cal. Mar. 7, 2013) .........................................................6

*Corning Inc. v. PicVue Elecs., Ltd.*,
  365 F.3d 156 (2d Cir. 2004) ..................................................................................19

*Disney Enters., Inc. v. VidAngel Inc.*,
  2017 WL 6820014 (C.D. Cal. Aug. 2, 2017) .........................................................11

*FTC v. Colgate-Palmolive Co.*,
  380 U.S. 374 (1965) ..............................................................................................11

*Harley-Davidson, Inc. v. Morris*,
  19 F.3d 142 (3d Cir. 1994) ......................................................................................9

*Indep. Training & Apprenticeship Prog. v. Cal. Dept. of Indus. Relations*,
  730 F.3d 1024 (9th Cir. 2013) .............................................................................5, 6

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009) ..............................................................................9, 10

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*,
  549 F.2d 368 (5th Cir. 1977) .................................................................................10

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page

3   *Language Line, LLC v. Advanced Language Line, LLC*,
4       2012 WL 1918873 (N.D. Cal. May 25, 2012) ............................................................6

5   *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*,
        2018 WL 2328471 (S.D. Cal. May 23, 2018) ..........................................................14

6   *MGM Studios, Inc. v. Grokster, Inc.*,
7       518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...................................................................16

8   *PepsiCo, Inc. v. Cal. Sec. Cans*,
9       238 F. Supp. 2d 1172 (C.D. Cal. 2002) .....................................................................7

10  *Phillip Morris USA Inc. v. Shalabi*,
        352 F. Supp. 2d 1067 (C.D. Cal. 2004) ...................................................................15

11  *Playboy Enters., Inc. v. Calvin Designer Label*,
12      985 F. Supp. 1218 (N.D. Cal. 1997) ..........................................................................7

13  *Regal Knitwear Co. v. N.L.R.B.*,
        324 U.S. 9 (1945) .....................................................................................................11

14
    *Saks & Co. v. Hill*,
15      843 F. Supp. 620 (S.D. Cal. Dec. 27, 1993) ..............................................................7

16  *Scandia Down Corp. v. Euroquilt, Inc.*,
17      772 F.2d 1423 (7th Cir. 1985) ..................................................................................11

18  *Swift & Co. v. United States*,
        196 U.S. 375 (1905) ...................................................................................................8

19
    *Toyo Tire & Rubber Co. v. Toyama Tyre Corp.*,
20      2014 WL 12717871 (D. Nev. July 30, 2014) ............................................................6

21  *United States v. Melon*,
22      2003 WL 23190606 (E.D. Cal. Dec. 12, 2003) .......................................................17

23  *Wella Corp. v. Wella Graphics, Inc.*,
        37 F.3d 46 (2d Cir. 1994) ...........................................................................................9

24
    *Wolfard Glassblowing Co. v. Vanbragt*,
25      118 F.3d 1320 (9th Cir. 1997) ...............................................................................9, 10

26  **FEDERAL STATUTES**

27  15 U.S.C. § 1051 *et seq.* (Lanham Act) ........................................................................15

28

**TABLE OF AUTHORITIES**
(Continued)

**Page**

**FEDERAL RULES - OTHER**

Fed. R. Civ. P. 60(b)...................................................................................................11, 18

Fed. R. Civ. P. 65 ........................................................................................... passim

**OTHER AUTHORITIES**

5 Trade Law Practice Forms (Aug. 2018) .........................................................................7

McCarthy on Trademarks and Unfair Competition (5th ed. 2018) .............................................9, 10

## I.      **INTRODUCTION**

This case involves the blatant, persistent, intentional misuse of the Versace Marks[1] by Defendants Theofanis Papadas and Versace 19.69 Abbigliamento Sportivo S.R.L. (collectively, "Defendants").  Defendants have exploited the Versace Marks in connection with the licensing, promotion, and sale of a vast array of goods and services—including clothing, handbags, shoes, jewelry, watches, eyewear, fragrances, home furnishings, websites, and retail stores.  Defendants have carried out this fraudulent scheme, globally and in the United States, through a broad network of agents, licensees, and retailers.  *See* ECF No. 221 (Versace's MSJ) at 2–9.  Defendants promoted their infringing products and services by touting the "legendary brand awareness of the name Versace," and—when questioned by licensees and retailers—by misrepresenting a prior court proceeding brought by Versace against Defendants as authorizing their infringing activities.  *See id.* at 3–9.  Defendants continued to misrepresent this prior court proceeding even *after* Italian courts had expressly rejected Defendants' position—which they again asserted in this action.

After the parties filed cross-motions for summary judgment, this Court entered an Order on July 24, 2018, that *entirely* vindicated Versace's federal and state trademark claims.  *See* ECF No. 261 (MSJ Order) at 2, 32 (granting summary judgment on all of Versace's claims).  After carefully analyzing each factor of the Ninth Circuit's trademark infringement test, the Court concluded that *all eight* of those factors counseled in favor of granting Versace summary judgment on its infringement claims.  *See id.* at 5–14.  The Court similarly found that Defendants were liable for trademark dilution and unfair competition because, among other things, the Versace Marks were "famous," and Defendants' activities had already caused dilution of those marks by both "blurring" and "tarnishment."  *See id.* at 17–19.

In light of these widespread trademark violations, the Court held that Versace was entitled to a permanent injunction that would prevent Defendants from continuing their intentional exploitation of the Versace Marks.  The Court explained that Versace had presented "a strong case

---

[1] In this brief, Versace uses the term "Versace Marks" as defined in Versace's proposed injunction, which is attached hereto as Exhibit 1.  That is, "Versace Marks" refers to "the trademarks 'Versace' and 'Gianni Versace.'"  *See* Ex. 1 at 2.

1    of trademark infringement," and that Versace "will suffer irreparable loss of business, reputation,

2    and goodwill if [Defendants] continue[] [their] infringing activity." *Id.* at 30 (internal quotation

3    marks omitted).  The Court further explained that the risk to Versace was especially acute here,

4    where Defendants "ha[d] continued [their] infringing activit[ies] *despite* receiving multiple

5    adverse judgments from foreign courts" concerning their exploitation of the Versace Marks.  *Id.* at

6    31 (emphasis added).  The Court subsequently ordered the Parties to confer and file briefs

7    concerning the terms of the permanent injunction to be entered by the Court.  *See* ECF No. 267

8    (Aug. 27, 2018 Order).

9        The Parties conferred several times on the terms of the permanent injunction to be entered

10    in this case.  Versace's proposed injunction is attached as Exhibit 1.  Defendants' proposed

11    injunction is attached as Exhibit 2, with redlining showing the differences between Versace's

12    proposal and Defendants' proposal.  While the Parties were able to resolve many issues, they were

13    unable to reach agreement on all of the injunction's provisions because Defendants have insisted

14    on certain terms that not only dilute the force of the injunctive relief, but that also transform the

15    injunction into yet another vehicle they can use to continue their fraudulent scheme.

16        *First*, Defendants insist that the term "Infringing Marks" be defined to exclude three

17    terms—"19V69 Italia," "V Italia," and "the Flower"—that were *not* at issue in this litigation.  By

18    including these three terms in the present injunction, Defendants apparently seek the Court's

19    blessing concerning Defendants' future use of those terms as trademarks.  Because the Court has

20    made no findings concerning those three terms, the Court should reject Defendants' proposal.

21        *Second*, Defendants insist that the injunction prohibit *only* uses of the Versace Marks that

22    are "likely to cause confusion," leaving them free to continue exploiting the Versace Marks in

23    connection with products and services as long as they believe those uses are not "likely to cause

24    confusion."  In other words, as Defendants' counsel told Versace's counsel during the meet-and-

25    confer process, Defendants want to have the "flexibility" to "try out" using the Versace Marks

26    along with a disclaimer—such as "founded by Alessandro Versace"—and then argue in a

27    subsequent case that such disclaimers render their continued use of the Versace Marks lawful.  But

28    Defendants' proposed language would completely vitiate the purpose of the injunction to be

1    entered in this case, as it would not put an end to Defendants' scheme to exploit the reputation and

2    goodwill associated with the Versace Marks.  In any event, Defendants' proposed language does

3    not satisfy the requirements of Federal Rule of Civil Procedure 65 because it amounts to little

4    more than a direction not to violate the law and therefore is too imprecise, and would result in

5    repeated re-litigation of a likelihood-of-confusion inquiry that this Court has already resolved.

6         *Third*, Defendants insist that they should be permitted to continue using the Versace Marks

7    on their United States website.  But the Court already found that Defendants' use of the Versace

8    Marks on that website infringes the Versace Marks, and there is no reason that such infringement

9    should not be enjoined.

10        *Fourth*, Defendants object to any provision requiring them to provide notice of the

11   injunction to their agents, licensees, and retailers on the grounds of burden, arguing that, instead,

12   *Versace* should be required to provide such notice.  That argument has no merit.  As this Court

13   found, Defendants intentionally infringed the Versace Marks, including by exploiting and

14   misrepresenting their supposed relationship with Versace in communications with agents,

15   licensees, and retailers.  It is only fair that Defendants bear the costs of their own infringement and

16   misrepresentations.  Moreover, Defendants are in a better position to identify and notify all of the

17   agents, licensees, and retailers with whom they or their agents previously communicated.

18        *Finally*, Defendants insist on a provision stating that this Court's injunction is limited by

19   the Conciliation Agreement.  This is a blatant attempt by Defendants to create a hook they can use

20   to argue that provisions clearly enjoining them from infringing the Versace Marks are subject to

21   the Conciliation Agreement that Defendants have repeatedly misconstrued and misrepresented—

22   as numerous Italian courts and now this Court have found.  As the Court made clear in its Order,

23   Versace is entitled to injunctive relief in this case based on the Court's findings that (1)

24   Defendants' activities infringe the Versace Marks, *and* (2) the Conciliation Agreement does not

25   authorize those infringing activities.  Accordingly, there is no need to create ambiguity by

26   referencing the Conciliation Agreement in the Court's injunction—especially given Defendants'

27   blatant and persistent misuse of that document to defraud third parties.

28

1    In sum, all of Defendants' proposed revisions are intended to create room to continue

2    Defendants' fraudulent scheme to exploit the Versace Marks.  That is Defendants' well-worn

3    tactic:  Water down an injunction with vague language and seemingly innocuous exceptions that

4    they can abuse to mislead agents, licensees, and retailers into believing that they have the right to

5    continue misusing the Versace Marks.  The Court should reject this last-ditch attempt to salvage

6    Defendants' illicit scheme, and, instead, enter a clear, unambiguous injunction that ends

7    Defendants' trademark infringement in the United States once and for all.

8  **II.    ARGUMENT**

9    **A.    This Court Has Made No Findings Concerning The Terms That Defendants
10          Insist Be Excluded From The Definition Of "Infringing Marks."**

11    The Parties are in agreement that the term "Infringing Marks" should be defined to include

12    "any word or phrase that uses, in whole or in part, the Versace Marks."  Ex. 1 at 2.  Defendants,

13    however, insist that the Court expressly—and unnecessarily—exclude the following terms from

14    that definition:  "19V69 Italia," "V Italia," and "the Flower."[2]  Ex. 2 at 2.  Defendants' position

15    has no merit and seeks to introduce unnecessary ambiguity into the Court's injunction, allowing

16    Defendants to argue (incorrectly) that the Court has found these terms immune from trademark

17    scrutiny.  Because the Court has made no such finding, it should reject Defendants' proposal.

18    To start, Defendants' proposed exclusions—"19V69 Italia," "V Italia," and "the Flower"—

19    were never at issue in this case.  Versace's claims are based on Defendants' use of trademarks

20    containing the "Versace" name, which were defined in Versace's complaint and summary

21    judgement briefing as the "Infringing Marks."  *See* ECF No. 123 (FAC) ¶ 42 (defining "Infringing

22    Marks" as the mark "VERSACE 19.69 ABBIGLIAMENTO SPORTIVO SRL, in whole or in part,

23    including without limitation VERSACE and VERSACE 19.69"); ECF No. 221 (Versace's MSJ) at

24    1 (explaining that Defendants "licensed, promoted and sold" products "under the name 'Versace

25    19.69 Abbigliamento Sportivo Srl'").  Defendants' summary judgment papers likewise focused on

---

26

27  [2] Defendants do not define what they mean by the term "the Flower," which is presumably a
    reference to an image of some kind.  This ambiguity is a further reason for the Court to reject
28  Defendants' proposed language.

1    their use of the "Versace" name.  Indeed, in their summary judgment papers, Defendants did not

2    make a single reference to any of the three terms that they now demand appear in this Court's

3    injunction.  *See* ECF Nos. 218, 238, 246.

4           Consistent with the Parties' exclusive focus on the Infringing Marks containing the

5    "Versace" name, the Court made no finding that Defendants' use of the terms "19V69 Italia," "V

6    Italia," or "the Flower" is *not* likely to cause confusion with the Versace Marks.  Now, Defendants

7    seek what amounts to an explicit command that these terms do not infringe the Versace Marks.

8    But they are not entitled to such relief without any supporting evidentiary findings regarding those

9    terms' likelihood of causing confusion—and such supporting findings would necessarily require a

10   "fact-intensive inquiry."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075

11   (9th Cir. 2006).  Because there has been no argument or evidence submitted to this Court

12   concerning Defendants' use of the terms "19V69 Italia," "V Italia," or "the Flower," there is no

13   basis for the Court to conclude, at this point, that the terms do not infringe the Versace Marks, or

14   for Defendants to demand that the Court unnecessarily exclude the terms from the definition of

15   "Infringing Marks" so as to suggest that they do not infringe the Versace Marks.

16          There is also no need for the exclusions that Defendants demand.  In Versace's proposed

17   injunction, "Infringing Marks" is defined to mean "any word or phrase that uses, in whole or in

18   part, *the Versace Marks*."  Ex. 1 at 2 (emphasis added).  And in turn, "Versace Marks" is defined

19   as "the trademarks 'Versace' and 'Gianni Versace.'"  *Id.*  Accordingly, the terms that Defendants

20   are so intent on excluding from the definition of "Infringing Marks" *already* fall outside the scope

21   of Versace's proposed definition—none of the terms use the words "Versace" or "Gianni

22   Versace."  Defendants' insistence on this exclusion is plainly an attempt to obtain relief to which

23   they are not entitled in the form of a ruling from this Court concerning the propriety of

24   Defendants' use of terms that *were not at issue* in this litigation.  *See Indep. Training &*

25   *Apprenticeship Prog. v. Cal. Dept. of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013) ("To

26   be entitled to a permanent injunction," a party must establish, among other things, "actual success

27   on the merits" of its claims.).

28

1   This is, of course, not the first time that Defendants have attempted to improperly exploit

2 court orders issued against them.  In fact, as this Court already recognized, Defendants have

3 persisted in abusing purported ambiguities in prior court rulings to convince their agents,

4 licensees, and retailers to perpetuate Defendants' infringing scheme.  *See* ECF No. 261 (MSJ

5 Order) at 19–22 (rejecting Defendants' interpretation of the Conciliation Agreement).  Defendants

6 now invite this Court to create ambiguities in the injunction that they can use to argue that they are

7 entitled to use certain un-litigated, extraneous terms.  The Court should reject Defendants'

8 invitation to issue such an impermissible and unnecessary order.  *See, e.g.*, *Indep. Training &*

9 *Apprenticeship Prog.*, 730 F.3d at 1032; *Au-Tomotive Gold, Inc.*, 457 F.3d at 1075.

10  **B.** **There Is No Basis For Defendants' Demand To Limit The Prohibition On Uses**

11    **Of The Infringing Marks To Only Those Uses "Likely To Cause Confusion."**

12   Defendants should be enjoined from using the "Infringing Marks" in the United States and

13 from "[c]ommitting any other act which represents . . . that goods or services offered or licensed

14 by Defendants are . . . associated with" Versace.  *See* Ex. 1 ¶¶ 1(a)–(c).  This is standard language

15 for injunctions in trademarks cases.[3]  Defendants nevertheless reject this standard language,

16 ————————————————

17 [3] *See, e.g.*, *Chanel, Inc. v. Charles*, 2016 WL 4491871, at *10 (N.D. Cal. June 9, 2016) (enjoining
defendant from "manufacturing, causing to be manufactured, importing, advertising, promoting,

18 displaying, distributing, selling, or offering to sell through any channels of trade or any media *any goods bearing the Chanel trademarks*" (emphasis added)); *Am. Auto. Assoc., Inc. v. AAA Auto*

19 *Body Repair, Inc.*, 2015 WL 1089746, at *6 (N.D. Cal. Feb. 27, 2015) (entering injunction that
"permanently enjoined and restrained [defendant] from . . . [u]sing . . . any of AAA's

20 trademarks"); *Bird Gard LLC v. SC Elite, Ltd.*, 2013 WL 4828723, at *1 (E.D. Cal. Sept. 6, 2013)
(enjoining defendant from "using the BIRD-X-PELLAR and BROADBAND PRO trademarks or

21 any other trademarks confusingly similar thereto . . . in any manner"); *Toyo Tire & Rubber Co. v.*
*Toyama Tyre Corp.*, 2014 WL 12717871, at *6 (D. Nev. July 30, 2014) (enjoining defendants

22 from "[r]epresenting directly or indirectly . . . that any products or services offered . . . are related
to . . . or sponsored by Plaintiffs"); *Coach, Inc. v. Daisy Accessories, Inc.*, 2013 WL 12128819, at

23 *5 (C.D. Cal. Mar. 7, 2013) (entering an injunction that prevented defendants from "[c]ommitting
any other acts calculated to cause purchasers to believe that Defendants' products are Coach's

24 genuine merchandise"); *Language Line, LLC v. Advanced Language Line, LLC*, 2012 WL
1918873, at *1 (N.D. Cal. May 25, 2012) (enjoining defendant from "using *in any manner*

25 *Plaintiff's . . . service marks* . . . , or any name, trademark, [or] service mark . . . that incorporates

26 any of the Marks" (emphasis added)); *Adobe Sys., Inc. v. Tilley*, 2010 WL 309249, at *1 (N.D.
Cal. Jan. 19, 2010) (enjoining defendant from "manufacturing, importing, distributing, advertising,

27 selling and/or offering for sale *any merchandise which features any of Plaintiff's . . . Trademarks*"
(footnote continued)

28

1    insisting that the injunction prohibit *only* uses of the "Infringing Marks" that are "likely to cause

2    confusion with the Versace Marks." Ex. 2 ¶¶ 1(a)–(c); *see also id*. ¶ 2(a). Defendants' proposed

3    revision would reduce the Court's injunction to an instruction to simply follow the law. That is

4    the type of vague injunction that the federal courts repeatedly have found improper. This Court

5    should reject Defendants' proposed revisions, which would render the injunction meaningless by

6    requiring this Court to determine—again—whether any particular use of the Infringing Marks is

7    likely to cause confusion with the Versace Marks.

8        As an initial matter, this Court already has found that Defendants' uses of the "Infringing

9    Marks" (and related misrepresentations regarding the supposed relationship between Defendants

10   and Versace) are not only "likely to cause confusion" with the Versace Marks, but also constitute

11   intentional infringement of those marks. *See* ECF No. 261 (MSJ Order) at 13, 24 (concluding that

12   Defendants intentionally "adopted [their] mark knowing that it was similar to the Versace marks"

13   (emphasis omitted)); *see also id*. at 25 (concluding that Defendants continued to intentionally

14   infringe the Versace marks despite previous Italian court decisions that "were sufficient to put

15   [Defendants] on notice of [their] infringing use"). The Court's order could not have been clearer:

16   Defendants' "mark incorporates the 'Versace' name" and Defendants' use of that mark is "likely

17   to confuse consumers" under *every* factor of the *Sleekcraft* test. *Id*. at 5–14. The Court further

18   concluded that beyond creating a mere *likelihood* of confusion, Defendants' use of the Infringing

19   Marks had *already* caused "extensive . . . consumer confusion and disappointment." *Id*. at 11; *see*

20

21   (emphasis added)); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1178 (C.D. Cal. 2002)

22   (enjoining defendants from "using the PEPSI, DIET PEPSI, MOUNTAIN DEW, and
     AQUAFINA trademarks . . . in connection with the manufacture, sale, distribution, advertising, or
     promotion of any products or services"); *Playboy Enters., Inc. v. Calvin Designer Label*, 985 F.

23   Supp. 1218, 1219 (N.D. Cal. 1997) (preventing defendants from "otherwise engaging in any other
     acts . . . which would cause consumers to erroneously believe that Defendants' goods or services

24   are somehow sponsored by . . . or in any other way associated with PEI"); *Saks & Co. v. Hill*, 843

25   F. Supp. 620, 625 (S.D. Cal. Dec. 27, 1993) (concluding that defendant should be
     "PERMANENTLY ENJOINED and RESTRAINED from using the name and mark Sacks Thrift

26   Avenue"); *see also* 5 Trade Law Practice Forms § 33:28.80 (Aug. 2018) (suggesting that
     injunctions include language that prevents "manufacturing, importing, advertising, marketing,

27   promoting, supplying, distributing, drop-shipping, offering for sale, exporting, or selling *any*

28   *products which bear the Plaintiffs' Marks*" (emphasis added)).

1    *also id.* at 11–12 (finding "evidence of confusion on the part of potential customers" and

2    "retailers").

3            Despite the clarity of this Court's Order, Defendants now insist that they should be able to

4    continue using the Versace Marks to draw attention to their products, while simultaneously

5    arguing that doing so is unlikely to result in consumer confusion.  During meet-and-confer

6    discussions, for example, Defendants' counsel proffered that, in the future, Defendants might

7    begin selling products that use the word "Versace" along with a disclaimer that Defendants are not

8    affiliated with Gianni Versace, S.p.A., or that Defendants might begin using the "Versace" name

9    as the *second* word in their trademark rather than the first (*i.e.*, "19.69 <u>Versace</u> Abbigliamento

10   Sportivo").  Defendants' counsel claimed that such uses may not infringe the Versace Marks.  *See*

11   Declaration of Zachary Briers ("Briers Decl.") ¶ 2.  But those (frankly, outrageous) arguments do

12   not justify Defendants' proposed revisions, which would require re-litigation of every conceivable

13   permutation of Defendants' use of the Infringing Marks.

14           The law is clear that injunctions must "state [their] terms specifically" and "describe in

15   reasonable detail . . . [the] acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  As a result, this

16   Court cannot issue an injunction that amounts to little more than "a sweeping injunction to obey

17   the law."  *Swift & Co. v. United States*, 196 U.S. 375, 401 (1905).  Versace's proposed injunction

18   adopts the standard language of trademark injunctions, specifically telling Defendants that they

19   *cannot* continue to use the "Infringing Marks" to market products in the United States or to falsely

20   represent that there is an association between Defendants' goods or services and Versace.  *See* Ex.

21   1 ¶¶ 1(a)–(c).  Versace's proposed injunction offers the required specificity.  Defendants'

22   proposed injunction does not.  Defendants would have this Court enjoin use of the Infringing

23   Marks *only if* that use is subsequently determined to be "likely to cause confusion with the

24   Versace Marks."  Ex. 2 at ¶¶ 1(a)–(c).  That modification does not specifically prohibit *anything*.

25   Instead, it invites the Parties to re-litigate whether Defendants' use of the Versace Marks is "likely

26   to cause confusion" in an infinite array of circumstances.  This Court should not—and cannot

27   under the requirements of Rule 65—issue an injunction that would require such never-ending

28   litigation.

Indeed, federal appellate courts have repeatedly rejected virtually identical arguments to those Defendants assert here.  For example, in *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 146 (3d Cir. 1994), the Third Circuit rejected the argument that a consent judgment should be construed to only prohibit use of the Harley-Davidson trademarks when such use is "likely to cause consumer confusion."  The court noted that the defendant's reading of the consent decree "would require the district court, after the consent judgment was entered and liability for infringement was already admitted, to make determinations on the very question of trademark infringement, that is, whether there was likelihood of confusion."  *Id.*  The Third Circuit rightly concluded that this made no sense:  "To permit underlying trademark infringement liability issues to be reexamined in a subsequent contempt proceeding would . . . encourag[e] relitigation of supposedly settled issues in [such] proceedings."  *Id.*  Similarly, in *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994), the Second Circuit rejected a reading of an injunction that would require further examination of the likelihood of confusion, noting that "an injunction . . . would be of questionable value if enforcement against every alteration of the infringing mark required a relitigation of the [likelihood-of-confusion] factors."  And the Ninth Circuit adopted the same reasoning in *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322–23 (9th Cir. 1997), where the court noted that an injunction should not require "renewed litigation of all of the elements of [the] original infringement claim," including reassessment of the "likelihood of consumer confusion."  *See also* McCarthy on Trademarks and Unfair Competition ("McCarthy") § 30:13 (5th ed. 2018) ("If an injunction is so worded, then the factual elements of what exactly is 'unfair competition' or 'trademark infringement' must be re-hashed all over again in a contempt hearing.").

After finding the existence of infringement, a court has authority to issue a broad injunction to stop the ongoing harm arising from that infringement, including by prohibiting the defendant from using the infringing mark in new ways or on new products.  The Ninth Circuit applied that common-sense rule in *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985 (9th Cir. 2009).  In that case, the district court issued a broad injunction that required the defendant to "abandon *all use* of the [infringing] name."  *Id.* at 993 (emphasis added).

1   The Ninth Circuit affirmed, rejecting the infringer's argument that "it should not be prohibited

2   from using [the infringing mark] to market its other services which *did not prompt* [the plaintiff's]

3   lawsuit." *Id.* (emphasis added). As the Ninth Circuit held, "the scope of the injunction [was]

4   appropriate" because a broad injunction prevented "the likelihood of confusion" caused by the

5   defendant's use of the infringing mark. *Id.*

6          The same is true here. As this Court has found, Defendants' continued use of the

7   Infringing Marks is likely to cause confusion under *every* factor of the *Sleekcraft* test—*e.g.*, the

8   marks are identical; the Versace Marks are strong; there is "extensive evidence of consumer

9   confusion"; and Defendants "knowingly adopt[ed] a mark similar to" the Versace Marks. ECF

10  No. 261 (MSJ Order) at 5–14 (internal quotation marks omitted). Given these findings, the Court

11  is justified in entering an injunction against the use of the Infringing Marks, including the use of

12  those marks in slightly modified form (*e.g.*, as the *second* word in the company name or on new

13  lines of products).[4] After all, "a party who has once infringed . . . may be required to suffer a

14  position less advantageous than that of an innocent party." *Wolfard Glassblowing Co.*, 118 F.3d at

15  1322 (internal quotation marks omitted); *see also Kentucky Fried Chicken Corp. v. Diversified*

16  *Packaging Corp.*, 549 F.2d 368, 390 (5th Cir. 1977) ("Even if [defendant] originally would have

17  been entitled to use the marks, we hold that the unqualified injunction against their use is justified

18  by [defendant's] history of improper behavior.").

19         Put differently, it is proper to enter an injunction that requires Defendants to "keep a fair

20  distance from the margin line" of trademark infringement in the future; otherwise, Defendants

21  might do exactly what Defendants' counsel has already threatened: "make minimal changes in

22  [their] product in order to test the outer boundaries of [this Court's] judgment." *Wolfard*, 118 F.3d

23  at 1323 (internal quotation marks omitted); *see also* McCarthy § 30:4 ("[A] court can frame an

24  injunction which will keep a proven infringer safely away from the perimeter of future

25  infringement."); *cf. FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) ("The [FTC] is not

26

27  ---
    [4] For example, during the Parties' meet-and-confer discussion, Defendants' counsel at one point
    suggested, hypothetically, that Defendants might begin selling ice cream using the Versace Marks.

28  *See* Briers Decl. ¶ 2.

1   limited to prohibiting the illegal practice in the precise form in which it is found to have existed in

2   the past.  Having been caught violating the Act, respondents must expect some fencing in."

3   (brackets omitted)).  In light of this Court's findings concerning the clear likelihood of confusion

4   (and Defendants' counsel's admissions), Versace's requested injunction is appropriate.

5         If Defendants someday decide to develop new products or services using the Versace

6   Marks that they believe, in good faith, are not likely to cause confusion, the law provides them

7   several mechanisms for obtaining guidance from this Court concerning the legality of those

8   hypothetical products or services.  For example, Defendants could seek a "declaratory judgment"

9   that "their new service doesn't violate the Court's" injunction.  *Disney Enters., Inc. v. VidAngel*

10   *Inc.*, 2017 WL 6820014, at *3 (C.D. Cal. Aug. 2, 2017).  Separately, Federal Rule of Civil

11   Procedure 60(b) allows the Court "[o]n motion and just terms" to "relieve a party or its legal

12   representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies

13   relief."  And as the Supreme Court has explained:

> 14-17   If defendants enter upon transactions which raise doubts as to the applicability of the injunction, they may petition the court granting it for a modification or construction of the order.  While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court.

18   *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945).  Thus, if Defendants ever find themselves

19   in a "concrete situation" where they would like to use the Versace Marks, but are unsure whether

20   that new usage would violate the terms of the injunction, they would have "the right to ask [this

21   Court] . . . whether [the injunction] applies to [the] conduct in which the [Defendants] propose[d]

22   to engage."  *Disney Enters.*, 2017 WL 6820014, at *2 (internal quotation marks omitted).  At this

23   point, of course, there is no such "concrete situation"—and Versace doubts that any such situation

24   could arise in the future.  However, because Defendants may seek such relief, and because

25   Defendant's proposed revision merely creates ambiguity about what, specifically, the injunction

26   prohibits, this Court should reject Defendants' proposal.  *See Scandia Down Corp. v. Euroquilt,*

27   *Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985) ("Rule 65(d) does not require a torrent of words when

28   more words would not produce more enlightenment about what is forbidden.").

Finally, and for similar reasons, Defendants' revisions to Paragraph 1(c) of Versace's proposed injunction should be rejected.  Defendants insist that this Court enjoin them only from "[c]ommitting any other act which *is likely to cause confusion* as to whether the goods or services *which bear any Infringing Marks* . . . are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiffs." Ex. 2 ¶ 1(c) (emphasis added).  Those "likely to cause confusion" and "bear any Infringing Marks" limitations are improper.  Again, merely enjoining "other acts" that are "likely to cause confusion" would do little more than instruct Defendants to follow the law and invite further litigation.

Moreover, this Court's finding of trademark infringement was based in part on "other acts" committed by Defendants *beyond* mere usage of the Infringing Marks on products and services— including Defendants' decision to tout to licensees and retailers the "legendary brand awareness of the Versace name" and false background of Alessandro Versace as a cousin of Gianni Versace and founder of Gianni Versace S.p.A. in order to create a false connection between Defendants and Versace.  *See* ECF No. 261 (MSJ Order) at 23–24.  Defendants' "Frequently Asked Questions" document is a perfect example of such "other acts."  Defendants distributed this document to prospective licensees and retailers, stating that the founder of Defendants' company "played an integral role in helping Versace become the benchmark of Italian design," and that Defendants' company is an authorized "diffusion brand that uses the Versace name." *See* Briers Decl., Ex. H.  Those statements—which are blatant lies—were not made in connection with the sale of any specific product; instead, they were made during presentations with prospective licensees and retailers.  Versace's proposed injunction, which enjoins Defendants from "[c]ommitting any other act which represents or which has the effect of representing that goods or services offered or licensed by Defendants are . . . in any other way associated with" Versace, is specifically tailored to prohibit Defendants from continuing to make these kinds of false statements.  Defendants' proposed revision, by contrast, would render the provision meaningless, only prohibiting such acts if they are (1) "likely to cause confusion," and (2) associated with specific products that bear the Infringing Marks.  Defendants' proposed revision thus invites re-litigation of issues the Court has already resolved and allows them to do through statements what they will now be enjoined from

doing through marks used on products and in stores.  The Court should reject that invitation and, instead, enjoin all acts that represent that Defendants are associated with Versace—regardless whether such acts are committed with respect to any specific infringing product or service.

### C.    Defendants Must Be Enjoined From Using The Infringing Marks On Any United States Website.

Defendants should be required to "remove from any websites under their control that are displayed to consumers in the United States, including without limitation www.v1969italia.com, any reference to any Infringing Marks." Ex. 1 ¶ 3.  The aforementioned website is currently littered with the word "Versace"—including five distinct uses of the word "Versace" on the homepage alone, *see* Briers Decl., Ex. A, and a header and footer that appear on every sub-page that both include the word "Versace," *see id.*, Exs. B–G.  Defendants insist that this paragraph be removed entirely, and that they be permitted to continue exploiting the Versace Marks on their website on two grounds, neither of which has any merit.

*First*, Defendants argue that this Court made no findings as to whether the use of the Versace Marks on their website is "likely to cause confusion."  Defendants either misunderstand or misrepresent this Court's order.  In granting summary judgment to Versace, the Court determined that Defendants' use of the Infringing Marks was "likely to cause confusion" under every factor of the *Sleekcraft* test.  *See* ECF No. 261 (MSJ Order) at 5–14.  Although Defendants attempted to avoid responsibility for those infringing uses by arguing that they were merely "licensors" and thus did not *themselves* engage in any infringing conduct, this Court—correctly— rejected that argument, finding, among other things, that Defendants "independently used the Versace marks as part of [their] branding and promotional efforts."  *Id.* at 24.  The Court supported that conclusion by citing "screenshots of the [www.v1969italia.com] website."  *Id.* (citing Exhibits 116 and 117 to the Briers Declaration).  As this Court then concluded:  "*That evidence* is sufficient to show that [Defendants] attempted to use the Versace term as a symbol to attract public attention."  *Id.* (emphasis added; internal quotation marks omitted).  Given that finding, this Court is justified in enjoining Defendants' continued misuse of the Versace Marks on their website.  *See Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, 2018 WL 2328471, at *17

1   (S.D. Cal. May 23, 2018) (finding that regulation of defendant's website in an injunction was

2   "appropriately tailored" to the harms alleged in plaintiff's complaint).

3          *Second*, Defendants argue that enjoining them from using the Infringing Marks on their

4   website would conflict with the Conciliation Agreement (and, specifically, the Court of Appeal of

5   Milan's December 2017 decision interpreting that Agreement).  Again, Defendants either

6   misunderstand or misrepresent that Italian court's decision.  As this Court held, the Court of

7   Appeal of Milan determined that the Conciliation Agreement broadly prohibits Defendants from

8   using the Versace Marks, allowing Defendants to use their company name only "where the law

9   requires" use of that name.  ECF No. 261 (MSJ Order) at 20.  This narrow exception requires a

10  "strict and restrictive interpretation."  *Id.* at 21 (internal quotation marks omitted).  To be sure, the

11  Court of Appeal of Milan determined that European Union law requires companies that conduct

12  "e-sales" to "indicate[] [their company name] in the appropriate section of [Defendants'] website

13  (under the heading 'Contacts')."[5]  ECF No. 223-18 (Pennekamp Decl., Ex. R) at 16.  But that law

14  applies only in the European Union.  Here, Defendants concede that "no U.S. law requires VAS to

15  place its full name on products involved in the present lawsuit," ECF No. 261 (MSJ Order) at 20,

16  and Defendants have offered no evidence whatsoever that any United States law requires them to

17  use their full company name on any portion of their United States website, let alone on that

18  website's home page.  Because Defendants have not shown that any law requires their United

19  States website to use the Infringing Marks, requiring them to remove the Infringing Marks from

20  their website is entirely consistent with the Court of Appeal of Milan's interpretation of the

21  Conciliation Agreement.

22         Defendants' only response to this argument during the Parties' meet-and-confer

23  correspondence was that Defendants have just *one* website that is intended to reach a global

24  audience, and it would be too burdensome to create a separate website directed to United States

25  consumers.  Defendants therefore insist that they cannot at the same time comply with both the

26

27  [5] There is no evidence that Defendants actually conduct "e-sales" on their website.  Indeed, it is
    not possible to make a purchase using the current website.  Instead, that website merely refers
28  customers to physical stores.

1   Court of Appeal of Milan's judgment and Versace's proposed injunction.  That argument is

2   specious.  For one thing, Defendants have not even *attempted* to comply with the Court of Appeal

3   of Milan's December 2017 judgment with respect to their website for European Union customers.

4   That judgment, which considers only the requirements of websites directed to consumers in the

5   European Union, permits Defendants to use their full company name only "under the heading

6   'Contacts.'"  ECF No. 223-18 (Pennekamp Decl., Ex. R) at 16.  Yet, the word "Versace" is used

7   multiple times on *every* page of Defendants' website—not just on the "Contacts" page.  *See* Briers

8   Decl., Exs. A–G (recent screenshots).  Defendants' concerns about the need to follow conflicting

9   judgments should therefore be given little weight, as they obviously have no interest in complying

10  with *any* injunction from *any* court.

11      Defendants also have not explained why they cannot create separate website portals

12  targeted at different jurisdictions and designed to comply with different legal standards in those

13  jurisdictions.  Defendants' counsel simply suggested that Defendants are not "sophisticated"

14  enough to create multiple website portals for different audiences.  *See id.* at ¶ 2.  That is nonsense.

15  The law requires infringers to refrain from confusing consumers, *regardless* of how

16  "sophisticated" the infringer happens to be.  *Cf. Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp.

17  2d 1067, 1073 (C.D. Cal. 2004) ("[I]gnorance is no defense to violations of the Lanham Act.").   If

18  Defendants cannot develop the technical skill necessary to create one website portal accessible by

19  European Union consumers, and another website portal that can be accessed by United States

20  consumers,[6] then Defendants have multiple other options:  They can, for example, hire a website

21  design agency to assist them with creating different geographically targeted websites; they can

22  take down their website entirely; or they can change their company name to remove the word

23  "Versace" and thereby avoid confusing *any* consumers.  This Court need not permit Defendants'

24

25  [6] Defendants' claimed inability to create two separate website portals should not be credited.
    Companies regularly create different websites for consumers in different geographic regions.  For
26  example, Versace's website has more than fifty geographically specific iterations, with each
    consumer being routed automatically to the appropriate website based on the geographic location
27  of that user's IP address.  *Compare* www.versace.com/us (United States website), *with*
    www.versace.com/it (Italian website), *and* www.versace.com/fr (French website).
28

1  continued infringing activities merely because they refuse to take the reasonable steps necessary to

2  comply with United States law.

3      **D.**    **Defendants Should Provide Notice Of The Injunction To Their Agents,**

4                        **Licensees, And Retailers.**

5       Defendants should be required to mail a copy of the injunction and this Court's summary

6  judgment order to their agents, licensees, and retailers.  *See* Ex. 1 ¶ 4.  This notice requirement is

7  imperative to the effectiveness of the injunction, as Defendants have repeatedly argued that they

8  are simply "licensors" such that any acts of direct infringement are committed by their agents,

9  licensees, and retailers.  Under these circumstances, Versace's proposed notice provision is plainly

10  appropriate—especially because Defendants communicated with these third parties and are in the

11  best position to know the identity and contact information of those third parties.

12       To start, the Federal Rules of Civil Procedure expressly contemplate such third-party

13  notice, stating that injunctions will "bind[]" not just the *parties* to the litigation, but also any

14  "other persons who are in active concert or participation with any[]" party, so long as those third

15  parties receive "*actual notice*" of the injunction.  Fed. R. Civ. P. 65(d)(2) (emphasis added).

16  Because this Court's injunction therefore covers agents, licensees, and retailers who sold

17  Defendants' infringing products, the injunction ought to include a provision that specifically

18  describes how those third parties will receive the requisite "actual notice."

19       Defendants nevertheless resist Versace's proposed notice obligation, contending that

20  *Versace* should be responsible for contacting the third parties that Defendants enlisted as part of

21  their infringing scheme.  *See* Ex. 2 at 4 (removing Versace's proposed notice paragraph).  That is,

22  Defendants seem to believe that the *victims* of trademark infringement should be obliged to spend

23  the time and money necessary to notify third parties of an *infringer's* bad behavior.  But

24  Defendants cite no law that would require such an absurd result.  Indeed, the available case law

25  establishes only that "the scope of the injunction should be coterminous with the infringement."

26  *MGM Studios, Inc. v. Grokster, Inc.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) (internal

27  quotation marks and brackets omitted).  Placing the notice burden on Defendants is certainly

28  "coterminous" with Defendants' infringement, as—by their own admission—they entered the

1   United States market by working through a vast network of agents, licensees, and third-party

2   retailers, who then actually manufactured, distributed, and sold Defendants' infringing goods.  *See*

3   ECF No. 139 (Answer to FAC) at 12–13; *see also* ECF No. 261 (MSJ Order) at 14 (explaining

4   that Defendants "argue[] that [they] cannot be liable because [they] operated entirely through

5   licensees, and thus did not sell any infringing products or operate any stores").

6       Because Defendants orchestrated their scheme of infringement using third parties, and

7   because Defendants are in the best position to identify the full range of third parties involved in

8   that scheme, it is only fair to require *Defendants* to affirmatively notify those third parties of this

9   Court's injunction and summary judgment order.  *Cf. Brocade Commc'ns Sys., Inc. v. A10*

10  *Networks, Inc.*, 2013 WL 140039, at *7–8 (N.D. Cal. Jan. 10, 2013) (approving requirement in

11  patent infringement injunction that defendant "send notice to all of [its] customers of the

12  injunction the court issues"); *United States v. Melon*, 2003 WL 23190606, at *6 (E.D. Cal. Dec.

13  12, 2003) (approving an injunction that required defendants to "post and keep posted in one or

14  more conspicuous places . . . a copy of this court's findings and preliminary injunction").  This

15  Court should accordingly adopt Versace's proposed notice provision.

16      **E.**    **Defendants Attempt To Create Confusion By Referring To And**
17              **Mischaracterizing The Conciliation Agreement In This Injunction.**

18      Finally, Defendants seem to view this injunction as an opportunity to broadly re-litigate

19  issues they have already lost—including the scope of the Conciliation Agreement and its

20  application to this case.  Specifically, they insist that the injunction include a paragraph stating that

21  the Court's injunction is limited by the Conciliation Agreement, which shall "supersede" the

22  injunction.  *See* Ex. 2 ¶ 4.[7]  But including such language in the injunction would be inappropriate

---

[7] Defendants proposed revision would state that "nothing in this Permanent Injunction shall be
construed to modify or supersede the Parties' rights and obligations under the Conciliation
Agreement, or to prohibit Defendants from using the full company name Versace 19.69
Abbigliamento Sportivo S.R.L. when the law requires the use of the full company name."  Ex. 2
¶ 4. But that language suggests that Defendants have "rights and obligations" concerning use of
their company name that go beyond those uses that are strictly required by law.  That is not how
this Court or the Italian courts have interpreted the Conciliation Agreement.  Instead, Defendants'
"right" to use their full company name extends to one scenario and one scenario only:  Those
(footnote continued)

for several reasons—not least because it would create ambiguities that Defendants have already demonstrated they will abuse.

*First*, as this Court already held, "Versace's interpretation of the [Conciliation] Agreement is correct and . . . [Defendants'] reading is incorrect." ECF No. 261 (MSJ Order) at 21. That is, "the Agreement prohibits [Defendants] from using the Versace name for any purpose *except where the law requires* [Defendants] to use [their] full [company] name." *Id.* at 20 (emphasis added). And here, Defendants "admitted . . . that no U.S. law requires [them] to place [their] full name on products involved in the present lawsuit." *Id.* (internal quotation marks omitted). As a result, there is no evidence in the record that any United States law requires Defendants to use their company name (including the word "Versace") in the United States market, and therefore there is no need to include a provision in the injunction to avoid conflicts with the Conciliation Agreement. No such conflict exists. The sole purpose—and likely effect—of including Defendants' proposed language is to create ambiguity as to whether the Conciliation Agreement "supersedes" the injunction. But that ambiguity would allow Defendants to continue misrepresenting to agents, licensees, and retailers that—regardless of what the injunction clearly prohibits—the Conciliation Agreement authorizes use of the Infringing Marks, when, in fact, this Court (and numerous Italian courts) have held that it does not.

*Second*, if in the future Defendants identify some United States law that they believe requires them to use the Infringing Marks in the United States market, they can seek a modification of the injunction to allow for that use. As described above, the Federal Rules specifically contemplate such modification requests. *See* Fed. R. Civ. P. 60(b) (providing that "the court may relieve a party . . . from a final judgment, order, or proceeding" based on "newly discovered evidence" or for "any other reason that justifies relief"). Given the record evidence and past abuse by Defendants of court orders, this Court should not *now* attempt to account for hypothetical conflicts with the Conciliation Agreement. If Defendants identify some law going

---

instances where Defendants are strictly "required by law" to use that name and no other. *See* ECF No. 261 (MSJ Order) at 20 ("[T]he Agreement prohibits [Defendants] from using the Versace name *for any purpose* except where the law requires [Defendants] to use [their] full [company] name." (emphasis added)).

1    forward that they believe creates a conflict, Defendants are free to petition the Court for a

2    modification that is "tailored to th[at] changed circumstance."  *Bellevue Manor Assocs. v. United*

3    *States*, 165 F.3d 1249, 1255 (9th Cir. 1999) (internal quotation marks omitted)).

4          *Third*, Defendants' proposed reference to the Conciliation Agreement is inconsistent with

5    the Federal Rules of Civil Procedure.  Injunctions must "describe in reasonable detail—and *not by*

6    *referring to the complaint or other document*—the act or acts restrained or required."  Fed. R. Civ.

7    P. 65(d)(1) (emphasis added).  The purpose of this Rule is to ensure that defendants and third

8    parties can determine what conduct is, and is not, prohibited based solely on the four corners of

9    the injunction.  *See Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004)

10   (concluding that it was "not possible to ascertain from the four corners of the order precisely what

11   acts are forbidden" because readers "would have to resort to extrinsic documents to comply with

12   the order's commands") (internal quotation marks omitted).

13         Defendants' proposal to limit the Court's injunction by reference to the Conciliation

14   Agreement would sow precisely the type of confusion that the Federal Rules prohibit.  Third

15   parties reading Defendants' proposed language in the injunction would have to consult all of the

16   following documents to determine whether their actions are permissible:  (1) the injunction; (2)

17   the Conciliation Agreement, which is written in Italian, and which has been translated into English

18   by Defendants in a way that this Court and numerous Italian courts have rejected; and (3)

19   numerous decisions by both Italian courts and now this Court construing the provisions of the

20   Conciliation Agreement.  Each step of this analysis would raise new ambiguities concerning this

21   Court's injunction.  Based on past experience, there is good cause to believe Defendants would

22   attempt to exploit those new ambiguities to their advantage.  *See* ECF No. 261 (MSJ Order) at 21

23   (deferring to Italian courts' decisions holding that "VAS's reading [of the Conciliation

24   Agreement] is incorrect").  Defendants offer no good reason why this Court's injunction should

25   invite continued litigation regarding the scope of the Conciliation Agreement—especially because

26   this Court has already found that Agreement to be *irrelevant* to Defendants' use of the Infringing

27   Marks in the United States.  *See id*. at 20–22.

28

III.    **CONCLUSION**

For the foregoing reasons, the Court should enter Versace's proposed permanent injunction attached hereto as Exhibit 1.


DATED:  October 8, 2018            MUNGER, TOLLES & OLSON LLP


                                   By:    /s/*Rosemarie T. Ring*
                                      ROSEMARIE T. RING
                                      Attorneys for Gianni Versace, S.p.A. and Versace
                                      USA,   Inc.

**PLAINTIFFS' OPENING BRIEF REGARDING PERMANENT INJUNCTION**

**ECF ATTESTATION**

I, Zachary Briers, am the ECF user whose account is being used to file this document.  In accordance with Civil Local Rule 5-1(i)(2), I attest that concurrence in the filing of this document has been obtained from all signatories.


DATED:  October 8, 2018                    MUNGER, TOLLES & OLSON LLP



                                           By:  _____/s/ ZACHARY M. BRIERS_____

PLAINTIFFS' OPENING BRIEF REGARDING PERMANENT INJUNCTION